# EXHIBIT A

KYRA A. KAZANTZIS (STATE BAR NO.154612)
kyrak@lawfoundation.org
ANNETTE D. KIRKHAM (STATE BAR NO. 217958)
annettek@lawfoundation.org
FAIR HOUSING LAW PROJECT a project of the
LAW FOUNDATION OF SILICON VALLEY
ILSA BRANCH (STATE BAR NO. 1978434)
ilsa.branch@lawfoundation.org
KARA BRODFUEHRER (STATE BAR NO. 258735)
kara.brodfuehrer@lawfoundation.org
ASA PITTMAN (STATE BAR NO. 273529)
asa.pittman@lawfoundation.org
MENTAL HEALTH ADVOCACY PROJECT a project of the
LAW FOUNDATION OF SILICON VALLEY
152 North Third Street, Third Floor
San Jose, CA 95112
Telephone:  (408) 280-2410
Facsimile:  (408) 293-0106

Attorneys for Petitioner
THANH HUYNH

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

### DOWNTOWN FACILITY, CIVIL DIVISION

| | |
|---|---|
| THANH HUYNH,<br><br>          Plaintiff/Petitioner,<br><br>v.<br><br>ALEX SANCHEZ, in his official capacity as Executive Director of the HOUSING AUTHORITY OF THE COUNTY OF SANTA CLARA; HOUSING AUTHORITY OF THE COUNTY OF SANTA CLARA, and DOES 1-50 inclusive,<br><br>          Defendants/Respondents | Case No. **114CV263816**<br>**VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF**<br><br>[Cal. Code Civ. Pro §§ 1094.5, 1094.6; 42 U.S.C.§§ 3604 *et seq.*; Cal. Gov't Code §§ 12955 *et seq.*; 29 U.S.C. § 794(a); Cal. Civ. Code § 54.1; 42 U.S.C. §§ 12101 *et seq.*; 42 U.S.C. § 1983; and Cal. Code Civ. Pro. §1060] |

1

EXHIBIT /A

# I.   INTRODUCTION

1.       Thanh Huynh, who is originally from Vietnam, fought for the South Vietnam Army alongside American troops during the Vietnam War.  Following the war, he was imprisoned in a "reeducation camp" for a decade, where he where he endured hard labor and political indoctrination sessions designed to break his will and spirit.

2.       Mr. Huynh was granted political asylum in the United States in 1992.  Based on his experiences during the war and afterward, he has severe post-traumatic stress disorder (PTSD), depression, and night terrors.  He experiences flashbacks and feels anxious and fearful, even in mundane situations.  He cannot share a bedroom with another person because he fears being attacked in his sleep and because he wakes in the night thrashing and screaming in terror.

3.       Until recently, Mr. Huynh and his family, which includes his wife and two adult children, had a three-bedroom Section 8 Housing Choice Voucher administered by the Housing Authority of Santa Clara County ("HACSC"), which has allowed them to rent a modest three-bedroom apartment.  The three-bedroom home allows Mr. Huynh to have his own bedroom, allows his wife and children sufficient space to live and sleep, and allows the family to use the living room and kitchen as shared spaces where they can spend time together.

4.       In summer 2013, Mr. Huynh received notice from HACSC that his voucher size would be reduced from three bedrooms to two bedrooms.  Due to this subsidy change and another change in HACSC's rent calculation, the family's monthly rental obligation increased by $416 per month, meaning that the family can no longer afford to live in their three-bedroom home of more than ten years.

5.       Mr. Huynh notified HACSC that he needed a separate bedroom because of his disabilities and asked to keep his three-bedroom voucher as a reasonable accommodation of his disabilities under state and federal housing laws.  However, HACSC denied his request.  HACSC's wrongful denial of Mr. Huynh's reasonable accommodation request has caused Mr. Huynh and his family emotional and financial damage.  The prospect of being forced from his home due to the downsizing of his voucher has increased Mr. Huynh's stress levels, which has in

2

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND

1  turn worsened his mental health symptoms. The stress of this financial burden undermines the

2  financial and mental health stability Mr. Huynh strived for years to achieve.

3    6.    Having suffered damages due to HACSC's denial of his reasonable

4  accommodation request and having exhausted all administrative remedies to oppose the agency's

5  decision, Mr. Huynh seeks a peremptory writ of administrative mandate pursuant to California

6  Code of Civil Procedure sections 1094.5 and 1094.6 to vacate a decision by HACSC which is

7  contrary to federal and state law. Mr. Huynh also seeks compensatory damages and injunctive

8  relief for Defendants/Respondents' violation of his fair housing and civil rights.

## II.    THE PARTIES

10    7.    Plaintiff/Petitioner Thanh Huynh is a resident of Santa Clara County, California.

11  Mr. Huynh lives in an apartment located at 652 Azara Place #1 in Sunnyvale, California, and his

12  rent is partially subsidized through a Section 8 Housing Choice Voucher.

13    8.    Defendant/Respondent Alex Sanchez is the Executive Director of the Housing

14  Authority of Santa Clara County ("HACSC"). In his capacity as Executive Director, he is

15  charged with, inter alia, carrying out the duties outlined in the Housing Authority's

16  Administrative Plan and the regulations promulgated by the Department of Housing and Urban

17  Development ("HUD"). Mr. Sanchez is sued in his official capacity only.

18    9.    Defendant/Respondent HACSC is a governmental entity created and existing

19  under the laws of the State of California, having its principal place of business in the city of San

20  Jose, California. HACSC is the county Public Housing Agency ("PHA") charged with

21  administering the Section 8 Housing Choice Voucher program in the manner set forth by statute

22  and regulation as stated in Chapter 24 of the Code of Federal Regulations, part 887.

23    10.    The true names and capacities, whether individual, corporate, associated or

24  otherwise, of Defendants/Respondents named herein as Does 1-50 inclusive, are unknown to Mr.

25  Huynh, who therefore sues these parties by fictitious names, and will amend his petition to show

26  their true names and capacities when ascertained. Mr. Huynh is informed and believes, and

27

28

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND
DECLARATORY RELIEF

1   thereon alleges, that the each person sued as Defendants/Respondents Does 1-50 participated in

2   or is responsible for the acts and omissions set forth below.

### III.   JURISDICTION AND VENUE

4        11.    Mr. Huynh has claims that arise under California law, namely California Fair

5   Employment and Housing Act, California Government Code sections 12955 *et seq.*, and

6   California Civil Code section 54.1. This Court has jurisdiction to issue an Administrative Writ of

7   Mandate on behalf of Mr. Huynh pursuant to California Code of Civil Procedure sections 1094.5

8   and 1094.6. This Court has jurisdiction to grant declaratory and injunctive relief on behalf of Mr.

9   Huynh pursuant to Code of Civil Procedure sections 525, 526, 526a, and 1060.

10       12.    Mr. Huynh is a resident of Santa Clara County. He brings this action against the

11  Housing Authority of Santa Clara County, as well as a real person (in his official capacities)

12  employed by this entity. This entity is located in the County of Santa Clara. Therefore, venue is

13  proper in this Court.

### IV.   FACTUAL ALLEGATIONS

15       13.    Mr. Huynh is a monolingual Vietnamese speaker who lives with his wife and their

16  son and daughter, who are ages 25 and 20, in a three-bedroom apartment.

17       14.    Mr. Huynh is a veteran of the Vietnam War where he fought in the South

18  Vietnamese army alongside American troops. When the war ended, he was placed in an

19  internment camp for ten years to be "re-educated." Mr. Huynh was released from the camp in

20  1985. He was under constant surveillance by the Vietnamese government until 1992 when he

21  was granted political asylum by the United States. When Mr. Huynh arrived in the United States

22  he was diagnosed with post-traumatic stress disorder and major depression, likely due to his

23  experiences in the war and the internment camp. To this day, he suffers from anxiety, depression

24  and severe night terrors which cause him to fear that he is being attacked. He often screams at

25  night and has to lock the door of his bedroom to feel safe. These symptoms make it impossible

26  for him to share a bedroom with anyone else because he is fearful of being harmed while he

27

28

4

sleeps. Mr. Huynh's long-time psychiatrist, Tao Nguyen, M.D., provided medical documentation to HACSC to support Mr. Huynh's need for a separate bedroom.

15.     As a result of this disability, Mr. Huynh sleeps in one bedroom alone; his wife and daughter share a bedroom; and his son sleeps in the other bedroom. The family uses the living room as an area to gather and socialize. The family has had a Section 8 Housing Choice Voucher for 14 years, and they have lived in the same apartment with the same living arrangements throughout that time. Prior to September 2013 the family had a three-bedroom voucher, which was sufficient to accommodate Mr. Huynh's need for a separate bedroom.

16.     As a result of the 2013 sequester, the federal government reduced its funding to HACSC, and HACSC, in turn, changed several policies related to its implementation of the Section 8 Housing Choice Voucher program. As of September 1, 2013, HACSC reduced Mr. Huynh's Section 8 voucher size from three bedrooms to two, and it increased the share of the family's gross income used to calculate the tenant rent obligation from 30% to 35%. These changes caused Mr. Huynh's share of rent to increase from $734 to $1,160 per month.

17.     On October 2, 2013, Mr. Huynh submitted a request for a three-bedroom voucher as a reasonable accommodation of his disability. Tao Nguyen, M.D., Mr. Huynh's treating psychiatrist, certified Mr. Huynh's need for a separate bedroom on HACSC's "reasonable accommodation certification form" on October 7, 2013. The form states that Mr. Huynh has a disability which limits one or more life activities and that the disability is permanent. The form also states that it is necessary for Mr. Huynh have his own bedroom because he is "paranoid, fearful/locked in his bedroom at night because of being paranoid about being attacked." The form further states that this condition often causes him to scream throughout the night and that he needs a private space to accommodate his difficulty sleeping, due to these frequent episodes.

18.     On October 21, 2013, HACSC denied Mr. Huynh's accommodation request with a letter stating that the "2 bedroom voucher is the smallest voucher size needed to meet your family's needs without overcrowding. You may assign sleeping rooms to the members of the

5

family as you wish, but our program will only support two bedrooms for the size of your family in accordance with our subsidy standard policy."

19. The letter failed to present any alternative solutions or to explain why granting this request would constitute an undue financial or administrative burden. In response to this denial, Mr. Huynh requested a hearing on October 24, 2013, and a Section 504 grievance hearing was held on December 12, 2013.

20. By written decision dated January 14, 2014, HACSC hearing officer Karen Goodman upheld the denial of the accommodation request for an additional bedroom. The hearing officer determined that Mr. Huynh is a person with a disability in need of a separate bedroom to accommodate his disability. However, the hearing officer declined to grant Mr. Huynh's request for a three-bedroom voucher stating that:

Your approved voucher size does provide you with a separate bedroom, and an equal opportunity to use and enjoy your dwelling. Therefore, I have decided to uphold the decision of the Housing Authority to deny your request for a separate bedroom. The U.S. Department of Housing and Urban Development's governing regulations, and housing quality standards require HACSC to subsidize the smallest number of bedrooms needed to house a family without overcrowding. Therefore, the program will only support a set number of bedrooms for the size of your family in accordance with HACSC's subsidy standards policy; your voucher size remains at two bedrooms for your family of four.

21. On January 27, 2014, Mr. Huynh sent a letter to HACSC Executive Director Alex Sanchez asking that he reverse the hearing officer's decision and grant his request for a reasonable accommodation.

22. On March 5, 2014, Mr. Sanchez sent Mr. Huynh a letter declining to reverse the hearing officer's decision.

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

### A.   BACKGROUND OF THE SECTION 8 PROGRAM

23.     The Section 8 Housing Voucher Program provides monthly housing subsidies on an individual basis to low income families who possess a Section 8 housing voucher. 42 § 1437f(o). The tenant participant finds a private landlord who is willing to rent to a voucher holder. The PHA determines the payment standard, which is the maximum amount of housing assistance they will provide based upon a voucher holder's family size and composition. The voucher holder is responsible to pay 30% of their income in rent (in Santa Clara this has been increased to 35%) and the PHA pays the difference up to the maximum amount provided in the payment standard. This is called a "housing assistance payment." 24 C.F.R. § 887.353(a)(1).

24.     The landlord is permitted to charge a Section 8 voucher holder more than the payment standard, but any amount in excess is paid by the voucher holder, even if the total rent paid exceeds 35% of his or her income. 24 C.F.R. § 887.353(a)(3). In Santa Clara County, the Section 8 Program is administered by the Defendant/Respondent HACSC. In so doing, HACSC must comply with federal statutes and the rules, guidelines and regulations promulgated by HUD.

25.     On March 1, 2013, as a result of cuts in discretionary federal spending ("2013 sequester"), HACSC's voucher program, which is entirely federally funded, lost approximately $16 million dollars. As of September 1, 2013, all of the Section 8 participants in the program were subjected to revised rent calculations and reduced subsidies. The revised subsidy calculations increased the participant's total tenant payment from 30% to 35% of their gross monthly income or $50 a month, whichever is higher. HACSC also revised subsidy standards as a result of the sequester cuts. The changes assigned the head of household (with spouse, co-head, Registered Domestic Partner, or boyfriend/girlfriend if any) one room and an additional bed room for every two persons regardless of age or gender. *See* HACSC Administrative Plan § 6.4. Prior to the subsidy change, children of the opposite sex (unless they were very, very young children) and persons from different generations (parents, grandparents, children) were not required to share a room.

7

26.    Mr. Huynh is informed and believes, and upon such information and belief alleges that HACSC's 2014 funding was not subject to the same cuts. As of March, 2014, HACSC has been appropriated 99 % of the cost of paying Section 8 rents. Current projections place HACSC 2015 appropriation at 99.7% of Section 8 rents. HACSC currently has a reserve of over five million dollars.

### V.    LEGAL STANDARD FOR A WRIT OF MANDATE

27.    A writ of mandate should issue pursuant to California Code of Civil Procedure section 1094.5 because denial of Mr. Huynh's reasonable accommodation is a final administrative decision resulting from a proceeding in which a hearing is required to be given, evidence is required to be taken, and discretion in determination of facts is vested in the hearing officer pursuant to state and federal laws and regulations.

28.    Mr. Huynh has exhausted all the administrative remedies available to him and has no plain, speedy, or adequate remedy available to him to obtain a reasonable accommodation, absent a preemptory writ of mandate. Unless compelled to perform its duties and obligations in conformity with the law, HACSC will fail to do so.

29.    The Section 8 voucher program is available only to low-income people, with the purpose of providing subsidized housing that will allow participants to live in decent and safe housing. The fair housing laws protect persons with disabilities from discrimination in the provision of services connected with housing. The denial of such benefits involves a fundamental right and the Court should exercise its independent judgment in reviewing the administrative hearing decision. *County of Alameda v. Bd. Of Ret.*, 46 Cal. 3d 902, 906 (1998).

### VI.    ARGUMENT

**A.    HACSC's Decision is Inconsistent with HACSC's Administrative Plan and with Federal Section 8 Regulations.**

30.    When terminating benefits related to a Section 8 voucher, HACSC is required to proceed in a manner proscribed by federal law and its own Administrative Plan. Failure to proceed in the manner required by law can be a violation of a participant's due process rights. *Goldberg v. Kelly*, 397 US 254, 262-63 (1970).

8

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

31.     The HACSC hearing officer's decision conceded that that Mr. Huynh needs a separate bedroom because of his disability: "Dr. Tao Nguyen verified that you meet the definition of a person with a disability.  Additionally, Dr. Nguyen provided a reason as to why you need a separate bedroom to accommodate your disability."  However, the hearing officer determined that Mr. Huynh's two-bedroom voucher will allow him to have a separate bedroom and an equal opportunity to use and enjoy his dwelling.  *Id.*  Given that Mr. Huynh is a person with a disability who needs to have his own bedroom because of that disability, only two sleeping arrangements are possible with a two-bedroom voucher: 1) Mr. Huynh sleeps in one bedroom and the other three household members share another bedroom 2) one or more persons sleep in the living room.  Both configurations violate Section 6.4 of the Administrative Plan, which would assign Mr. Huynh his own bedroom, two family members a second bedroom and a third bedroom to the last family member.

32.     Federal regulations dictate that each PHA must establish subsidy standards that "determine the number of *bedrooms* needed for families of different sizes and compositions."  24 C.F.R. 982.402(1), (2) (emphasis added).  These subsidy standards are generally based on the ages and sex of the family members, and on other factors considered under the HA policy.  *See Id.*, Fed. Reg. 34,660, 34681 (July 3, 1995), section VI.(C)(12) "Space and Security, Space – Bedroom or Living/Sleeping Room."

33.     HACSC's subsidy standards state that they provide "one room for the head of household (with spouse, co-head, Registered Domestic Partner, or boyfriend/girlfriend if any) and one additional room for every two persons regardless of age or gender."  HACSC Administrative Plan § 6.4.  The subsidy standard does not assign living rooms to participants as bedrooms or sleeping areas and it has never been HACSC's policy to determine voucher size by including the living room in the equation.

34.     Although PHA's set their own subsidy standards, the federal regulations also include minimum quality standards for all Section 8 units, including space requirements, called Housing Quality Standards ("HQS).  24 C.F.R. Section 982.401.  While the HQS standards state

9

that a dwelling may have up to one bedroom or living room for every two persons, this is a uniform standard that sets the minimum amount of space a unit must have in order to be acceptable. These HQS space requirements allow space other than bedrooms to be considered "living/sleeping rooms" to ensure maximum flexibility in determining whether a unit is overcrowded. Thus, should a tenant choose to rent a unit that has fewer bedrooms than the maximum number of bedrooms listed on the voucher, they are permitted to do so as long as they meet the minimum requirements under the HQS.

35.     In order to accommodate Mr. Huynh's need for a separate bedroom in a two bedroom unit, the family would be forced to 1) have the three remaining family members sleep in the remaining bedroom or 2) someone would have to sleep in the living room. As three people are not permitted to share a bedroom under the HQS's the only other possible option would require one or more members of the Huynh family to use the living room as a bedroom. While the HQS's may permit this configuration, the size of a participant's voucher is determined by the specific subsidy standards set by the local housing authority that issues it. 24 C.F.R. Section 982.402(1),(2). Accordingly, HACSC cannot pick and choose what portions of the subsidy standard to enforce nor can it de facto insert HQS regulations into its Administrative Plan. As HACSC subsidy standards assign one bedroom to every two additional people and do not state that a living room shall be used as a sleeping area, Mr. Huynh is entitled to a three-bedroom voucher.

36.     HUD's Office of General Counsel recently released a memorandum that explicitly states that "under no circumstances may a PHA compel a family to have its family member(s) reside in the living room or accept fewer **bedrooms** than what the family needs." *See* Memorandum from Chung-yiu "Andrew" Lee, Office of General Counsel, Assisted Housing Division, to Laure Rawson, Office of Public and Indian Housing, Office of Voucher Management Operations (June 25, 2013) (emphasis in original). The memo further determines that the "key principle of subsidy standards is that the voucher is always tied to the number of bedrooms needed by the family." *Id.* The court must defer to interpretations of statutes made by

10

1   government agencies charged with enforcing them, unless such interpretations are unreasonable.

2   *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

3       37.    The hearing officer abused her discretion by failing to issue a decision consistent

4   with federal law and HACSC's Administrative Plan.  Accordingly the decision must be reversed

5   by this Court.

6   **B.**    **The Decision is Not Consistent with Fair Housing Law**

7       38.    The Fair Housing Amendments Act ("FHAA") provides that it is unlawful to

8   discriminate against any person in "the terms, conditions, or privileges of sale or rental of a

9   dwelling, or in the provision of services or facilities in connection with such dwelling, because of

10  a handicap of that person." 42 U.S.C. § 3604(f)(2)(A).  Disability discrimination includes "a

11  refusal to make reasonable accommodations in rules, policies, practices, or services, when such

12  accommodations may be necessary to afford such person equal opportunity to use and enjoy a

13  dwelling." 42 U.S.C. § 3604(f)(3)(B); Cal. Gov't Code § 12927(c)(1).  As a housing provider

14  that is involved with the provision of services connected with housing, HACSC is subject to

15  federal and state fair housing law.

16      39.    To establish a need for a reasonable accommodation, a tenant must show that he

17  experiences a disability and that the accommodation may be necessary to afford him an equal

18  opportunity to use and enjoy a dwelling of his choice. *Giebeler v. M&B Associates*, 343 F.3d

19  1143, 1147 (9th Cir. 2003), citing *U.S. v. California Mobile Home Park Mgmt. Co.*, 29 F.3d

20  1413, 1416 (9th Cir. 1994).

21      40.    Accommodations are deemed reasonable unless they cause an undue financial or

22  administrative burden on the housing provider or cause a fundamental alteration to the housing

23  provider's program. *Id.* at 1157.  The analysis of a reasonable accommodation under this

24  standard must be made on a case-by-case basis. *See* HUD/DOJ Joint Statement –"Reasonable

25  Accommodations Under the Fair Housing Act."

26

27

28

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND
DECLARATORY RELIEF

**C.     Mr. Huynh is a person with a disability and a Separate Bedroom is Necessary**

41.     A handicap, a term used interchangeably with disability, is broadly defined under federal law as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(d). Under California state law, the definition is even broader, and a disability need only limit (as opposed to substantially limit) a person's major life activities to qualify for protection under the Fair Employment and Housing Act (FEHA). Cal. Gov't Code §§ 12926, 12955.8.

42.     Mr. Huynh has been diagnosed with major depression and post-traumatic stress disorder due to his experiences in the Vietnam War and an internment "re-education" camp. He has been receiving treatment for his disabilities since he was given political asylum in the United States in 1992. His disability makes it extremely difficult for him to sleep as he becomes fearful and paranoid at night because he is worried he may be attacked. As a result, Mr. Huynh sleeps with his bedroom door locked. Mr. Huynh also has regular nightmares which result in loud screaming. He is fearful of being attacked while he sleeps and experiences great terror during the night. His condition requires that he have his own bedroom in order to manage the symptoms of his disabilities.

43.     HACSC independently confirmed Mr. Huynh's diagnosis and disability related need for a separate bedroom. The hearing officer also determined that Mr. Huynh has a disability related need for a separate bedroom.

**D.     The request is reasonable because it does not impose an undue financial or administrative burden or a fundamental alteration to HACSC's program.**

44.     Once a person with a disability has demonstrated the need for an accommodation based on a disability, the accommodation is presumed to be reasonable unless the housing provider can show that it imposes an undue administrative or financial burden or causes a fundamental alteration in the nature of the program. *See Giebler v. M&B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003). This analysis must be done on a case-by-case basis and a housing provider must weigh various factors including: 1) the cost of the requested accommodation, 2) the

12

financial resources of the provider, 3) the benefits that the accommodation would provide to the requester, 4) the availability of alternative accommodations that would effectively meet the requester's disability-related needs." *See* HUD/DOJ Joint Statement –"Reasonable Accommodations Under the Fair Housing Act."

45.     HACSC did not meet their burden to show that Mr. Huynh's accommodation was unreasonable based upon these standards. The letter denying the reasonable accommodation contains no analysis or determination addressing whether this request would constitute a fundamental alteration of HACSC's program or an undue financial or administrative burden. HACSC also failed to present any evidence of such a burden or alternation at the hearing. Furthermore, the hearing officer's decision fails to include any analysis regarding this issue. Thus, Mr. Huynh's request is presumed to be reasonable and must be granted.

46.     Even if the Housing Authority had done this mandated analysis, they would not have been able to provide evidence that this request would constitute an undue financial or administrative burden. The difference in tenant portion between a two and a three bedroom voucher is $5,112 per year. While this increase in payment is a substantial hardship to Mr. Huynh and his family it would not be an undue financial burden for HACSC. As discussed above, HACSC's pre-sequester level funding has been restored and they are operating with a reserve of over five million dollars. Additionally, HACSC estimates that they will be receiving and is currently receiving 99.7% of their rent appropriation in 2015. If HACSC makes no changes to their program in 2014, they will accumulate a reserve of over 9 million dollars.

47.     Granting Mr. Huynh's request will not constitute a fundamental alteration to HACSC's program. The Hearing Officer's decision quotes a portion of a federal regulation that mandates that PHAs must "provide for the smallest number of bedrooms needed to house a family without overcrowding." 24 C.F.R. § 982.402(b)(1). However, that same regulation also permits HACSC to make exceptions to the subsidy standard in a broad range of circumstances, including to accommodate persons with disabilities: "In determining family unit size for a particular family, the PHA ("Public Housing Authority") may grant an exception to its

13

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

established subsidy standards if the PHA determines that the exception is justified by the age, sex, health, *handicap*, or relationship of family members or other personal circumstances. 24 C.F.R. § 982.402(b)(8) (emphasis added). Furthermore, the vast majority of HACSC's budget and operations are dedicated to issuing housing vouchers to low-income tenants.

**E.    The Decision Subjects Mr. Huynh to Differential Treatment Based on his Disability.**

48.    As previously noted, in order to accommodate Mr. Huynh's disability with a two-bedroom voucher, the family will either have to give up the right to sleep with two or fewer people in a bedroom or lose access to the living room as a common space. If Mr. Huynh did not have a disability the family would not be forced to choose between these two options. Imposing additional fees, charges, or differential treatment as a condition of receiving a reasonable accommodation, constitutes illegal discrimination in violation of the fair housing act. HUD/DOJ Joint Statement –"Reasonable Accommodations Under the Fair Housing Act. The HQS standards also require that a unit must have a living room. 24 C.F.R. Section 982.402 (d)(2)(i). Although HACSC is not requiring Mr. Huynh to pay a monetary fee as a condition of allowing him to have a separate bedroom, this decision is discriminatorily depriving him of a benefit he would otherwise be entitled to as a condition of having his own bedroom. *See e.g., Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341 (E.D. N.Y. 2005) (tenant stated a claim for housing discrimination for failure to accommodate in case involving landlord who had refused to allow an elderly and disabled tenant to move to a first floor apartment at the same rent-controlled rent). Thus, Mr. Huynh and his family are being penalized for his disability as they are being placed in an inferior position due to Mr. Huynh's disability related need to sleep in a separate bedroom.

49.    The hearing officer abused her discretion by failing to issue a decision consistent with federal and state fair housing law. Accordingly the decision must be reversed by this Court.

14

## VIII.  CLAIMS

### FIRST CAUSE OF ACTION
[Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.et seq..*]
(Against all Respondents)

50      Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 49 above as though fully set forth herein.

51.     Defendants/Respondents injured Mr. Huynh in violation of the Fair Housing Amendments Act (FHAA) by:

a.      Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

b.      Discriminating or otherwise making unavailable dwellings because of handicap, in violation of 42 U.S.C. § 3604(f)(1); and

c.      Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of handicap, in violation of 42 U.S.C. § 3604(f)(2).

52.     As a proximate result of Defendants/Respondents' conduct, Mr. Huynh has been damaged, and continues to suffer damage, as set forth above.

### SECOND CAUSE OF ACTION
[California Fair Employment and Housing Act, Cal. Gov't. Code §12955 *et seq.et seq..*]
(Against all Respondents)

53..    Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 52 above as though fully set forth herein.

54.     Defendants/Respondents have injured Mr. Huynh in violation of the California Fair Employment and Housing Act by (FEHA):

a.      Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford disabled persons equal opportunity to use and enjoy a dwelling, in violation of Cal. Gov't Code §§ 12927(c), 12955(a);

b.      Discriminating or otherwise making unavailable dwellings because of disability, in violation of Cal. Gov't Code §§ 12955(a), 12955(k); and

15

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND
DECLARATORY RELIEF

2    because of disability, in violation of Cal. Gov't Code §§ 12927(c), 12955(a).

3      55.     As a proximate result of defendants' conduct, Mr. Huynh has been damaged, and

4    continues to suffer damage, as set forth above.

5                    **THIRD CAUSE OF ACTION**

[Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)]

6                          (Against all Respondents)

7      56.     Mr. Huynh realleges and incorporates by reference each and every allegation

8    contained in paragraphs 1 through 55 above as though fully set forth herein.

9      57.     Section 504 prohibits discrimination against qualified individuals with disabilities

10    by recipients of federal financial assistance. The regulation promulgated by HUD implementing

11    Section 504 applies to "all applicants for, and recipients of HUD assistance in the operations of

12    programs or activities receiving such assistance." 24 C.F.R. § 8.3.

13      58.     Federal financial assistance includes but is not limited to the receipt of federal

14    funding to operate and administer the Section 8 Voucher Program.

15      59.     Respondents/Defendants receive federal monies through HUD and are therefore

16    recipients of federal financial assistance.

17      60.     Respondents/Defendants and its agents are required under Section 504 to make

18    available housing and services in a nondiscriminatory manner.

19      61.     Respondents/Defendants violated Section 504 by committing the following

20    discriminatory practices:

21      a.     Failing to afford disabled individuals, including Mr. Huynh an opportunity to

22    participate in and benefit from housing equal to that afforded to other Section 8 holders, in

23    violation of 24 C.F.R. Section 8.4(b)(1)(ii);

24      b.     Otherwise limiting individuals with disabilities, including Mr. Huynh, solely

25    based on disability, in the enjoyment of rights, privileges, advantages, and opportunities enjoyed

26    by other Section 8 voucher holders, in violation of 24 C.F.R. Section 8.4(b)(viii); and

27

28

c.      Refusing to make reasonable accommodation in rules, policies, practices, or services, when such accommodations were necessary to afford disabled persons equal opportunity to use and enjoy a dwelling in violation of 24 C.F.R. Section 8.28.

62.      In doing the things alleged herein, Defendants/Respondents have violated their obligations under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.et seq..*, to operate the Section 8 Voucher Program in a nondiscriminatory manner toward persons with disabilities.

63.      As a proximate result of Defendants/Respondents' conduct, Mr. Huynh has been damaged, and continues to suffer damage, as set forth above.

### FOURTH CAUSE OF ACTION
[Violation of California Civil Code §54.1]
(Against all Respondents)

64.      Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 63 above as though fully set forth herein.

64.      Defendants injured Mr. Huynh by committing the following unlawful practices:

a.      Denying full and equal access to housing accommodations, in violation of California Civil Code § 54.1(b)(1); and

b.      Refusing to make reasonable accommodations in rules, policies, practices, or services when those accommodations may be necessary to afford individuals with disabilities equal opportunity to use and enjoy housing accommodations, in violation of California Civil Code § 54.1(b)(3)(B).

65.      As a proximate cause of defendants' conduct, Mr. Huynh has been damaged, and continues to suffer damage, as set forth above.

### FIFTH CAUSE OF ACTION
[Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.et seq..*]
(Against All Respondents)

66.      Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 65 above as though fully set forth herein.

17

67.   Through the actions described above, Defendants/Respondents have prevented Mr. Huynh from exercising the same right to the benefits of participation in services, programs or activities funded by federal, state, and local government entities and have discriminated against him as a person with a disability or handicap regarding his use of public accommodations and commercial facilities.

68.   Defendants have refused to make reasonable accommodation of Mr. Huynh's known disability in violation of 42 U.S.C. section 12111(b)(5)(A).

69.   As a proximate cause of Defendant/Respondents' conduct, Mr. Huynh has been damaged, as set forth above.

### SIXTH CAUSE OF ACTION
[Civil Rights Act, 42 U.S.C. § 1983]
(Against All Respondents)

70.   Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 69 above as though fully set forth herein.

71.   Defendants/Respondents violated Mr. Huynh's federal statutory rights by failing to reasonably accommodate his disabilities by allowing him to retain his 3-bedroom Section 8 Voucher.

72.   In acting as alleged in this petition, Defendants/Respondents violated Mr. Huynh's fair housing and civil rights to freely use and enjoy the housing of his choice.

73.   In acting as alleged in this petition, Defendants/Respondents acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

74.   As a direct and proximate result of defendant's actions, described in this complaint, plaintiff has been damaged and continues to suffer damage as alleged above.

### SEVENTH CAUSE OF ACTION
[Declaratory Relief, Cal. Code Civ. Pro. § 1060]
(Against All Respondents)

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

75.     Mr. Huynh realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 74 above as though fully set forth herein.

76.     An actual controversy exists between the parties to this litigation relating to their right and duties in that HACSC has refused to reasonably accommodate Mr. Huynh's disabilities by allowing him to keep his 3 bedroom voucher.  Plaintiff/Petitioner contends that Defendants/Respondents are mandated by state and federal civil rights law to reasonably accommodate disabilities by making exceptions to the subsidy standards. Defendants/Respondents contend that the challenged conduct is lawful.

77.     Plaintiff/Petitioner seeks a declaration that Defendant/Respondents' actions pertaining to reasonable accommodations regarding bedroom size is unlawful.  A judicial declaration is necessary and appropriate at this time so that Plaintiff/Petitioner may assure that other voucher holders in need of an exception to the subsidy standard as a reasonable accommodation will not be prejudiced by HACSC's unlawful actions.

78.     Therefore, the Court should declare that HACSC must make reasonable accommodations to its subsidy standards and that Defendants/Respondents actions complained of herein violate state and federal civil rights laws.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Huynh prays for relief as follows:

1.     For a Writ of Mandate directing HACSC, upon service of the writ, to reasonably accommodate Mr. Huynh's disabilities by allowing him to retain a 3-bedroom voucher;

2.     For a preliminary and permanent injunction, enjoining Defendants/Respondents and their agents, servants, and employees, and all persons acting under, in concert with, or for them from refusing to make reasonable accommodations in the form of an exception to the subsidy standards;

3.     For a judicial declaration that HACSC must make reasonable accommodations to its subsidy standards and that Defendants/Respondents actions complained of herein violate state and federal civil rights laws;

19

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

4.    For general, compensatory damages, and punitive damages according to proof;

5.    For statutory damages according to proof;

6.    For an award of attorneys' fees, litigation expenses, and costs of suit;

7.    For such other and further relief as the Court may deem proper.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

20

PETITION FOR WRIT OF ADMINISTRATIVE MANDATE AND COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Date: April 14, 2014

FAIR HOUSING LAW PROJECT

Annette D. Kirkham
Attorneys for Plaintiff/Petitioner
THANH HUYHN

MENTAL HEALTH ADVOCACY PROJECT

Kara Brodfuehrer
Attorneys for Plaintiff/Petitioner
THANH HUYNH

20

152 North Third Street, 3rd Floor
San Jose, CA 95112
TELEPHONE NO: (408) 280-2410        FAX NO: (408) 293-0106
ATTORNEY FOR (Name): Thanh Huynh

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San jose, 95113
BRANCH NAME: Downtown Facility, Civil Division

**CASE NAME:**
Huynh v. Housing Authority of Santa Clara County

FILED
APR 14 2014

**CASE NUMBER:**
114CV263816

| CIVIL CASE COVER SHEET | Complex Case Designation | JUDGE: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☑ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☑ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): CCP 1094.5 & 1094.6, and complaint with 7 causes of action
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 14, 2014
Annette D. Kirkham
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov