1
2
3
4
5
6
7
8
9
10

United States District Court
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THANH HUYNH,<br><br>               Plaintiff,<br><br>    v.<br><br>ALEX SANCHEZ, in his official capacity as<br>Executive Director of the HOUSING<br>AUTHORITY OF THE COUNTY OF SANTA<br>CLARA; HOUSING AUTHORITY OF THE<br>COUNTY OF SANTA CLARA, and DOES 1<br>through 100, inclusive,<br><br>               Defendants. | Case No.: 5:14-CV-02367 LHK<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS |

Plaintiff Thanh Huynh brings this civil action against the Housing Authority of the County of Santa Clara and its Executive Director, Alex Sanchez, in his official capacity (collectively, "Defendants"). Defendants now move to dismiss Huynh's Complaint in its entirety on various grounds. *See* ECF No. 8 ("Mot."). Huynh filed an Opposition, ECF No. 12 ("Opp'n"), and Defendants filed a Reply, ECF No. 13 ("Reply"). Pursuant to Civil Local Rule 7-1(b), the Court finds Defendants' Motion appropriate for determination without oral argument, and hereby VACATES the hearing scheduled for September 4, 2014. Having considered the briefing, the record in this case, and applicable law, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

## I.      BACKGROUND

Except where otherwise noted, the Court draws the following facts, taken as true for purposes of a motion to dismiss, from Huynh's Complaint.  ECF No. 1-1 ("Compl.").

### A.      Factual Background

#### 1.      The HACSC and Section 8

Defendant Housing Authority of the County of Santa Clara ("HACSC") is a governmental entity, created under California state law, that participates in the federal Section 8 Housing Choice Voucher Program.  Compl. ¶ 9.  HACSC is a Public Housing Agency ("PHA") that administers the Section 8 program in Santa Clara County, California.  *Id.*  Defendant Alex Sanchez is the Executive Director of HACSC and is sued in his official capacity.  *Id.* ¶ 8.

The Section 8 program is a federally funded program governed by federal regulation and administered by various state municipal entities.  *See* Mot. at 3.  24 C.F.R. § 982 guides administration of Section 8 Housing.  24 C.F.R. § 982.402(a) requires that a PHA "establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions."  Federal regulations also provide guidelines for determining the number of bedrooms that families receiving Section 8 vouchers may need, requiring that PHA subsidy standards:

> (1) . . . provide for the smallest number of bedrooms needed to house a family without overcrowding.
>
> (2) . . . be consistent with space requirements under the housing quality standards.
>
> (3) . . . be applied consistently for all families of like size and composition.  . . .
>
> (8) In determining family unit size for a particular family, the PHA may grant an exception to its established subsidy standards if the PHA determines that the exception is justified by the age, sex, health, handicap, or relationship of family members or other personal circumstances.

24 C.F.R. § 982.402(b)(1)-(3), (8).  A dwelling is considered unacceptable unless it has "at least one bedroom or living / sleeping room for each two persons.  Children of opposite sex, other than very young children, may not be required to occupy the same bedroom or living/sleeping room."  *Id.* § 982.401(d)(2)(ii).

Pursuant to federal regulations, HACSC maintains an Administrative Plan with voucher issuance guidelines and subsidy standards.  Compl. ¶¶ 32-33.  Under this Plan, HACSC allocates bedrooms according to the following rubric:

> one room for the head of household (with spouse, co-head, Registered Domestic Partner, or boyfriend/girlfriend if any) and one additional room for every two persons regardless of age or gender.

*Id.* ¶ 33 (quoting HACSC Administrative Plan § 6.4).

### 2.   Plaintiff Huynh

Huynh is a resident of Santa Clara County, California, who receives a Section 8 housing voucher from HACSC.  *See id.* ¶¶ 3, 7.  According to the Complaint, Huynh fought for the South Vietnam Army during the Vietnam War, and was then imprisoned in an internment camp in Vietnam for a decade.  *Id.* ¶ 1.  After receiving political asylum in 1992 and coming to the United States, Huynh was diagnosed with post-traumatic stress disorder ("PTSD") and major depression. *Id.* ¶ 2.  As a result of these disorders, Huynh "suffers from anxiety, depression and severe night terrors which cause him to fear that he is being attacked," causing him to often scream at night and lock his bedroom door for security.  *Id.* ¶ 14.

Huynh currently lives with his wife, adult son (age 25), and adult daughter (age 20) in a three-bedroom apartment.  *Id.* ¶ 13.  The family partially pays for their apartment using a Section 8 housing voucher, which they have used for the last 14 years.  *Id.* ¶ 15.  Huynh alleges that as a result of his disorders and accompanying symptoms, he is unable to share a bedroom with anyone else.  At night, Huynh sleeps alone in a single room, his wife and daughter share a room, and his son stays in the third room alone.  *Id.* ¶ 14.  Tao Nguyen, M.D., Huynh's long-time psychiatrist, has provided medical documentation supporting Huynh's need for a separate bedroom.  *Id.* ¶ 17.

Prior to September 2013, HACSC provided Huynh's family with a three-bedroom housing voucher, which accommodated Huynh's need to have a single bedroom.  However, in 2013, HACSC changed several policies related to the Section 8 program due to a reduction in federal funding.  *Id.* ¶ 25.  As a result, HACSC reduced Huynh's housing voucher from a three-bedroom unit to a two-bedroom unit.  *Id.* ¶ 16.  HACSC simultaneously increased the share of the family's

United States District Court
For the Northern District of California

1  gross income used to calculate their tenant rent obligation from 30% to 35%. As a result, Huynh's

2  responsibility for monthly rent increased from $734 to $1,160. *Id.*

3  On October 2, 2013, Huynh submitted a request to increase his housing voucher back to a

4  three-bedroom unit to accommodate his disability. *Id.* ¶ 17. With his request, Huynh submitted a

5  form completed by Dr. Nguyen, which stated that Huynh has a permanent disability limiting his

6  life activities. Dr. Nguyen stated that Huynh's condition causes him to be paranoid, fearful, and to

7  lock himself in his bedroom at night for fear of being attacked, and that Huynh needs a private

8  space to accommodate these episodes. *Id.*

9  On October 21, 2013, HACSC denied Huynh's request for an increase in his housing

10  voucher to add a bedroom. HACSC relied on its guidelines that allocate one bedroom for the head

11  of household and spouse, and one additional room for every two persons. The letter denying

12  Huynh's request stated that a two-bedroom voucher met his family's needs without overcrowding,

13  and was therefore the largest size necessary based on family size. *Id.* ¶ 18.

14  In response to the denial, Huynh submitted a request for an administrative hearing. On

15  December 12, 2013, HACSC officer Karen Goodman held a hearing on Huynh's case. *Id.* ¶ 19.

16  On January 14, 2014, Officer Goodman upheld the denial of Huynh's request, but determined that

17  Plaintiff: (1) was a person with a disability, and (2) needed a separate bedroom to accommodate his

18  disability. However, Officer Goodman wrote that "[Huynh's] approved voucher size does provide

19  [him] with a separate bedroom," noting that the Section 8 program only allows subsidization of the

20  smallest number of bedrooms needed to house a family without overcrowding. *Id.* ¶ 20.

21  On January 27, 2014, Huynh wrote to Sanchez, asking for a reversal of the hearing officer's

22  decision. Sanchez responded on March 5, 2014, declining Huynh's request. *Id.* ¶¶ 21-22.

23  **B.    Procedural History**

24  On April 14, 2014, Huynh filed this action against HACSC and Sanchez in California

25  Superior Court for the County of Santa Clara. *See* Compl. Huynh alleged that his two-bedroom

26  voucher did not account for his disability because, taking into account his disability, he should be

27  afforded three bedrooms (one for himself, and two additional bedrooms under the "one additional

28  room for every two persons regardless of age or gender" portion of the guidelines). Huynh alleged

4

1    that this failure violates multiple federal and California state laws.  Huynh's federal causes of

2    action are based on: (1) the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601; (2)

3    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); (3) the Americans with

4    Disabilities Act ("ADA"), 42 U.S.C. § 12101; and 4) the Civil Rights Act, 42 U.S.C. § 1983.

5    Huynh's California state law claims included: (1) the California Fair Employment and Housing Act

6    ("FEHA"), Cal. Gov't Code § 12955, and (2) the California Disabled Persons Act ("CDPA"), Cal.

7    Civ. Code § 54.1.

8            On May 22, 2014, Defendants removed this case from California Superior Court to this

9    Court under federal question jurisdiction, pursuant to 28 U.S.C. § 1441(a), based on Huynh's

10   federal causes of action.  *See* ECF No. 1.  On May 29, 2014, Defendants filed this motion to

11   dismiss all of Huynh's claims.  ECF No. 8.  On June 13, 2014, Huynh filed an Opposition.  ECF

12   No. 12.  On June 23, 2014, Defendants filed a Reply.  ECF No. 13.

13           Defendants move to dismiss all of Huynh's claims under Fed. R. Civ. P. 12(b)(6).  *See*

14   *generally* Mot.  Defendants also move under Fed. R. Civ. P. 12(f) to strike Huynh's demand for

15   punitive damages against HACSC.  *See id.* at 17-18.  In his Opposition, Huynh agrees to dismiss

16   his § 1983 claims and his demand for punitive damages against HACSC.  *See* Opp'n at 15.

17   **II.      LEGAL STANDARD**

18           **A.      Motion to Dismiss**

19           A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

20   sufficiency of a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In

21   considering whether the complaint is sufficient to state a claim, the court must accept as true all of

22   the factual allegations contained in the complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23   However, the court need not accept as true "allegations that contradict matters properly subject to

24   judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of

25   fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

26   2008) (quotation and citation omitted).  While a complaint need not allege detailed factual

27   allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

28   that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

**B.     Leave to Amend**

If the Court determines that the Complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Fed. R. Civ. P. 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.    DISCUSSION**

**A.     Fair Housing Amendments Act ("FHAA"): First Cause of Action**

Huynh alleges violations of the FHAA under 42 U.S.C. §§ 3604(f)(3)(B), (f)(1), and (f)(2).  *See* Compl. ¶ 51.  Those sections state that it is unlawful:

> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . . ;
>
> (f)(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ;
>
> (f)(3) For purposes of this subsection, discrimination includes . . .
>
>> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .

Generally, to state a claim of disability discrimination under the FHAA, the plaintiff must allege: "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h);

(2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Defendants move to dismiss on the grounds that the FHAA does not apply to them because "Defendants are not offering dwellings for rent, but instead allocating federal money to Plaintiff." Mot. at 6. According to Defendants, "[w]hile the private landlord from whom Plaintiff is procuring housing is subject to the provisions of the FHAA, the agency allocating the federal money is not." *Id.*; *see also* Reply at 5. Defendants focus on the definition and use of the term "dwelling" in the FHAA, arguing that they do not own any dwellings at issue. *See* § 3602(b).

As an initial matter, Huynh points out that federal regulations contradict Defendants' position. *See* Opp'n at 7. 24 C.F.R. § 982.53, which addresses "[e]qual opportunity requirements" under Section 8, states that "[t]he tenant-based program requires compliance with all equal opportunity requirements imposed by contract or federal law, including the authorities cited at 24 CFR 5.105(a) and title II of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq." In turn, § 5.105(a)(1) expressly lists the "Fair Housing Act (42 U.S.C. 3601-19)" as a requirement that "appl[ies] to all HUD programs." Moreover, § 982.53(b) requires all Public Housing Agencies to certify that: "The PHA will administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act."

Defendants do not address these regulations. *Cf.* Reply at 3-6. Instead, to support their interpretation of the FHAA, Defendants rely heavily on two cases from other circuits: *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277 (3d Cir. 1993), and *Michigan Protection & Advocacy Service, Inc. v. Babin*, 18 F.3d 337 (6th Cir. 1994). However, neither case reaches as far as Defendants propose.

In *Growth Horizons*, a Pennsylvania corporation sued Delaware County, asserting discrimination against the disabled under the FHAA, after the County failed to execute a contract

7

United States District Court
For the Northern District of California

1   between the parties.  983 F.2d at 1279.  Growth Horizons agreed to develop four properties to

2   provide housing for mentally disabled County residents.  *Id*.  After the properties suffered

3   substantial problems, the County rescinded its contract with Growth Horizons.  *Id*.  In the suit,

4   Growth Horizons contended that the County's refusal to assume the leases for the properties

5   constituted unlawful discrimination against the disabled.  *Id*.  On appeal, the Third Circuit held that

6   Growth Horizons had "no meritorious claim under § 3604(f)(1)" because "there can be no liability

7   unless the defendant in a case acts to make a dwelling unavailable to a potential buyer or lessee."

8   *Id.* at 1283.

9       Defendants point to several statements from *Growth Horizons* to argue that Huynh fails to

10  state an FHAA claim.  *See* Mot. at 8.  The Third Circuit observed: "The conduct and decision-

11  making that Congress sought to affect was that of persons in a position to frustrate such choices—

12  primarily, at least, *those who own the property of choice* and their representatives."  983 F.2d at

13  1283 (emphasis added).  The court also noted that "[n]othing in the text or legislative history of

14  § 3604(f)(1) suggests to us that Congress intended to regulate and thereby subject to judicial

15  review the decision-making of public agencies which sponsor housing for the handicapped."  *Id.*

16  Thus, according to Defendants, *Growth Horizons* held that anyone who does not own a "dwelling"

17  cannot be liable for discrimination under the FHAA.  *See* Mot. at 6-9.

18      Defendants overextend *Growth Horizons*.  The Third Circuit did not address the question

19  presented here—whether the FHAA applies to agencies that restrict Section 8 housing vouchers in

20  an (allegedly) discriminatory way.  Rather, Delaware County refused to continue leasing properties

21  originally intended to house mentally disabled residents, "a situation in which a public agency

22  sponsor of housing for the handicapped . . . has decided not to lease particular housing but rather to

23  make an alternative choice."  983 F.2d at 1283.  The court observed that "the County is both the

24  defendant actor and the potential buyer or lessee; we are thus asked to find that the County violated

25  the statute by making housing unavailable to itself."  *Id.*  Thus, the facts in *Growth Horizon* bear

26  little resemblance to denial of a Section 8 voucher.  Moreover, *Growth Horizons* dealt only with

27  § 3604(f)(1), which prohibits actions that "otherwise make unavailable or deny" housing.

28  However, Huynh also pleads violations of § 3604(f)(2), which prohibits discrimination "in the

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

provision of services or facilities in connection with such dwelling."  Defendants have not

explained why administration of housing vouchers cannot qualify as "provision of services . . . in

connection with" a dwelling.

Next, Defendants invoke *Babin*, where the Sixth Circuit addressed another discrimination

claim under the FHAA.  The Michigan Protection and Advocacy Service sued a real estate agent,

her agency, and a group of neighbors for allegedly discriminating against the disabled.  The agent

purchased a property with the intention of converting it to a group home for the disabled, by

agreement with the local government.  18 F.3d at 340.  After the government repeatedly delayed

the project, the neighbors who opposed a group home in their community bought the house from

the agent.  *Id.* at 341.  The plaintiff postulated that the defendants discriminated against the

disabled under § 3604(f)(1) by transferring the house to private interests and preventing its use as a

group home.  The Sixth Circuit rejected this theory of liability, holding that "fair economic

competition" is not discrimination under the FHAA, and that the neighbors' "action in collecting

money to buy the house is not direct enough to fall within the terms of § 3604(f)(1)."  *Id.* at 345.

The court cited *Growth Horizons*, saying: "We agree with the Third Circuit that Congress's intent

in enacting § 3604(f)(1) was to reach property owners and their agents who directly affect the

availability of housing for a disabled individual."  *Id.* at 344.

Defendants' reliance on *Babin* is also misplaced.  *See* Mot. at 8-9.  *Babin* rejected the claim

that buying a house constitutes discrimination merely because it prevents use of that house for the

disabled.  None of the parties were disabled or directly affected in their ability to obtain housing by

the allegedly unlawful transaction.  That situation bears no resemblance to HACSC's

administration of Section 8 housing vouchers.  Like *Growth Horizons*, *Babin* addressed only

§ 3604(f)(1), not §§ 3604(f)(2) or (f)(3)(B), which are also at issue here.  Moreover, as Defendants

acknowledge, *Babin* stated that "the scope of § 3604(f)(1) may extend further, to other actors who,

*though not owners or agents*, are in a position directly to deny a member of a protected group

housing rights."  18 F.3d at 344 (emphasis added); *see* Mot. at 8-9.  The Sixth Circuit also

observed: "When Congress amended § 3604(f) in 1988, it intended the section to reach not only

actors who were directly involved in the real estate business, but also actors who directly affect the

9

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1  availability of housing, *such as state or local governments*."  18 F.3d at 344 (emphasis added)

2  (citing H.R. Rep. No. 711, 100th Cong., 2d Sess. 22 (1988)).  The court cited as an example *United*

3  *States v. City of Birmingham*, where the Sixth Circuit upheld an injunction against the City of

4  Birmingham under the Fair Housing Act, when the City attempted to interfere with the

5  development of a racially integrated, low-income, senior citizen facility.  727 F.2d 560, 561 (6th

6  Cir. 1984).  Thus, contrary to Defendants' arguments, *Babin* actually suggests that government

7  agencies (such as HACSC) might fall within the ambit of the FHAA if they interfere with

8  availability of housing for the disabled, despite not owning housing.

9       Additionally, Huynh cites an unpublished Ninth Circuit case, *Burgess v. Alameda Housing*

10 *Authority*, that is more factually similar to the case at hand.  98 F. App'x 603 (9th Cir. 2004).  In

11 *Burgess*, the Ninth Circuit allowed a Section 8 voucher recipient to proceed on her FHAA claims

12 that the Alameda Housing Authority unlawfully refused to approve her second voucher extension

13 because of a disability.  *See id.* at 606 ("Burgess's allegations put ACHA on notice of her

14 contention that the housing agency unlawfully refused to accommodate her disability by approving

15 a second extension.").  While the court did not squarely address the issue, *Burgess* suggests that a

16 voucher recipient can pursue an FHAA claim against a Public Housing Agency.  More broadly, the

17 Ninth Circuit has held that a local government's discriminatory use of zoning ordinances—which

18 does not involve ownership of a "dwelling"—are subject to the FHAA.  *See City of Edmonds v.*

19 *Wash. State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994).  Huynh notes other persuasive

20 (but not controlling) authority that the FHAA applies to agencies that administer Section 8

21 vouchers.  *See Hinneberg v. Big Stone Cnty.*, 706 N.W.2d 220, 224-25 (Minn. 2005) ("In light of

22 these requirements, we conclude that the broad phrase in the FHAA—'to otherwise make

23 unavailable or deny' a dwelling—makes the FHAA applicable to public housing authorities

24 administering Section 8 housing voucher programs.").

25      Defendants have not provided convincing authority to show that Huynh's claim cannot

26 proceed as a matter of law.  Accordingly, the Court DENIES Defendants' motion to dismiss

27 Huynh's first cause of action under the FHAA on this basis.

28

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court

For the Northern District of California

### B.   California Fair Employment and Housing Act ("FEHA"): Second Cause of Action

Huynh alleges violations of the FEHA, citing Cal. Gov't Code §§ 12927(c), 12955(a), and 12955(k).  *See* Compl. ¶ 54.  In order to state a prima facie case under the FEHA, a plaintiff must plead facts alleging that "she is a member of a protected class, that she applied and was qualified for a housing accommodation, was denied such housing accommodation, and that similarly situated individuals not in a protected class applied for and obtained housing, or if '[she] provide[s] other circumstantial evidence of discriminatory motive in refusing her the housing accommodation.'"  *McDonald v. Coldwell Banker*, 543 F.3d 498, 503 (9th Cir. 2008) (quoting *Dep't of Fair Emp't & Hous. v. Sup. Ct.*, 99 Cal. App. 4th 896, 902 (2002)).

Similar to its arguments above regarding the FHAA, Defendants move to dismiss the FEHA claims because Defendants are not "owners" of housing under Cal. Gov't Code § 12927(e).  The Court finds Defendants' statutory argument unpersuasive.  The FEHA definition of "owner" includes "the lessee, sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodations, *and includes the state and any of its political subdivisions and any agency thereof.*"  Cal. Gov't Code § 12927(e) (emphasis added).  Thus, despite Defendants' claim that the FEHA applies only to defendants who own property, the statutory definition of "owner" includes governmental entities.  Furthermore, as Defendants note candidly, the FEHA defines "discrimination" to "include[] refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."  *Id.* § 12927(c)(1); *cf.* Mot. at 10.  Thus, the FEHA applies to "rules, policies, practices, or services" that are "necessary to afford" housing, which may encompass Defendants' administration of Huynh's Section 8 voucher, even though Defendants do not own Huynh's apartment.  Aside from their interpretation of the FEHA definition of "owner," Defendants cite no authority holding that only property owners can be liable under the FEHA.

Additionally, the FEHA provides at least as much protection to the disabled as the FHAA does: "Nothing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act of 1988 (P.L. 100-430)

11

United States District Court
For the Northern District of California

1   and its implementing regulations (24 CFR 100.1 et seq.), or state law relating to fair employment

2   and housing as it existed prior to the effective date of this section." *Id.* § 12955.6. Also, the Ninth

3   Circuit "appl[ies] the same standards to FHA and FEHA claims." *Walker v. City of Lakewood*, 272

4   F.3d 1114, 1131 n.8 (9th Cir. 2001) (citing *Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App. 4th

5   138, 150 n.6 (1997)). In *Pacific Shores Properties, LLC v. City of Newport Beach*, the Ninth

6   Circuit treated FHA and FEHA claims together and reversed summary judgment against the

7   plaintiff on those claims, holding that "zoning practices that discriminate against disabled

8   individuals can be discriminatory, and therefore violate [FHAA] § 3604, if they contribute to

9   'mak[ing] unavailable or deny[ing]' housing to those persons." 730 F.3d 1142, 1156-57 & n.14

10   (2013); *see also Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1150-51 (C.D.

11   Cal. 2001) ("The Court notes that the substantive prohibitions of § 12955(a), (d), and (k) are the

12   same as the substantive prohibitions of § 3604(a)."). Zoning practices do not require ownership of

13   property, which indicates that Defendants' theory that ownership is required for FHAA or FEHA

14   liability is incorrect.

15       Huynh has pleaded facts sufficient to state a claim under the FEHA. Huynh alleges that he

16   is disabled to the extent that he cannot share a bedroom (s*ee* Compl. ¶ 2), that he was qualified to

17   receive housing benefits from HACSC, (*id.* ¶¶ 4-5), that Defendants denied his requested

18   accommodation, (*id.*), and that he receives a lesser benefit than non-disabled counterparts because

19   his son is forced to sleep in the living room of his house (*id.* ¶ 35). Defendants do not contest that

20   Huynh is disabled or qualified to receive housing benefits from HACSC. While Defendants may

21   dispute certain factual allegations at later stages of the litigation, at this stage Plaintiff has pleaded

22   sufficient facts to state a cause of action under the FEHA to survive motion to dismiss. *See*

23   *McDonald*, 543 F.3d at 503 (reciting elements of a claim under § 12955). Accordingly, the Court

24   DENIES Defendants' motion to dismiss Huynh's second cause of action under the FEHA on this

25   basis.

26       **C.     California Disabled Persons Act ("CDPA"): Fourth Cause of Action**

27       Huynh alleges violations of the CDPA, claiming that Defendants violated Cal. Civ. Code

28   § 54.1 by "[d]enying full and equal access to housing accommodations" (§ 54(b)(1)) and

1   "[r]efusing to make reasonable accommodations in rules, policies, practices, or services when those

2   accommodations may be necessary to afford individuals with disabilities equal opportunity to use

3   and enjoy housing accommodations" (§ 54(b)(3)(B)).  Compl. ¶ 64.  The CDPA states in relevant

4   part:

> (b)(1) Individuals with disabilities shall be entitled to full and equal access, as other
> members of the general public, to all housing accommodations offered for rent,
> lease, or compensation in this state, subject to the conditions and limitations
> established by law, or state or federal regulation, and applicable alike to all persons.
> . . .
> (b)(3)(B) Any person renting, leasing, or otherwise providing real property for
> compensation shall not refuse to make reasonable accommodations in rules,
> policies, practices, or services, when those accommodations may be necessary to
> afford individuals with a disability equal opportunity to use and enjoy the premises.

10  Cal. Civ. Code §§ 54.1(b)(1), (b)(3)(B).

11          As with Huynh's FHAA and FEHA claims, Defendants move to dismiss because

12  Defendants do not own Huynh's apartment.  Defendants argue that Huynh has not alleged

13  sufficient facts because he has not stated that Defendants are "[r]enting, leasing, or otherwise

14  providing real property for compensation."  Mot. at 11 (quoting Cal. Civ. Code § 54.1(b)(3)(B)).

15  Defendants' ownership arguments fare no better in connection with the CDPA.

16          First, Defendants claim that they do not rent, lease, or otherwise provide real property for

17  compensation under § 54.1(b)(3)(B).  However, Defendants cite no legal authority holding that

18  Public Housing Agencies that administer Section 8 vouchers are exempt from § 54.1(b)(3)(B), or

19  from the CDPA more generally.  Furthermore, Defendants receive compensation (in the form of

20  funding) from the federal government to provide housing vouchers to Huynh and other low-income

21  residents.  *See* Compl. ¶¶ 16, 25, 58-59.  Second, Defendants' argument addresses only §

22  54.1(b)(3)(B) and not § 54.1(b)(1), which Huynh also alleges.  *See id.* ¶ 64.  For these reasons,

23  Defendants' motion to dismiss Huynh's CDPA claims falls short.

24          Additionally, Huynh argues that he has adequately pleaded CDPA violations by virtue of

25  pleading claims under the FEHA and ADA.  According to Huynh, "FEHA and CDPA claims are

26  analyzed under the same standard," and "the CDPA mirrors the Americans with Disabilities Act."

27  Opp'n at 10.  These arguments provide little support for Huynh's position.  As explained above,

28  the Ninth Circuit has indicated that FEHA claims do not depend on defendants' ownership of

**United States District Court**
For the Northern District of California

13

housing.  *See Pacific Shores*, 730 F.3d at 1156-57.  However, Huynh's cases do not discuss

whether the CDPA applies to defendants who do not own the property in question.[1]  Huynh cites

*Rodriguez v. Morgan* to argue that courts analyze the FEHA and CDPA under the same standard.

No. CV 09-8939-GW, 2012 U.S. Dist. LEXIS 9643 (C.D. Cal. Jan. 26, 2012).  *Rodriguez* stated

that "the same four elements under the FEHA criteria can establish a refusal to provide reasonable

accommodation claim for the [C]DPA," but in the context of addressing discrimination claims

against a private housing owner, not a Public Housing Agency.  *Id.* at *15; *see also Smith v.*

*Powdrill*, No. CV 12-06388 DDP, 2013 U.S. Dist. LEXIS 154485, at *29-30 (C.D. Cal. Oct. 28,

2013) (same).  Regarding the ADA, Huynh correctly notes that "[a] violation of the right of an

individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also

constitutes a violation" of the CDPA.  Cal. Civ. Code § 54.1(d).  However, Huynh did not allege an

ADA violation as a basis for his CDPA claims, and therefore cannot rely on § 54.1(d) as a basis for

opposing Defendants' motion to dismiss.  *See* Compl. ¶ 64.

Even setting aside Huynh's arguments regarding the overlap between his FEHA and ADA

claims and his CDPA claims, Defendants provide no persuasive reason to dismiss Huynh's fourth

cause of action under the CDPA as set forth above.  Accordingly, the Court DENIES Defendants'

motion to dismiss Huynh's fourth cause of action under the CDPA on this basis.

### D.   Rehabilitation Act: Third Cause of Action

Huynh alleges that Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794(a), by failing to afford Huynh housing equal to that afforded to other Section 8 holders,

limiting his benefits solely based on disability, and refusing to make a reasonable accommodation

in rules, policies, practices, or services.  *See* Compl. ¶ 61 (citing 24 C.F.R. §§ 8.4(b)(1)(ii),

8.4(b)(1)(viii), 8.28).  "Section 504 of the Rehabilitation Act prohibits discrimination against

---

[1]     Huynh refers to statements on the HACSC website to argue that HACSC in fact owns rental housing.  *See* Opp'n at 10.  The Court will not take judicial notice of these materials, which are not referenced in the Complaint.  *See Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2014 U.S. Dist. LEXIS 81042, at *19 (N.D. Cal. June 12, 2014) ("The Court generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice.").

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

physically handicapped and disabled persons by recipients of federal financial assistance." *Indep.*
*Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1339 (N.D. Cal. 1993).
To prove that a program or service violates § 504, "a plaintiff must show: (1) he is an 'individual
with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the
benefits of the program solely by reason of his disability; and (4) the program receives federal
financial assistance." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th
Cir. 1997) (quoting 29 U.S.C. § 794).

    At this stage, Defendants do not dispute Huynh's disability, qualification for Section 8
benefits, or Defendants' receipt of federal funding.  Rather, Defendants contend that Huynh cannot
state a claim under the Rehabilitation Act because he "was never denied, but rather, <u>received</u> the
benefits of the Section 8 program."  Reply at 11 (emphasis in original).  Defendants assert that
even though they denied Huynh's request for a unit with an additional bedroom, Huynh cannot
possibly plead facts showing that "the reduction in services was due to the fact that he is disabled,"
or that "the reduction prohibited him or his household from continuing to receive the housing
subsidy."  Mot. at 13.  According to Defendants, Huynh received "meaningful access" to housing
services, which is all that the law requires.  *See id.* at 12-13.

    Defendants' arguments are misplaced.  The ultimate question of whether Huynh received
"meaningful access" to the housing benefits that other non-disabled people received is a factual
question not appropriate for resolution at this stage.

    In support of their position, Defendants rely on *Alexander v. Choate* for the proposition that
Huynh received "meaningful access" to Defendants' programs.  469 U.S. 287 (1985).  In
*Alexander*, the U.S. Supreme Court rearticulated the standard it established in *Southeastern*
*Community College v. Davis*, 442 U.S. 397 (1979)—that under the Rehabilitation Act, "while a
grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate
the handicapped, it may be required to make 'reasonable' ones."  *Id.* at 300.  The Court further
explained that "an otherwise qualified handicapped individual must be provided with meaningful
access to the benefit that the grantee offers. . . .  [T]o assure meaningful access, reasonable
accommodations in the grantee's program or benefit may have to be made."  *Id.* at 301.  However,

15

the Court noted that "[t]he Act does not, however, guarantee the handicapped equal results . . . ." *Id.* at 304.  Applying these principles, the Court affirmed dismissal of the plaintiff's discrimination claims under Rule 12(b)(6), holding that a reduction in Medicare coverage for inpatient care from 20 to 14 days annually—which was applied equally to all participants, disabled or non-disabled— did not deny disabled participants "meaningful access" to the service.  The Court reasoned that the reduction in coverage did not distinguish between disabled and non-disabled participants, and nothing suggested that the reduction would "exclude the handicapped from or deny them the benefits of the 14 days of care the State has chosen to provide." *Id.* at 302.

Defendants also rely on the Second Circuit case of *Wright v. Giuliani* to support their "meaningful access" argument.  230 F.3d 543, 548 (2d Cir. 2000).  In *Wright*, five homeless individuals with HIV or AIDS accused New York City officials of violating the Rehabilitation Act by failing to provide emergency housing that accommodated their medical needs.  *Id.* at 544.  The Second Circuit upheld denial of plaintiffs' request for a preliminary injunction, noting that "[Section 504] do[es] not require that substantively different services be provided to the disabled, no matter how great their need for the services may be.  They require only that covered entities make 'reasonable accommodations' to enable 'meaningful access' to such services as may be provided, whether such services are adequate or not." *Id.* at 548.  Thus, the court relied on the distinction "between (i) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits." *Id.*

Defendants fail to explain how the facts of *Alexander* and *Wright* match Huynh's case and compel dismissal here.  In *Alexander* and *Wright*, the plaintiffs requested extra services that defendants did not provide to non-disabled people.  In this case, Huynh requests a modification of Defendants' voucher policy, as part of the existing Section 8 program, to accommodate his disability.  To win on the merits of his claim, Huynh will need to show that his request is a reasonable modification of Defendants' administration of the Section 8 program, and that this modification is required to ensure he has "meaningful access" to housing.  *See Alexander*, 468 U.S. at 301.  The determination of whether an accommodation is "reasonable," or whether Huynh's access to housing is "meaningful," "requires a fact-specific, individualized analysis of the disabled

16

*United States District Court*
For the Northern District of California

1    individual's circumstances and the accommodations that might allow him to meet the program's

2    standards." *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).  Once a

3    plaintiff has made a preliminary showing that a reasonable accommodation was possible, the

4    defendant then bears the burden to prove that such an accommodation is not in fact reasonable.

5    *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) ("[Plaintiff] bore the initial burden of

6    producing evidence that a reasonable accommodation was possible. . . . Thereafter, the burden

7    shifted to the [defendant] to produce rebuttal evidence that the requested accommodation was not

8    reasonable." (citing *Wong*, 192 F.3d at 816-17)).  Because these issues require "a fact-specific,

9    individualized analysis," *Wong*, 192 F.3d at 818, they are not appropriate for resolution at the

10   pleading stage.  *See also In re Google, Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *17

11   (N.D. Cal. Sept. 26, 2013) (holding that "complicated, fact-intensive questions [are] better

12   answered at later stages of the litigation").

13         Huynh has pleaded his Rehabilitation Act claim with sufficient specificity.  The Complaint

14   alleges that Defendants denied Huynh "housing equal to that afforded to other Section 8 holders,"

15   and "solely based on disability."  Compl. ¶ 61.  Huynh states that HACSC failed to present any

16   evidence as to whether Huynh's requested accommodation would constitute a fundamental

17   alteration to HACSC's program or undue burden.  *Id.* ¶ 45.  Huynh also alleges that "in order to

18   accommodate Mr. Huynh's disability with a two-bedroom voucher, the family will either have to

19   give up the right to sleep with two or fewer people in a bedroom or lose access to the living room

20   as a common space.  If Mr. Huynh did not have a disability the family would not be forced to

21   choose between these two options."  *Id.* ¶ 48.  The Court finds these allegations adequate to make a

22   plausible allegation, for purposes of a motion to dismiss, that Defendants failed to provide Huynh

23   with meaningful access to housing benefits.  *See Iqbal*, 556 U.S. at 678; *Weinreich*, 114 F.3d at

24   978.

25         Accordingly, the Court hereby DENIES Defendants' motion to dismiss Huynh's third cause

26   of action under the Rehabilitation Act on this basis.

27

28

                                              17

**E.      Americans with Disabilities Act ("ADA"): Fifth Cause of Action**

For his ADA claim, Huynh mistakenly alleged violations of 42 U.S.C. § 12111(b)(5)(A), a statutory provision that does not exist. *Cf.* Compl. ¶ 68.  In his Opposition, Huynh acknowledges this error and requests leave to amend to state a cause of action under 42 U.S.C. § 12132.  *See* Opp'n at 14 n.5.  Defendants oppose, arguing that such an amendment would be futile because there can be no liability under the ADA, as Huynh "did obtain a housing subsidy from the HACSC."  Reply at 13.

Section 12132 of the ADA states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A claim under Title II of the ADA requires a plaintiff to plead "four elements: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability."  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quotations and citations omitted).  "Title II of the ADA must be interpreted in a manner consistent with Section 504" of the Rehabilitation Act.  *Id.* at 1269 n.7.

As with Huynh's Rehabilitation Act claims above, Defendants repeat their argument that Huynh fails to state a claim under the ADA because he was not *completely* denied the benefits of the Section 8 program.  Instead, Defendants argue that Huynh's ADA claim should be dismissed because "[h]e just did not receive as much money as he wanted."  Mot. at 14.  As noted above, the Court rejects this argument.  Aside from identifying an incorrect statutory provision, Huynh pleaded sufficient facts to state a claim under Title II of the ADA.  The Court finds that resolution of this issue involves questions of fact more appropriate for later stages of litigation.  *See In re Google, Inc.*, 2013 WL 5423918 at *17.

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

*United States District Court*
For the Northern District of California

1    Accordingly, the Court DENIES Defendants' motion to dismiss Huynh's ADA claims and

2  GRANTS Huynh's request to amend his ADA claim, as stated in his Opposition.  Defendants

3  identify no undue hardship or prejudice that would result from permitting amendment of this claim.

4  *See Carvalho*, 629 F.3d at 892-93.  Huynh shall file an amended Complaint to address this

5  deficiency within 21 days of the issue date of this Order.

6    **F.    Federal Preemption of State Law Claims**

7    In the alternative, Defendants also contend that Huynh's state law causes of action (FEHA

8  and CDPA) must be dismissed due to federal preemption.  The HUD regulation for equal

9  opportunity requirements states:

> Nothing in part 982 is intended to pre-empt operation of State and local laws that
> prohibit discrimination against a Section 8 voucher-holder because of status as a
> Section 8 voucher-holder.  However, *such State and local laws shall not change or
> affect any requirement of this part*, or any other HUD requirements for
> administration or operation of the program.

13  24 C.F.R. § 982.53(d) (emphasis added).  According to Defendants, "it is clear that Congress

14  intended that HUD's requirements would pre-empt those of any individual state or locality with

15  respect to the administration of the Section 8 Program."  Mot. at 16.  Defendants believe that

16  because the HUD requirements do not prohibit a living arrangement that includes having one

17  family member sleep in the living room, Huynh's state law claims seek to "change or affect" HUD

18  regulations by requiring Defendants to exceed HUD requirements in Huynh's situation.

19    "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts

20  state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative

21  field to such an extent that it is reasonable to conclude that Congress left no room for state

22  regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation

23  marks and citations omitted).  "[A] defendant asserting preemption bears the burden of proving that

24  it applies."  *Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014 U.S. Dist. LEXIS 41523, at *12

25  n.5 (N.D. Cal. Mar. 25, 2014) (citing *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1087 n.2 (2011)).

26    In the instant case, the Court does not find Defendants' preemption arguments persuasive.

27  Defendants appear to argue that § 982.53(d) expressly preempts California law, as Defendants

28  contend that "it is clear that Congress intended" such preemption.  Mot. at 16; *see also* Reply at 11.

*United States District Court*
*For the Northern District of California*

19

Case No.: 14-CV-02367 LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

However, Defendants cite no cases that discuss whether § 982.53(d) preempts state anti-discrimination statutes such as the FEHA or CDPA.  Section 982.53(d) provides that HUD's regulations do not preempt "State and local laws that prohibit discrimination . . . because of status as a Section 8 voucher-holder," and then states that "*such* State and local laws shall not change or affect" other HUD requirements, which indicates that the relevant "State and local laws" are those that prohibit discrimination based on status as a voucher-holder.  Here, Huynh does not allege discrimination based on his status as a voucher-holder, but rather discrimination based on his disability.  Moreover, § 982.402(b)(8) states that "the PHA *may grant an exception to its established subsidy standards* if the PHA determines that the exception is justified by the age, sex, health, handicap, or relationship of family members or other personal circumstances" (emphasis added).  This regulation further suggests that HUD regulations do not preempt Huynh's state law claims based on disability discrimination.

Huynh points out that the District Court for the District of Columbia has held that § 982.53(d) did not preempt a local statute that outlawed discrimination against prospective tenants on the basis of source of income.  *Bourbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 87 (D.D.C. 2008).  Defendants do not address the reasoning of *Bourbeau* in their Reply.  Furthermore, other courts have held that there is a presumption that federal and state regulation can co-exist, and that local law may provide additional protections beyond federal law.  *See Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 716 (1985) (noting "the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation"); *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1207 (9th Cir. 2009) (addressing local rent control laws; "The HUD regulation merely creates a floor of protection, which local laws may enhance.").  In light of these standards, Defendants have failed to demonstrate preemption of Huynh's FEHA and CDPA claims at this stage.

### G.     Declaratory Judgment: Seventh Cause of Action

Defendants move to dismiss Huynh's seventh cause of action for Declaratory Relief under Cal. Code Civ. P. § 1060 because "there is no legal basis for any of the claims made by Plaintiff."  Mot. at 17.  Because the Court decides that Huynh has satisfied the pleading requirements for his

20

United States District Court
For the Northern District of California

1  causes of action at this juncture (other than for his ADA claims, as discussed above), the Court

2  DENIES Defendants' motion to dismiss Huynh's declaratory judgment claims.

3       **H.**     **Voluntarily Dismissed Claims**

4       As noted above, Huynh agrees to dismiss his § 1983 claims (sixth cause of action) and his

5  demand for punitive damages against the HACSC.  *See* Opp'n at 15.  Accordingly, Defendants'

6  motion to dismiss Huynh's § 1983 claims is GRANTED, and Huynh's § 1983 claims are hereby

7  dismissed without prejudice.  Defendants' motion to strike Huynh's demand for punitive damages

8  against HACSC under Rule 12(f) is GRANTED.

9  **IV.**     **CONCLUSION**

10       For the foregoing reasons, Defendants' motion to dismiss Huynh's first, second, third,

11  fourth, fifth, and seventh causes of action is DENIED.  Defendants' motion to dismiss Huynh's

12  § 1983 claims is GRANTED, and Huynh's § 1983 claims are hereby dismissed without prejudice.

13  Defendants' motion to strike Huynh's demand for punitive damages against HACSC under Rule

14  12(f) is GRANTED.  The Court GRANTS Huynh's request to amend his Complaint to identify a

15  proper statutory provision under the ADA.  Within 21 days of the issuance of this Order, Huynh

16  shall file an amended Complaint.  Huynh may not add new claims or parties without leave of the

17  Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

18  **IT IS SO ORDERED.**

19  Dated: September 2, 2014          *Lucy H. Koh*

20                             LUCY H. KOH