1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

THANH HUYNH, et al.,

          Plaintiffs,

     v.

KATHERINE HARASZ, et al.,

          Defendants.

Case No. 14-CV-02367-LHK

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 41

Plaintiffs[1] bring this action against the Housing Authority of the County of Santa Clara ("HACSC") and Katherine Harasz,[2] in her official capacity as HACSC's Interim Executive Director (collectively, "Defendants"). Before the Court is Plaintiffs' motion for class certification.

---

[1] The named Plaintiffs are Thanh Huynh, Venus Benabides, Rudy Garcia, Lynda Gomes, Nicholas Wallace, Lillie Ware, Stephen Jones, Dehab Haile, and Freihiwet Tesfamariam.

[2] When Plaintiffs filed the Second Amended Complaint in January 2015, Alex Sanchez was Executive Director of the Housing Authority of the County of Santa Clara. *See* ECF No. 30 ("SAC") ¶ 17. Sanchez retired in July 2015, and Harasz was subsequently appointed Interim Executive Director. ECF No. 49 ("Sangalang Decl.") ¶ 3. Pursuant to Federal Rule of Civil Procedure 25(d), Harasz has been automatically substituted as a Defendant. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. . . . The court may order substitution at any time, but the absence of such an order does not affect the substitution."); *see also McCormick v. Herzog*, 788 F.3d 1017, 1022 n.1 (9th Cir. 2015) (applying Rule 25(d)).

1

ECF No. 41 ("Mot."). Having considered the parties' submissions and oral arguments, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion for class certification.

## I.    BACKGROUND

### A. Factual Background

The Section 8 Voucher Program provides monthly housing subsidies to low-income individuals and their families. SAC ¶ 23. Unlike traditional public housing programs, subsidies provided under the Section 8 Program are "not tied to a particular unit in a particular building." *Id.* ¶ 24. Instead, voucher holders find a private landlord willing to accept a Section 8 voucher. If the private landlord agrees to rent to the voucher holder, the landlord is paid a monthly subsidy by a local Public Housing Agency ("PHA"), known as the "housing assistance payment." *Id.* ¶ 27. The voucher holder pays the remaining balance. *Id.* ¶ 23.

Various federal regulations govern how a local PHA may operate its Section 8 Program. Under 24 C.F.R. § 982.503(a), for instance, a "PHA must adopt a payment standard schedule that establishes voucher payment standard amounts for each [market] area in the PHA['s] jurisdiction." 24 C.F.R. § 982.503(a). These voucher payment standards are based on the fair market value of rental units in a particular area and "are used to calculate the monthly housing assistance payment for a family." *Id.* According to Plaintiffs, voucher holders in Santa Clara County are generally responsible "for paying a [monthly] rental amount equal to 30% of their income," although the exact percentage varies. *Id.* ¶ 25. Likewise, 24 C.F.R. § 982.402(a) provides that a PHA "must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions." 24 C.F.R. § 982.402(a). "For each family, the PHA determines the appropriate number of bedrooms under the PHA subsidy standards." *Id.* Each voucher holder is "allocated a specific number of bedrooms . . . based on their family size and composition." SAC ¶ 26. Although "a family [may] choose[] to live in a unit with more bedrooms than the family is allocated under the [subsidy] standard," the subsidy standard establishes "the maximum amount [of] housing assistance" that a voucher holder may receive. *Id.* Finally, 24 C.F.R. §

2

1  982.54(a) requires PHAs to "adopt a written administrative plan that establishes local policies for

2  administration of the program in accordance with HUD requirements."  24 C.F.R. § 982.54(a).

3       Because the interplay between these various regulations is complex, the Court shall take a

4  moment to review them in additional detail.  Family size and composition determine the number

5  of bedrooms that a voucher holder shall be allocated, which in turn determines the voucher

6  holder's subsidy standard.  The subsidy standard is in turn determined by the payment standard

7  schedule, which is set according to the market value for rental units in a particular area.

8  According to the SAC, HACSC "will pay no more than $1628.00 towards a 2-bedroom unit."

9  SAC ¶ 25.  A voucher holder in Santa Clara County allocated a 2-bedroom unit would therefore

10  receive a maximum subsidy of $1628.  The voucher holder may decide to rent a 3-bedroom unit,

11  but will not receive any more than $1628, unless the market value for a 2-bedroom unit changes.

12       Defendant HACSC is the PHA responsible for administering the Section 8 Program in

13  Santa Clara County, California.  Id. ¶ 17.  As Interim Executive Director, Katherine Harasz

14  ("Harasz") is responsible for "carrying out the duties outlined in the [HACSC's] Administrative

15  Plan and the regulations promulgated by [HUD]."  Id. ¶ 16.

16       Plaintiffs allege that, on March 1, 2013, HACSC made major changes to its administration

17  of the Section 8 Program as a result of federal budget cuts.  Id. ¶ 28.  These changes included

18  revisions to the subsidy standards.  Prior to March 1, 2013, "children of the opposite sex (unless

19  they were very, very young children) and persons from different generations (parents,

20  grandparents, children) were not required to share a room."  Id. ¶ 29.  After March 1, 2013, "the

21  head of household (with spouse, co-head, Registered Domestic Partner, or boyfriend/girlfriend if

22  any) [were assigned] one room and an additional bedroom [was assigned[ for every two persons

23  regardless of age or gender."  Id.

24       These changes resulted in many voucher holders receiving a smaller bedroom allocation

25  and a smaller subsidy standard.  Id. ¶ 31.  Plaintiffs contend that, subsequent to these changes,

26  Plaintiffs each "submitted a reasonable accommodation request for an additional bedroom" based

27  on at least one member of their families having a documented disability.  Mot. at 4.  HACSC

28

United States District Court
Northern District of California

3

1   denied each of these requests pursuant to what Plaintiffs allege was an "illegal blanket policy." *Id.*

2   The situation of each of the named Plaintiffs is described in greater detail below.

3       **1. Thanh Huynh**

4       Thanh Huynh ("Huynh") was imprisoned in a Vietnam internment camp for a decade

5   following the Vietnam War. *Id.* ¶ 49. After coming to the United States in 1992, Huynh was

6   diagnosed with post-traumatic stress disorder ("PTSD") and major depression. *Id.* As a result of

7   these ailments, Huynh "suffers from anxiety, depression and severe night terrors," which cause

8   him to scream at night and lock his bedroom door for security. *Id.* Huynh alleges that as a result

9   of his disorders and accompanying symptoms, he is unable to share a bedroom with anyone else.

10  At night, Huynh sleeps alone in a single room, his wife and daughter share a room, and his son

11  stays in the third room. *Id.* Tao Nguyen, Huynh's long-time psychiatrist, has provided medical

12  documentation supporting Huynh's need for a separate bedroom. *Id.* ¶ 49.

13      Prior to September 2013, HACSC provided Huynh's family with a three-bedroom housing

14  voucher, which accommodated Huynh's need to have a single bedroom. However, subsequent to

15  the administrative changes outlined above, HACSC reduced Huynh's housing voucher from a

16  three-bedroom unit to a two-bedroom unit. *Id.* ¶ 51. HACSC simultaneously increased the share

17  of the family's gross income used to calculate their tenant rent obligation from 30% to 35%. As a

18  result, Huynh's responsibility for monthly rent increased from $734 to $1,160. *Id.*

19      On October 2, 2013, Huynh submitted a reasonable accommodation request to increase his

20  housing voucher back to a three-bedroom unit. *Id.* ¶ 52. On October 21, 2013, HACSC denied

21  Huynh's request. The letter denying Huynh's request stated that a two-bedroom voucher met his

22  family's needs without overcrowding, and was therefore the largest size necessary based on family

23  size. *Id.* ¶ 53. In response to this denial, Huynh submitted a request for an administrative hearing.

24  On December 12, 2013, HACSC officer Karen Goodman held a hearing on Huynh's case. *Id.*

25  ¶ 54. On January 14, 2014, Goodman upheld the denial of Huynh's request, but determined that

26  Huynh: (1) was a person with a disability, and (2) needed a separate bedroom to accommodate his

27  disability. However, Goodman wrote that "[Huynh's] approved voucher size does provide [him]

United States District Court
Northern District of California

28

4

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

with a separate bedroom," and that the Section 8 program only allows subsidization of the smallest number of bedrooms needed to house a family without overcrowding.  *Id.* ¶ 55.  On January 27, 2014, Huynh wrote to Sanchez, asking for a reversal of Goodman's decision.  Sanchez denied Huynh's request.  *Id.* ¶¶ 56–57.

### 2.  Venus Benabides and Rudy Garcia

Venus Benabides ("Benabides") lives with her sons, Rudy Garcia ("Rudy") and Elias, in a three-bedroom apartment.  *Id.* ¶ 58.  Benabides alleges that she and Rudy suffer from bi-polar disorder.  *Id.* ¶ 59–60.  Benabides' family has received a Section 8 voucher for the past four years.  "Under HACSC's subsidy standards, Elias and Rudy would have been required to share a room."  *Id.* ¶ 61.  However, in December 2011, the family was granted a temporary reasonable accommodation for a three-bedroom voucher due to Rudy's disability-related need for his own bedroom.  *Id.*; *see* ECF No. 49 at 45–46 (classifying Rudy's condition as "temporary" in nature).

After funding cuts to the Section 8 Program, HACSC reduced Benabides' voucher size from three bedrooms to two.  HACSC also removed the temporary reasonable accommodation that HACSC had provided to Rudy on behalf of Rudy's bipolar disorder, with HACSC noting that this accommodation was not designated to be permanent in nature.  HACSC did not explain why HACSC classified Rudy's bipolar disorder as temporary.  ECF No. 49 at 45–46.  In July and August 2013, Benabides sent multiple letters to HACSC requesting a separate bedroom for Rudy as a reasonable accommodation for Rudy's mental illness. Benabides included in one of these letters a certification form signed by Rudy's therapist.  SAC  ¶¶ 63–65.  In November 2013, Benabides also submitted a request for reasonable accommodation for her own separate bedroom for her own mental disability.  *Id.* ¶ 67.  HACSC denied Benabides' requests for a separate bedroom for her and for Rudy, and the denial was upheld after an informal hearing.  *Id.* ¶ 69–70.

### 3.  Lynda Gomes and Nicholas Wallace

Lynda Gomes ("Gomes") lives with her son Nicholas Wallace ("Nicholas") and daughter Bobbi in a two-bedroom apartment.  *Id.* ¶ 72.  Gomes states that she has a heart condition that requires her to use a small machine at night for treatment purposes.  *Id.* ¶ 73.  In addition, Gomes

states that Nicholas has been diagnosed with a number of mental ailments, which include depression, PTSD, and anxiety disorder. *Id.* ¶ 74. Gomes' family has received a Section 8 Voucher for the past twelve years. Prior to September 2013, this voucher was based on a subsidy standard for a three-bedroom apartment. *Id.* ¶ 75. Gomes' voucher was subsequently reduced to a subsidy standard for a two-bedroom apartment. In February 2014, Gomes submitted reasonable accommodation requests for a separate bedroom for her and for Nicholas. *Id.* ¶ 77. These requests were denied on April 10, 2014, and the denial was upheld after an informal hearing. *Id.* ¶¶ 77–78.

### 4. Lillie Ware and Stephen Jones

Lillie Ware ("Ware") lives with her son Stephen Jones ("Stephen") and granddaughter Lania Robbins in a three-bedroom apartment. *Id.* ¶ 80. Ware states that she has been diagnosed with PTSD and major depressive disorder. *Id.* ¶ 81. Ware also states that Stephen has been diagnosed with attention deficit disorder and a learning disorder. *Id.* ¶ 82. Ware's family has received a Section 8 Voucher for the past twenty years. "As a result of the 2013 sequester, HACSC reduce[d] the family's Section 8 voucher size from three bedrooms to two." *Id.* ¶ 84. In January and March 2014, Ware submitted reasonable accommodation requests for a three-bedroom voucher based on her and Stephen's disabilities. *Id.* ¶ 86–87. Ware's request included medical documentation of Ware and Stephen's disabilities. *Id.* Ware's request was denied on July 21, 2014, and the denial was upheld after an informal hearing. *Id.* ¶ 87–88.

### 5. Dehab Haile and Freihiwet Tesfamariam

Debra Haile ("Haile") lives with her daughter, Freihiwet Tesfamariam ("Freihiwet"), and her son Sesinos in a three-bedroom apartment. *Id.* ¶ 90. Freihiwet "has been diagnosed with severe depression, agoraphobia, panic disorder, and asthma." *Id.* ¶ 91. Freihiwet's "disabilities cause panic attacks, insomnia, and impulses to engage in self-harm." *Id.* "In order to manage [these] symptoms," Haile alleges that "it is necessary for Freihiwet to have her own bedroom." *Id.* Haile's family has received a Section 8 Voucher for the past three years. As with the other Plaintiffs, Haile's voucher size was reduced from three to two bedrooms around September 2013.

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

Haile thereafter submitted a request for reasonable accommodation for Freihiwhet's disability, which was supported by medical documentation. *Id.* ¶ 94. HASCS denied Haile's request on January 15, 2014, and the denial was upheld after an informal hearing. *Id.* ¶ 95–96.

## B. Procedural History

On April 14, 2014, Huynh filed the initial complaint in this case in Santa Clara County Superior Court. ECF No. 1-1 ("Compl."). Defendants removed this case to federal court on May 22, 2014. ECF No. 1. On May 29, 2014, Defendants moved to dismiss Huynh's complaint. ECF No. 7. This Court granted in part and denied in part Defendants' motion to dismiss on September 2, 2014. ECF No. 14 ("MTD Order"). Huynh subsequently filed a First Amended Complaint. ECF No. 18 ("FAC"). On January 7, 2015, the Court granted Huynh's request to file a Second Amended Complaint. ECF No. 28. On January 12, 2015, Huynh, now joined by the rest of the named Plaintiffs, filed the SAC. The SAC contains five causes of action, based on violations of the (1) Fair Housing Amendments Act ("FHAA"), the (2) California Fair Employment and Housing Act ("FEHA"), the (3) California Disabled Persons Act ("CDPA"), the (4) Americans with Disabilities Act ("ADA"), and (5) Section 504 of the Rehabilitation Act. The SAC also seeks declaratory relief pursuant to California Code of Civil Procedure § 1060. Defendants answered the SAC on February 6, 2015. ECF No. 31 ("Answer"). On September 17, 2015, Plaintiffs moved for class certification. Plaintiffs propose the following class definition:

> Santa Clara County Section 8 voucher holders who have disabilities and/or have family members with disabilities who 1) made a reasonable accommodation request to HACSC for an additional bedroom, 2) had a documented and undisputed need for a separate bedroom, and 3) were denied a disability-related increase in the number of bedrooms by HACSC.

Mot. at 7. Plaintiffs' motion seeks certification of this putative class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Defendants filed an opposition on October 7, 2015, ECF No. 47 ("Opp'n"), and Plaintiffs filed a reply on October 13, 2015, ECF No. 53 ("Reply"). Plaintiffs subsequently filed an amended reply on November 5, 2015. *See* ECF No. 62 ("Amended Reply").

United States District Court
Northern District of California

The Court held a hearing on Plaintiffs' motion for class certification on November 12, 2015.[3]

## II.       LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of requirements that Plaintiffs must meet before the Court may certify a class.  Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Courts refer to these requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to meeting the Rule 23(a) requirements, Plaintiffs must also satisfy one of the three subsections of Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  The Court may certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  The Court may certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).  Further, courts have held that parties seeking to certify a Rule 23(b)(3) class must also demonstrate that the class is sufficiently

---

[3] Plaintiffs filed an *ex parte* application to file an Amended Reply.  ECF Nos. 60 & 61.  On November 10, 2015, the Court denied Plaintiffs' *ex parte* application because this application did not comply with Civil Local Rule 7-10.  ECF No. 60.  At the November 12, 2015 hearing, Defendants stated that Defendants had reviewed Plaintiffs' Amended Reply and that Defendants did not object to or disagree with the additional evidence presented by Plaintiffs in the Amended Reply.  Accordingly, the Court shall, for purposes of this Order, refer to the Amended Reply instead of the Reply.

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

ascertainable.  *See Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012);

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671–72 (N.D. Cal. 2011).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

with the merits of the plaintiff's underlying claim.'"  *Amgen Inc. v. Conn. Ret. Plans & Trust

Funds*, 133 S. Ct. 1184, 1194 (2013) (internal quotation marks omitted).  Nevertheless, "Rule 23

grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits

questions may be considered to the extent—but only to the extent—that they are relevant to

determining whether the Rule 23 prerequisites . . . are satisfied."  *Id.* at 1194– 95.

## III.    DISCUSSION

### A.  Rule 23(a)

#### 1.  Numerosity

Under Rule 23(a)(1), class certification is appropriate if "the class is so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, "Plaintiffs have

identified . . . 196 families that had a documented need for a separate bedroom for their disabled

household member (or members) but were denied based on [HACSC's] blanket policy."  Mot. at

9.  As other district courts have noted, "the numerosity requirement is usually satisfied where the

class comprises 40 or more members."  *See Twegbe v. Pharma Integrative Pharmacy, Inc.*, 2013

WL 3802807, *3 (N.D. Cal. July 17, 2013) (citing cases).  Defendants conceded that Plaintiffs'

putative class was sufficiently numerous at the November 12, 2015 hearing.  The Court also finds

that Plaintiffs have sufficiently established numerosity for purposes of Rule 23(a)(1).

#### 2.  Commonality

Next, Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as

representative parties on behalf of all members only if . . . there are questions of law or fact

common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement has "been construed

permissively"—all questions of fact and law need not be common to satisfy the rule.  *Ellis v.

Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (internal quotation marks and

alteration omitted); *see also Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single

9

significant question of law or fact.").

In the instant case, Plaintiffs allege that "HACSC maintains and applies a blanket policy of denying reasonable accommodations for an additional bedroom . . . even when the need is documented and undisputed." Mot. at 11.  That, Plaintiffs allege, is a common factual question. Plaintiffs also contend that "HACSC is legally required to make reasonable accommodations to its subsidy standard by increasing the subsidy size for a household when a member of that household . . . needs a separate bedroom because of a disability," and that HACSC's "policy of denying disabled voucher holders reasonable accommodation . . . constitutes an exclusion from participation or denial of benefits by HACSC." *Id.*  Both of these inquiries are legal questions common to the class.

Plaintiffs include several facts to support a finding of commonality.  First, Plaintiffs point to the sheer numerical evidence.  Since July 1, 2013, there have been "a total of 284 requests for an additional bedroom that did not involve a live-in caregiver, a separate bedroom for medical equipment, all household members having a disability, or an additional bedroom that was 'grandfathered.'" Amended Reply at 6.  Of these 284 requests, all 284 have been denied.  *Id.* Second, Plaintiffs point to the standardized denial forms that each class member purportedly received.  The rejection letters that two Plaintiffs received, for instance, are nearly identical to one another.  ECF No. 43-12; ECF No. 43-13.  Third, Plaintiffs point to HACSC internal memoranda. With respect to one reasonable accommodation request, for example, an HACSC staff member recommended that the request be granted.  ECF No. 43-16.  With respect to a different reasonable accommodation request, another HACSC staff member recommended that the request be denied. ECF No. 43-17.  In both instances, the HACSC supervisor ruled that the request should be denied *and* instructed the staff member to inform the requesting voucher holder of HACSC's decision via a specific standardized denial template.   Fourth, Plaintiffs contend that HACSC failed to conduct an individualized inquiry after Plaintiffs requested an informal hearing.  Plaintiffs point to the standard language that HACSC employed in deciding to uphold the denial of Plaintiffs' reasonable accommodation requests.  Mot. at 6.

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1       To be sure, Defendants have challenged Plaintiffs' contentions.  Defendants, for instance,

2   contend that HACSC staff members only employed "boilerplate language" *after* staff members

3   made an individual determination on whether to deny a reasonable accommodation request.

4   Opp'n at 17.  Defendants likewise contend that HACSC officials have declared, under oath, that

5   no such blanket policy exists.

6       Defendants' arguments are insufficient to defeat a finding of commonality.  At heart,

7   Defendants' arguments go to the merits of Plaintiffs' claims—that is, whether the evidence

8   actually establishes that Defendants employed a uniform policy in reviewing reasonable

9   accommodation requests.  However, Rule 23(a)(2) does not require Plaintiffs to show that

10  Plaintiffs would prevail on the merits.  *Amgen*, 133 S. Ct. at 1194–95.

11      Rather, as the U.S. Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

12  2541, 2551 (2011), Plaintiffs must show only that their claims "depend upon a common

13  contention" that is "of such a nature that is capable of classwide resolution—which means that

14  determination of its truth or falsity will resolve an issue that is central to the validity of each one of

15  the claims in one stroke."  Here, Plaintiffs contend that all class members suffered a common

16  injury: denial of their reasonable accommodation requests.  Plaintiffs further allege that these

17  requests were denied because of a classwide policy adopted and implemented by Plaintiffs.  This

18  policy, Plaintiffs further assert, violates federal and state law.  The common questions of whether

19  or not Defendants actually adopted a blanket policy and whether or not such a policy is illegal will

20  therefore resolve, in one stroke, the legal disputes at issue in this case.

21      A brief overview of the U.S. Supreme Court's reasoning in *Dukes* may help bring the

22  commonality inquiry in the instant case into clearer focus.  Plaintiffs in *Dukes* were current or

23  former Wal-Mart employees who alleged "that the company discriminated against them on the

24  basis of their sex by denying them equal pay or promotions, in violation of Title VII of the Civil

25  Rights Act."  *Id.* at 2547.  The *Dukes* Plaintiffs sought to certify a class comprised of "[a]ll women

26  at any Wal–Mart domestic retail store at any time since December 26, 1998, who have been or

27  may be subjected to Wal–Mart's challenged pay and management track promotions policies and

28

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

practices." *Id.* at 2549 (internal quotation marks omitted).  Importantly, "these plaintiffs . . . [did]

not allege that Wal-Mart ha[d] any express corporate policy against the advancement of women."

*Id.* at 2548.  "Rather, they claim[ed] that their local managers' discretion over pay and promotions

[was] exercised disproportionately in favor of men, leading to an unlawful disparate impact on

female employees."  *Id.*

      The U.S. Supreme Court rejected this theory of commonality.  After examining some of

the details of Wal–Mart's discretionary promotion policy, the Court noted that, "[i]n such a

company, demonstrating the invalidity of one manager's use of discretion will do nothing to

demonstrate the invalidity of another's." *Id.* at 2554.  The *Dukes* Plaintiffs "had presented no

evidence that managers at Wal–Mart had exercised their discretion in the same way—i.e., that

they had used it to discriminate against women." *Rikos v Proctor & Gamble Co.*, 799 F.3d 497,

506 (6th Cir. 2015) (summarizing *Dukes*).   Under Wal-Mart's policy, "[i]t would have been

possible for some managers to discriminate in favor of women, for others to discriminate against

women, and for still others not to discriminate at all." *Id.*  The Court went on to discuss two ways

that parties could establish commonality in cases involving a general policy of discrimination.

First, parties could present evidence of a "companywide evaluation method . . .  charged with

bias." *Dukes*, 131 S. Ct. at 2553.  Second, parties could present "significant proof" that a

defendant "operated under a general policy of discrimination."  *Id.* (internal quotation marks

omitted).

      Plaintiffs in the instant case have cleared both of these hurdles.  First, Plaintiffs have

presented emails and internal memoranda that indicate that HACSC implemented a uniform

blanket policy.  Second, setting these emails and memoranda aside, Plaintiffs have also presented

"significant proof" of HACSC's general policy towards reasonable accommodation requests.

Critically, in *Dukes*, the Plaintiffs' expert "conceded that he could not calculate whether 0.5

percent or 95 percent of the employment decisions at Wal–Mart might be determined by

stereotyped thinking."  *Id.*  Here, HACSC denied 100% of reasonable accommodation requests for

an additional bedroom made after July 1, 2013 "that did not involve a live-in caregiver, a separate

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

bedroom for medical equipment, all household members having a disability, or an additional bedroom that was 'grandfathered.'" ECF No. 63 at 3. These facts, considered alongside the other evidence that Plaintiffs have submitted, constitute "significant proof" of a "general policy of discrimination." *Dukes*, 131 S. Ct. at 2553.

### 3.  Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The commonality and typicality requirements of Rule 23(a) tend to merge." *Id.* at 2551 n.5 (alteration in original) (internal quotation marks omitted); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice and Procedure § 1764 (3d ed. 2005) ("Thus, many courts have found typicality if the claims or defenses of the representatives and the members of the class . . . if they are based on the same legal or remedial theory.  Of course, when this is true the typicality standard is closely related to the test for the common-question prerequisite in subdivision (a)(2)." (footnotes omitted)).

To be sure, in challenging typicality in the instant case, Defendants largely repeat their arguments against commonality.  *See* Opp'n at 19 ("Plaintiffs cannot demonstrate typicality for some of the same reasons that they failed to establish commonality."). Defendants do, however, offer a slight variation on their commonality arguments.  Defendants argue that, even  "assuming . . . that the Alleged Blanket Policy actually exists in this case, . . . the evidence . . . establishes that **all** of the disabled Plaintiffs have received a subsidy that affords them the ability to maintain their own separate bedrooms for sleeping, as their disabilities require." *Id.*

This argument is unavailing.  If the blanket policy does in fact exist, then "the claims or defenses of the representative parties" *must be* "typical of the claims or defenses of the class." Plaintiffs claim that HACSC applied a uniform, illegal policy in deciding to deny the reasonable accommodation requests of *all* class members.  In assuming the existence of this alleged policy, Defendants have thus responded with a common defense, applicable to all class members: that Defendants' policy still allowed Plaintiffs to have a separate bedroom, even though some of

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  Plaintiffs' family members might have needed to use the living room as a sleeping area.

2  In short, Plaintiffs have presented a common claim, typical of the claims of all class

3  members, and Defendants have presented a common defense, applicable to all class members.

4  These claims and defenses form the crux of the Court's typicality analysis.  The Court emphasizes

5  that whether Plaintiffs' claims are "typical of the claims or defenses of the class" and whether

6  Plaintiffs' claims are well taken are different questions.  The former question relates to the

7  typicality inquiry that is currently before the Court.  The latter question relates to the merits of

8  Plaintiffs' action, which are not currently before the Court.  Accordingly, consonant with the

9  Court's commonality decision, the Court finds that Plaintiffs have sufficiently established that "the

10  claims or defenses of the representative parties are typical of the claims or defenses of the class."

11  ### 4.  Adequacy

12  Finally, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect

13  the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement turns upon resolution of two

14  questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

15  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

16  on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

17  With respect to the conflict of interest inquiry, the U.S. Supreme Court has held that "a

18  class representative must be part of the class and possess the same interest and suffer the same

19  injury as the class members."  *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

20  Here, all of the named Plaintiffs fall within Plaintiffs' proposed class definition—voucher holders

21  who were denied a reasonable accommodation for a separate bedroom despite evidence of a

22  documented disability.  The named Plaintiffs thus "possess the same interest" and "suffer the same

23  injury" as other class members.  *Id.*

24  The single counterargument that Defendants put forward is that some of the named

25  Plaintiffs sought an additional informal hearing and thus received a more thorough administrative

26  review of their reasonable accommodation requests.  Many class members, on the other hand, did

27  not seek an additional informal hearing and thus did not receive this more thorough review.  *See*

28

14

United States District Court
Northern District of California

1    Opp'n at 20.  Defendants' argument is unpersuasive.  If Defendants did implement a blanket

2    denial policy, then Plaintiffs' theory is that Defendants implemented this policy across the board:

3    in Defendants' initial decision to reduce Plaintiffs' subsidy standard, in Defendants' subsequent

4    decision to deny Plaintiffs' reasonable accommodation requests, and in Defendants' final decision

5    to uphold the denial of these requests.  Thus, the named Plaintiffs and class members both possess

6    the same interest and suffered the same injury regardless of whether an additional informal hearing

7    was sought.  The fact that the named Plaintiffs decided to take an extra step in prosecuting their

8    interests does not create a conflict of interest with the remaining class members.

9         The second prong of the adequacy inquiry requires the Court to determine whether "the

10   named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."

11   *Hanlon*, 150 F.3d at 1020.  "Although there are no fixed standards by which 'vigor' can be

12   assayed, considerations include competency of counsel and, in the context of a settlement-only

13   class, an assessment of the rationale for not pursuing further litigation."  *Id.* at 1021.  The named

14   Plaintiffs are represented by the Law Foundation of Silicon Valley ("Law Foundation").  To date,

15   the Law Foundation has successfully defended Plaintiffs against a motion to dismiss,[4] has taken

16   six depositions and defended six depositions, and has undertaken significant discovery.  ECF No.

17   44 ("Kazantzis Decl.") at 4.  Kyra Kazantzis, counsel of record for the named Plaintiffs, states that

18   the Law Foundation has litigated numerous cases on behalf of tenants and homeowners.  *Id.* at 2.

19   Kazantzis also states that she has served as counsel on a number of class action lawsuits.  *Id.* at 3.

20   Defendants do not oppose Plaintiffs' request to appoint the Law Foundation as class counsel.

21   Accordingly, the Court finds that the named Plaintiffs and the Law Foundation will vigorously

22   prosecute this action on behalf of the class.  Plaintiffs have therefore sufficiently established

23

24   _____

[4] Defendants moved to dismiss all claims in the original complaint.  MTD Order at 5.  In Huynh's
25   opposition, Huynh agreed to voluntarily dismiss his claims under 42 U.S.C. § 1983 and his
     demand for punitive damages.  *Id.*  In the Court's MTD Order, the Court granted Defendants'
26   motion to dismiss Huynh's § 1983 claims and granted Defendants' motion to strike Huynh's
     demand for punitive damages.  *Id.* at 21.  The Court denied Defendants' motion in all other
27   respects.  *Id.*  In other words, the Court granted Defendants' motion on claims that Huynh agreed
     to dismiss, but denied Defendants' motion on all other claims.

28

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    adequacy for purposes of Rule 23(a)(4).

2        **B.  Rule 23(b)(2)**

3        "Each class meeting the prerequisites of Rule 23(a) must also pass at least one of the tests

4    set forth in Rule 23(b)."  *Rikos*, 799 F.3d at 509 (alterations omitted).  Plaintiffs seek certification

5    of a class for injunctive and declaratory relief under Rule 23(b)(2).  A class may be certified under

6    Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply

7    generally to the class, so that final injunctive relief or corresponding declaratory relief is

8    appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Unlike Rule 23(b)(3), a

9    plaintiff does not need to show predominance of common issues or superiority of class

10   adjudication to certify a Rule 23(b)(2) class."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 598 (N.D.

11   Cal. 2015).  Instead, "[i]t is sufficient if class members complain of a pattern or practice that is

12   generally applicable to the class as a whole.  Even if some class members have not been injured by

13   the challenged practice, a class may nevertheless be appropriate."  *Walters v. Reno*, 145 F.3d

14   1032, 1047 (9th Cir. 1998).

15       In the instant action, Plaintiffs allege that Defendants developed and implemented a

16   uniform practice of denying reasonable accommodation requests by voucher holders with

17   documented disabilities.  Such allegations merit certification under Rule 23(b)(2).  *See, e.g.*,

18   *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (determining that Rule 23(b)(2) "requirements

19   are unquestionably satisfied when members of a putative class seek uniform injunctive or

20   declaratory relief from policies or practices that are generally applicable to the class as a whole.");

21   *In re Yahoo Mail*, 308 F.R.D. at 599 ("In contrast to Rule 23(b)(3) classes, the focus [with respect

22   to Rule 23(b)(2)] is not on the claims of individual class members, but rather whether [Defendant]

23   engaged in a common policy.") (internal quotation marks omitted).

24       Defendants' arguments against Rule 23(b)(2) certification are not well taken.  First,

25   Defendants contend that certification is improper because Plaintiffs "seek individualized, as

26   opposed to class wide relief."  Opp'n at 22; *see also id.* ("[W]hat Plaintiffs actually seek is an

27   individual review of each and every denial of a reasonable accommodation request.").  This

United States District Court
Northern District of California

28

16

characterization misrepresents the relief that Plaintiffs seek.  To be sure, Plaintiffs do seek an individualized review of their reasonable accommodation requests.  However, Plaintiffs seek this type of review because, according to Plaintiffs, Defendants implemented a uniform, blanket, and illegal policy in denying all reasonable accommodation requests.  To put it another way, Plaintiffs contend that federal and state laws require that Defendants treat reasonable accommodation requests on an individualized basis.  Plaintiffs also contend that, instead of undertaking such an individualized inquiry, Defendants merely applied a blanket policy to deny relief to all class members.  Thus, Plaintiffs seek an injunction for Defendants to eliminate the allege blanket policy and to engage in a case-specific review of every reasonable accommodation request.  Defendants' second contention—that certification under Rule 23(b)(2) is inappropriate because calculation of damages depends on an individual rather than classwide inquiry—is likewise inapposite. Plaintiffs seek Rule 23(b)(2) certification for purposes of injunctive and declaratory relief, not for damages.  *See* Mot. at 15.

In sum, because Plaintiffs "complain of a pattern or practice [by Defendants] that is generally applicable to the class as a whole," *Walters*, 145 F.3d at 1047, the Court finds certification of an injunctive and declaratory relief class under Rule 23(b)(2) appropriate.

## C. Rule 23(b)(3)

### 1. Predominance

Plaintiffs also seek certification of a damages class under Rule 23(b)(3).  Under Rule 23(b)(3), the court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). "While similar to Rule 23(a)'s requirements for typicality and commonality, 'the predominance criterion is far more demanding.'"  *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Anchem*, 521 U.S. at 623).  The predominance inquiry "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."  *Gene and Gene LLC v. BioPay LLC*,

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    541 F.3d 318, 326 (5th Cir. 2008).

2         Here, Plaintiffs' claims rise and fall based on whether HACSC implemented a blanket

3    policy towards Plaintiffs' reasonable accommodation requests.  There is no need for individual

4    trials of each class member because, at heart, this case requires the Court to answer two questions

5    that apply to every class member.  One, did Defendants adopt a blanket policy towards reasonable

6    accommodation requests?  Two, does this blanket policy violate state and federal law?

7         A review of Plaintiffs' causes of action further illustrates that the issues facing the class

8    predominate over the issues facing each class member.  The SAC includes causes of action under

9    the Fair Housing Amendments Act ("FHAA"), the California Fair Employment and Housing Act

10   ("FEHA"), the California Disabled Persons Act ("CDPA"), the Americans with Disabilities Act

11   ("ADA"), and Section 504 of the Rehabilitation Act.  As the Court noted in ruling on Defendants'

12   motion to dismiss, these causes of action present substantially similar legal and factual issues.

13        The FHAA, for instance, requires Plaintiffs to show "that accommodation of [a Plaintiff's]

14   handicap may be necessary to afford [a Plaintiff] an equal opportunity to use and enjoy the

15   dwelling," "that the accommodation is reasonable," and "that defendant refused to make the

16   requested accommodation."  MTD Order at 7 (quoting *Dubois v. Ass'n of Apartment Owners of*

17   *2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)).  The CDPA also includes a reasonable

18   accommodation provision for "[a]ny person renting, leasing, or otherwise providing real property

19   for compensation."  MTD Order at 13 (quoting Cal. Civ. Code §§ 54.1(b)(3)(B).  Likewise, FEHA

20   requires a plaintiff to plead facts which allege that "she is a member of a protected class, that she

21   applied and was qualified for a housing accommodation, was denied such housing

22   accommodation, and that similarly situated individuals not in a protected class applied for and

23   obtained housing."  MTD Order at 11 (quoting *McDonald v. Coldwell Banker*, 543 F.3d 498, 503

24   (9th Cir. 2008)).  Section 504 contains a similar requirement, MTD Order at 15, and the Ninth

25   Circuit has "applied [Rehabilitation Act] regulations and case law when interpreting the FHAA's

26   reasonable accommodation provisions," *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir.

27   2003).  Further, "Title II of the ADA must be interpreted in a manner consistent with Section 504

28
                                                    18

1    of the Rehabilitation Act."  MTD Order at 18 (internal quotation marks omitted).

2         To summarize: each of these causes of action includes a "reasonable accommodation"

3    provision.  In addition, the Court's interpretation of these provisions must, in general, be

4    consistent across the various state and federal causes of action.  Plaintiffs' claims are thus ripe for

5    class action treatment.  Put another way, there are no unique individual claims in this case.  All of

6    the claims in the SAC apply to all of the class members because all of the class members allegedly

7    were denied a reasonable accommodation for a separate bedroom due to Defendants' alleged

8    uniform policy.  Whether this policy was in fact in place and whether such a policy is illegal are

9    questions that predominate over this action and over the claims of all class members.

10        In arguing against predominance, Defendants essentially repeat their previous arguments

11   against commonality.  *See* Opp'n at 24 ("Because all of Plaintiffs' theories of commonality

12   amongst the class hinge upon the existence of the nonexistent Alleged Blanket Policy, Plaintiffs

13   cannot satisfy the predominance inquiry of Rule 23(b)(3).").  These arguments were unavailing

14   with respect to commonality and are unavailing with respect to predominance.  Accordingly,

15   Plaintiffs have sufficiently established predominance for purposes of Rule 23(b)(3).

16        **2. Superiority**

17        Rule 23(b)(3) also provides four factors that a court must consider in determining whether

18   a class action is superior to other methods of adjudication.  These factors are:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  With respect to the first factor, the interest of each class member in

controlling the prosecution or defense of separate actions, "this factor weighs in favor of certifying

a class action . . . [w]here damages suffered by each putative class member are not large."  *Zinser*

*v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  Here, the named Plaintiffs

United States District Court
Northern District of California

United States District Court
Northern District of California

1  each suffered a relatively small amount of damages.  Huynh's personal responsibility for his

2  monthly rent, for instance, went up from $734 to $1160, SAC ¶ 51, because Huynh chose to

3  remain in his three-bedroom apartment and because he was not granted a reasonable

4  accommodation request for an additional bedroom.  Although these numbers are likely significant

5  to each individual class member, it is unlikely that such damages would encourage individual

6  litigation.  The members of the proposed class are all low-income, disabled individuals.  Such

7  circumstances make individual litigation financially and logistically difficult, particularly in light

8  of the substantial motions practice and discovery involved in these cases.

9       The second factor, "the extent and nature of any litigation concerning the controversy,"

10  likewise weighs in favor of certification.  To the Court's knowledge, this case is the only action

11  that has been brought against Defendants concerning Defendants' uniform reasonable

12  accommodation policy.  *See, e.g.*, Wright & Miller, 7AA Federal Practice and Procedure § 1780

13  (describing Rule 23(b)(3)(B) as "intended to serve the purpose of assuring judicial economy and

14  reducing the possibility of multiple lawsuits.").

15       The third factor, the desirability of concentrating the litigation in a particular forum, also

16  counsels in favor of certification.  Plaintiffs' proposed class is limited to voucher holders in Santa

17  Clara County.  SAC ¶ 107.  Thus, Defendants' alleged actions affected residents of Santa Clara

18  County, a county entirely within the U.S. District Court for the Northern District of California.

19       Finally, the fourth factor, which concerns the difficulty of managing a class action,

20  depends in part on whether Plaintiffs' case "rises and falls [on] common evidence."  *In re High-*

21  *Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228 (N.D. Cal. 2013).  This factor thus

22  overlaps with the Court's commonality and typicality analysis.  Accordingly, the Court finds that

23  this fourth factor weighs in favor of class certification.

24       Instead of addressing the four factors outlined above, Defendants contend that class

25  members, like the named Plaintiffs, have already received an individualized review and should

26  pursue the administrative relief process already in place.  Opp'n at 25.  This process, Defendants

27  argue, is a superior method to resolution of Plaintiffs' claims.  The Court disagrees.  Again, the

28
20

class is comprised, by definition, of low-income individuals.  In all likelihood, few class members have the resources to prosecute their claims through the entire administrative review process.  Their disabilities may make the administrative review process even more difficult.  Moreover, the named Plaintiffs allege that HACSC employs a uniform, blanket policy towards reasonable accommodation requests.  That policy is implemented at each point in the administrative process: when Plaintiffs are first denied their reasonable accommodation requests *and* when these denials are upheld at the end of the administrative review process.  If this allegation is true, there would be no point in encouraging class members to pursue the administrative review process.

Accordingly, after reviewing the relevant factors outlined above and after considering Defendants' arguments, the Court finds that Plaintiffs have sufficiently demonstrated superiority for purposes of Rule 23(b)(3).

### 3.  Ascertainability

Courts addressing motions to certify classes under Rule 23(b)(3) have held that "apart from the explicit requirements of Rule 23(a) [and Rule 23(b)(3)], the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014).  Under this line of cases, a class is ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class."

Plaintiffs seek certification of the following class:

> Santa Clara County Section 8 voucher holders who have disabilities and/or have family members with disabilities who 1) made a reasonable accommodation request to HACSC for an additional bedroom, 2) had a documented and undisputed need for a separate bedroom, and 3) were denied a disability-related increase in the number of bedrooms by HACSC.

As Defendants point out, this definition lacks a date restriction.  Although Plaintiffs refer to a blanket policy change that took place after federal budget cuts in March 2013, Plaintiffs include no such date in Plaintiffs' class definition.  Thus, the Court agrees with Defendants' contention that Plaintiffs' proposed definition is imprecise.  Opp'n at 20.

21

Plaintiffs' class definition is also overbroad.  In Plaintiffs' briefing, Plaintiffs refer to the fact that the following groups were not subject to HACSC's blanket policy: "people with disabilities for whom HACSC had previously granted an additional bedroom and were therefore 'grandfathered,'" "when the additional bedroom was for a live-in aid or for medical equipment," and where "every household member had a disability-related need for a separate bedroom."  Mot. at 4.  However, Plaintiffs' class definition does not refer to any of these limiting circumstances.

These shortcomings are not fatal to Plaintiffs' motion.  The Court "retains broad authority to modify or withdraw certification at any time where it appears the class definition is inappropriate or inadequate."  *Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380, 384 (E.D. Cal. 2010); *see also United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) ("[A] district court retains the flexibility to address problems with a certified class as they arise."); *Astiana v. Kashi Co.*, 295 F.R.D 490, 492 (S.D. Cal. 2013) ("[T]he district court retains flexibility and is free to modify a class definition in light of developments during the course of litigation.").

In the instant case, Plaintiffs have stated that HACSC's uniform policy emerged on July 1, 2013 after HACSC made certain program changes following federal budget cuts in March 2013. Indeed, all of Plaintiffs' allegations in the SAC and all of Plaintiffs' evidence date back to July 1, 2013.  At the class certification hearing, Plaintiffs agreed with Defendants that Plaintiffs' proposed class definition was imprecise and that July 1, 2013 was the relevant date limitation that the Court should apply.

In addition, Plaintiffs have consistently stated that reasonable accommodation requests were only granted to voucher holders who were "grandfathered," voucher holders who sought an additional room for a live-in aid or for medical equipment, and voucher holders were every member of the family had a disability.  *See* Mot. at 4; Amended Reply at 6.  In other words, voucher holders who were disabled and who did not fit into any of the foregoing categories were uniformly denied reasonable accommodation requests.

Accordingly, in order to bring the class definition in line with the evidence that Plaintiffs have relied upon, the Court shall modify Plaintiffs' class definition.  Specifically, the Court shall

United States District Court
Northern District of California

1    limit the class definition to voucher holders who submitted reasonable accommodation requests

2    after July 1, 2013.  The Court shall also limit the class definition to voucher holders who were not

3    "grandfathered," who did not seek an additional room for purposes of a live-in aid or for medical

4    equipment, and who had at least one family member who was not disabled.  This modified class

5    definition is sufficiently ascertainable, as Plaintiffs have already identified 284 reasonable

6    accommodation requests that fit within this definition.  This modified class definition continues to

7    satisfy the other requirements under Rule 23(a) and Rule 23(b)(3).  Finally, for purposes of

8    consistency, the Court shall adopt this definition for both Plaintiffs' injunctive and declaratory

9    relief class under Rule 23(b)(2) and for Plaintiffs' damages class under Rule 23(b)(3).

10   **IV.    CONCLUSION**

11          For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification.

12   The Court, however, modifies the definition of the class as follows:

13          Santa Clara County Section 8 voucher holders who have disabilities and/or have
            family members with disabilities who (1) made a reasonable accommodation
14          request to HACSC for an additional bedroom after July 1, 2013, (2) had a
            documented and undisputed need for a separate bedroom, (3) were denied a
15          disability-related increase in the number of bedrooms by HACSC, (4) were not
            previously granted a permanent reasonable accommodation request, (5) did not
16          request the additional bedroom for a live-in caregiver or for storage of medical
            equipment, and (6) have at least one family member who is not disabled.
17

18          The Court appoints Thanh Huynh, Venus Benabides, Rudy Garcia, Lynda Gomes,

19   Nicholas Wallace, Lillie Ware, Stephen Jones, Dehab Haile, and Freihiwet Tesfamariam as

20   representatives of the class.  The Court also appoints the Law Foundation as class counsel to

21   represent the class.

22   **IT IS SO ORDERED.**

23   Dated: November 12, 2015

24   _____

25   LUCY H. KOH
     United States District Judge

26

27

28

Case No. 14-CV-02367-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION