UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THANH HUYNH, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>KATHERINE HARASZ, et al.,<br><br>　　　　　Defendants. | Case No. 14-CV-02367-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 79, 80 |

Plaintiffs[1] bring this action against the Housing Authority of the County of Santa Clara ("HACSC") and Katherine Harasz, in her official capacity as HACSC's Executive Director (collectively, "Defendants"). Before the Court are Defendants' motion for summary judgment and Plaintiffs' motion for summary judgment. ECF No. 79 ("Def. Mot."); ECF No. 80 ("Pls. Mot."). The Court held a hearing on these motions on May 12, 2016, at 1:30 p.m. ECF No. 104. Having considered the parties' submissions, the relevant law, the record in this case, and oral argument at the May 12, 2016 hearing, the Court GRANTS in part and DENIES in part Plaintiffs' motion for

---

[1] The named Plaintiffs are Thanh Huynh, Venus Benabides, Rudy Garcia, Lynda Gomes, Nicholas Wallace, Lillie Ware, Stephen Jones, Dehab Haile, and Freihiwet Tesfamariam.

summary judgment and DENIES Defendants' motion for summary judgment.

## I.    BACKGROUND

### A.  Factual Background

The Section 8 Voucher Program provides monthly housing subsidies to low-income individuals and their families.  ECF No. 30 ("SAC") ¶ 23.  Unlike traditional public housing programs, subsidies provided under the Section 8 Program are "not tied to a particular unit in a particular building."  *Id.* ¶ 24.  Instead, voucher holders find a private landlord willing to accept a Section 8 voucher.  If the private landlord agrees to rent to the voucher holder, the landlord is paid a monthly subsidy by a local Public Housing Agency ("PHA"), known as the "housing assistance payment."  *Id.* ¶ 27.  The voucher holder pays the remaining balance.  *Id.* ¶ 23.

Various federal regulations govern how a local PHA may operate its Section 8 Program.  Under 24 C.F.R. § 982.503(a), for instance, a "PHA must adopt a payment standard schedule that establishes voucher payment standard amounts for each [market] area in the PHA['s] jurisdiction."  24 C.F.R. § 982.503(a).  These voucher payment standards are based on the fair market value of rental units and "are used to calculate the monthly housing assistance payment for a family."  *Id.*  According to Plaintiffs, Santa Clara County voucher holders were generally responsible "for paying a [monthly] rental amount equal to 30% of their income," although the exact percentage varied.  SAC ¶ 25.  Likewise, 24 C.F.R. § 982.402(a) provides that a PHA "must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions."  24 C.F.R. § 982.402(a).  "For each family, the PHA determines the appropriate number of bedrooms under the PHA subsidy standards."  *Id.*  Each voucher holder is "allocated a specific number of bedrooms . . . based on their family size and composition."  SAC ¶ 26.  Although "a family [may] choose[] to live in a unit with more bedrooms than the family is allocated under the [subsidy] standard," the subsidy standard establishes "the maximum amount [of] housing assistance" that a voucher holder may receive.  *Id.*  Finally, 24 C.F.R. § 982.54(a) requires PHAs to "adopt a written administrative plan that establishes local policies for

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    administration of the program in accordance with HUD requirements." 24 C.F.R. § 982.54(a).

2       Given the complex interplay between these regulations, the Court takes a moment to

3    review them in additional detail.  Family size and composition determine the number of bedrooms

4    that a voucher holder is allocated, which in turn determines the voucher holder's subsidy standard.

5    The subsidy standard is tied to a payment standard schedule, which is set by the market value for

6    rental units within a particular area.  By way of example, HACSC will "pay no more than

7    $1628.00 towards a 2-bedroom unit." SAC ¶ 25.  A Santa Clara County voucher holder allocated

8    a two-bedroom unit would therefore receive a maximum subsidy of $1628.  The voucher holder

9    may decide to rent a three-bedroom unit, but will not receive any more than $1628, unless the

10   market value for a two-bedroom unit changes.

11      Defendant HACSC is the PHA responsible for administering the Section 8 Program in

12   Santa Clara County.  *Id.* ¶ 17.  As Executive Director, Katherine Harasz ("Harasz") is responsible

13   for "carrying out the duties outlined in the [HACSC's] Administrative Plan and the regulations

14   promulgated by [HUD]."  *Id.* ¶ 16.

15      In early 2013, "the federal government imposed an $85 billion across-the-board cut in

16   discretionary federal spending."  Def. Mot. at 5.  Known as "sequestration" or the "sequester," this

17   reduction "resulted in an approximately $2 billion decrease to HUD's housing support programs,

18   including $21 million in funding for HACSC's Voucher Program."  *Id.*  In order to address this

19   decrease in funding, HACSC made significant revisions to its administration of the Section 8

20   Program on March 1, 2013.  SAC ¶ 28.

21      Two such changes are relevant to the instant action.  First, prior to March 1, 2013,

22   "children of the opposite sex (unless they were very, very young children) and persons from

23   different generations (parents, grandparents, children) were not required to share a room."  *Id.* ¶

24   29.  After March 1, 2013, "the head of household (with spouse, co-head, Registered Domestic

25   Partner, or boyfriend/girlfriend if any) [were assigned] one room and an additional bedroom [was

26   assigned] for every two persons regardless of age or gender."  *Id.*  Second, "[t]he revised

27

3

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

calculations increased each participant's total tenant payment from 30% to 35% of their gross monthly income or $50 a month, whichever [was] higher."  Def. Mot. at 5–6.

These changes resulted in many voucher holders receiving a smaller bedroom allocation and a smaller subsidy.  SAC ¶ 31.  Subsequent to these changes, each named Plaintiff submitted a reasonable accommodation request for an additional bedroom based on at least one family member having a documented disability.  *Id.* ¶ 3.  HACSC denied these requests.  The situation of each named Plaintiff is described in greater detail below.

### 1. Thanh Huynh

Thanh Huynh ("Huynh") was imprisoned in a Vietnam internment camp for a decade following the Vietnam War.  *Id.* ¶ 49.  After coming to the United States in 1992, Huynh was diagnosed with post-traumatic stress disorder ("PTSD") and major depression.  *Id.*  Because of these ailments, Huynh allegedly "suffers from anxiety, depression and severe night terrors," which cause him to scream at night and lock his bedroom door for security.  *Id.* Huynh states that as a result of his disorders, he is unable to share a bedroom with anyone else.  At night, Huynh sleeps alone in a single room, his wife and daughter share a room, and his son stays in the third room.  *Id.* Huynh's daughter attends school at the University of Irvine for most of the year, and returns to live with her family during holidays.  ECF No. 79-2 (Exh. B) at 13.  Huynh's psychiatrist has provided documentation supporting Huynh's need for a separate bedroom.  SAC ¶ 49.

Prior to September 2013, HACSC provided Huynh's family with a three-bedroom housing voucher.  However, subsequent to the administrative changes outlined above that were caused by the 2013 sequester, HACSC reduced Huynh's housing voucher from a three-bedroom unit to a two-bedroom unit and increased the share of the family's gross income used to calculate their rental obligation from 30% to 35%.  *Id.* ¶ 51.

On October 2, 2013, Huynh submitted a reasonable accommodation request to increase his housing voucher back to a three-bedroom allocation.  *Id.* ¶ 52.  On October 21, 2013, HACSC denied Huynh's request.  The letter denying Huynh's request stated that a two-bedroom voucher

4

United States District Court
Northern District of California

met his family's needs without overcrowding, and was therefore the largest size necessary based on family size. *Id.* ¶ 53. In response to this denial, Huynh requested an administrative hearing. On December 12, 2013, HACSC officer Karen Goodman held a hearing on Huynh's case. *Id.* ¶ 54. On January 14, 2014, Goodman upheld the denial of Huynh's request. Goodman determined that Huynh was disabled, that "[Huynh's] approved voucher size provide[s] [him] with a separate bedroom," and that the Section 8 program only allows subsidization of the smallest number of bedrooms needed to house a family without overcrowding. *Id.* ¶ 55. Per Goodman, Huynh could occupy a separate bedroom while his remaining family members could choose amongst themselves how to arrange their living situation. On January 27, 2014, Huynh wrote to Alex Sanchez, HACSC's former Executive Director, requesting a reversal of Goodman's decision. Sanchez denied Huynh's request in a ten page letter. *Id.* ¶¶ 56–57; ECF No. 49 (Exh. G).

Huynh continues to live in a three-bedroom unit. Huynh pays out of pocket for the third bedroom because of HACSC's denial of Huynh's reasonable accommodation request.

### 2. Venus Benabides and Rudy Garcia

Venus Benabides ("Benabides") lives with her two adult sons, Rudy Garcia ("Rudy") and Elias. SAC ¶ 58. Since October 2014, Elias has worked at a local security firm. ECF No. 79-2 (Exh. C) at 14. Benabides alleges that she and Rudy suffer from bipolar disorder. SAC ¶ 59–60. "Under HACSC's [old] subsidy standards, Elias and Rudy would have been required to share a room." *Id.* ¶ 61. However, in December 2011, the family was granted a temporary reasonable accommodation for a three-bedroom voucher due to Rudy's need for his own bedroom. *Id.*; *see* ECF No. 49 at 45–46 (classifying Rudy's condition as "temporary" in nature).

After the federal sequester, HACSC reduced Benabides' voucher size from three bedrooms to two. HACSC also removed the temporary reasonable accommodation that HACSC had provided Rudy, with HACSC noting that this accommodation was not considered permanent in nature. HACSC did not explain why HACSC considered Rudy's bipolar disorder as being temporary. *Id.* In July and August 2013, Benabides sent letters to HACSC requesting a separate

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

bedroom for Rudy as a reasonable accommodation for Rudy's mental illness.  Benabides included in one of these letters a certification form signed by Rudy's therapist.  SAC ¶¶ 63–65.  In November 2013, Benabides also submitted a reasonable accommodation request for a separate bedroom because of her own mental disability.  *Id.* ¶ 67.  HACSC denied Benabides' requests for a separate bedroom for both her and for Rudy.  These denials were upheld after an informal hearing.  *Id.* ¶ 69–70.  During this hearing, HACSC officer Teresa Faz stated that "even though you have provided medical documentation that both you and your son need your own sleeping space, there is no nexus between your request and your stated disability.  If you decide to relocate to a smaller unit (2 bedrooms), the disability does not require the requested accommodation of an additional bedroom to your voucher size since HACSC does not govern a household's sleeping arrangements within a unit.  If your family chooses, you could have one bedroom, your son the second bedroom, and the 3rd person could use the living room area for sleeping purposes." *Id.* ¶ 70.

Benabides continues to live in a three-bedroom unit.  Benabides pays out of pocket for the third bedroom because of HACSC's denial of Benabides' reasonable accommodation requests.  ECF No. 79-2 (Exh. C.) at 18.

### 3.  Lynda Gomes and Nicholas Wallace

Lynda Gomes ("Gomes") lives with her son Nicholas Wallace ("Nicholas") and daughter Bobbie.  SAC ¶ 72; ECF No. 79-2 (Exh. D) at 24.  Gomes states that she has a heart condition that requires her to use a machine at night for treatment.  SAC ¶ 73.  In addition, Gomes states that Nicholas has been diagnosed with depression, PTSD, and anxiety disorder.  *Id.* ¶ 74.  Gomes alleges that both she and Nicholas require a separate bedroom for their disabilities.

Prior to September 2013, this voucher was based on a subsidy standard for a three-bedroom unit, and Gomes lived in a three-bedroom unit.  *Id.* ¶ 75.  Gomes's voucher was subsequently reduced to a subsidy standard for a two-bedroom unit.  In February 2014, Gomes submitted reasonable accommodation requests for a separate bedroom for her and for Nicholas.

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Id.* ¶ 77.  These requests were denied on April 10, 2014, and the denial was upheld after an informal hearing.  *Id.* ¶¶ 77–78.  During this hearing, HACSC officer Teresa Faz stated that "I find that there is no nexus between your request to increase your voucher size by one bedroom for the purpose of meeting your request for reasonable accommodations for you and your son Nicholas. Both of your doctor's documentation stated that you both have disabilities that require that you have your own sleeping areas, however, that need is being met by your current two-bedroom voucher."  *Id.* ¶ 78.

Later in 2014, Gomes moved into a two-bedroom unit, ECF No. 79-2 (Exh. D) at 32. Nicholas sleeps in one bedroom, Bobbie sleeps in the second bedroom, and Gomes sleeps in the living room.  *Id.* at 27.

### 4.  Lillie Ware and Stephen Jones

Lillie Ware ("Ware") lives with her adult son Stephen Jones ("Stephen") and two-year old granddaughter Lania in a three-bedroom unit.  SAC ¶ 80.  Ware states that she has been diagnosed with PTSD and major depression.  *Id.* ¶ 81.  Ware also states that Stephen has been diagnosed with attention deficit disorder and a learning disorder.  *Id.* ¶ 82.  Ware alleges that both she and Stephen need a separate bedroom to accommodate their disabilities.

"As a result of the 2013 sequester, HACSC reduce[d] the family's Section 8 voucher size from three bedrooms to two."  *Id.* ¶ 84.  In January and March 2014, Ware submitted reasonable accommodation requests for a three-bedroom voucher based on her and Stephen's disabilities.  *Id.* ¶ 86–87.  These requests were supported by medical documentation.  *Id.*  Ware's request was denied on July 21, 2014, and the denial was upheld after an informal hearing.  *Id.* ¶ 87–88.  During the hearing, HACSC officer Teresa Faz stated that "I find that there is no nexus between your request to increase your voucher size by one bedroom for the purpose of a reasonable accommodation for your son Stephen Jones."  *Id.* ¶ 88.

As a result of HACSC's actions, Ware moved into a two-bedroom unit.  ECF No. 79-2 (Exh. E) at 21.  Currently, Ware sleeps in one bedroom, Stephen sleeps in the second bedroom,

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

and Lania sleeps in the living room.  *Id.* at 98–99.

**5. Dehab Haile and Freihiwet Tesfamariam**

Debra Haile ("Haile") lives with her daughter Freihiwet Tesfamariam ("Freihiwet") and her son Sesinos in a three-bedroom unit.  *Id.* ¶ 90.  Freihiwet "has been diagnosed with severe depression, agoraphobia, panic disorder, and asthma."  *Id.* ¶ 91.  Freihiwhet's "disabilities cause panic attacks, insomnia, and impulses to engage in self-harm."  *Id.*  "In order to manage [these] symptoms," Haile states that "it is necessary for Freihiwet to have her own bedroom."  *Id.* Haile's voucher size was reduced to two bedrooms in September 2013.  Haile thereafter submitted a reasonable accommodation request for Freihiwhet's disability, supported by medical documentation.  *Id.* ¶ 94.  HACSC denied Haile's request on January 15, 2014, and the denial was upheld following an informal hearing.  *Id.* ¶ 95–96.  During the hearing, HACSC officer Teresa Faz stated that "there is no nexus between your request and the stated disability . . .  If your family chooses, you could have one bedroom, your daughter the other, and the third person could use the living room area for sleeping purposes."  *Id.* ¶ 96.

Although Haile's family continues to live in a three-bedroom unit, Haile pays out of pocket for the third bedroom because of HACSC's denial of Haile's reasonable accommodation request.

The following chart summarizes the accommodations of each named Plaintiff.

| Named Plaintiff | Number of Family Members | Bedroom Allocation Before Sequester | Bedroom Allocation After Sequester | Description of Current Situation |
|---|---|---|---|---|
| Huynh | 4 | 3 | 2 | Remains in three-bedroom unit |
| Benabides & Garcia | 3 | 3 | 2 | Remains in three-bedroom unit |
| Gomes & Nicholas | 3 | 3 | 2 | Nicholas and Bobbie sleep in bedrooms, Gomes sleeps in living area |
| Ware & Stephen | 3 | 3 | 2 | Ware and Stephen sleep in bedrooms, Lania sleeps in living area |
| Haile & | 3 | 3 | 2 | Remains in three-bedroom unit |

8

| Freihiwet | | | | |
|-----------|--|--|--|--|

## B. Procedural History

On April 14, 2014, Huynh filed the original complaint in this case in Santa Clara County Superior Court.  ECF No. 1-1 ("Compl.").  Defendants removed this case to federal court on May 22, 2014.  ECF No. 1.  On May 29, 2014, Defendants moved to dismiss the original complaint. ECF No. 8 ("Mot. to Dismiss").  The Court granted in part and denied in part Defendants' motion to dismiss on September 2, 2014, ECF No. 14 ("MTD Order"), and Huynh subsequently filed a First Amended Complaint.  ECF No. 18 ("FAC").  On January 7, 2015, the Court granted Huynh's request to file a Second Amended Complaint, and on January 12, 2015, Huynh—now joined by the rest of the named Plaintiffs—filed the SAC.  Defendants answered the SAC on February 6, 2015.  ECF No. 31.

The SAC contains five substantive causes of action, based on violations of (1) the Fair Housing Amendments Act, (2) the Fair Employment and Housing Act, (3) the California Disabled Persons Act, (4) Section 504 of the Rehabilitation Act, and (5) the Americans with Disabilities Act.  The SAC also includes a sixth cause of action for declaratory relief.

On September 17, 2015, Plaintiffs moved for class certification pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).  After holding a hearing on Plaintiffs' motion, the Court granted Plaintiffs' motion on November 12, 2015.  ECF No. 67 ("Class Cert. Order"). Specifically, the Court certified the following Class:

> Santa Clara County Section 8 voucher holders who have disabilities and/or have family members with disabilities who (1) made a reasonable accommodation request to HACSC for an additional bedroom after July 1, 2013, (2) had a documented and undisputed need for a separate bedroom, (3) were denied a disability-related increase in the number of bedrooms by HACSC, (4) were not previously granted a permanent reasonable accommodation request, (5) did not request the additional bedroom for a live-in caregiver or for storage of medical equipment, and (6) have at least one family member who is not disabled.

*Id.* at 23.  In addition, the Court appointed Thanh Huynh, Venus Benabides, Rudy Garcia, Lynda Gomes, Nicholas Wallace, Lillie Ware, Stephen Jones, Dehab Haile, and Freihiwet Tesfamariam

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    as Class Representatives and the Law Foundation of Silicon Valley as Class Counsel. *Id.*

2          Pursuant to Federal Rule of Civil Procedure 23(c)(2), the parties filed a proposed Notice

3    and Opt Out Form for the Court's review on April 1, 2016. ECF No. 90; Fed. R. Civ. P. 23(c)(2)

4    (requiring parties to send "the best notice that is practicable under the circumstances . . . [f]or any

5    class certified under Rule 23(b)(3)"). The Court made suggested amendments to these documents,

6    which the parties adopted in full on April 6, 2016. ECF No. 93. The Court approved the amended

7    Notice and Opt Out Form on April 6, 2016, which included an opt out deadline of May 5, 2016.

8    ECF No. 95; *see Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (approving

9    opt out deadline of less than one month after notice). There have been three opt outs.

10         On November 25, 2015, Defendants filed before the Ninth Circuit a petition for permission

11    to appeal the Court's class certification order. ECF No. 71. The Ninth Circuit denied this petition

12    on April 6, 2016. ECF No. 96.

13         On March 10, 2016, the parties filed cross-motions for summary judgment. ECF No. 79

14    ("Def. Mot."); ECF No. 80 ("Pls. Mot."). Defendants' summary judgment motion included two

15    requests for judicial notice. ECF No. 79-4; ECF No. 88-1. Plaintiffs filed a response to

16    Defendants' motion on March 24, 2016, and Defendants filed a reply on March 31, 2016. ECF

17    No. 86 ("Pls. Opp'n"); ECF No. 88 ("Def. Reply"). Likewise, Defendants filed a response to

18    Plaintiffs' motion on March 24, 2016, and Plaintiffs filed a reply on March 31, 2016. ECF No. 85

19    ("Def. Opp'n"); ECF No. 87 ("Pls. Reply").

20         On May 10, 2016, the Court issued an order which included three questions for the parties

21    to address at the May 12, 2016 hearing on the parties' cross-motions for summary judgment. ECF

22    No. 101. In addition, the Court requested the parties to file a response to the following question:

23

24         Do the parties agree that—as a purely legal matter—a hypothetical blanket reasonable
        accommodation policy where all requests for a larger subsidy are denied without

25         consideration of a disabled individual's fact-specific circumstances would violate state and
        federal antidiscrimination law? In answering this question, the parties are to set aside the

26         question of whether, as a factual matter, HACSC actually implemented a blanket
        reasonable accommodation policy.

27

10

28    Case No. 14-CV-02367-LHK
   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
   JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*Northern District of California*

1  ECF No. 101 at 1.  The parties filed their respective responses on May 11, 2016.  ECF Nos. 102 &

2  103.

3  **II.      JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS**

4      **A.  Requests for Judicial Notice**

5          Defendants first request judicial notice of the following documents: (1) the Court's class

6  certification order, (2) the original complaint in this case, and (3) the SAC.  ECF No. 79-4.

7  Plaintiffs do not oppose Defendants' request, and the Court finds these documents subject to

8  judicial notice.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.

9  2006) (holding that "court filings and other matters of public record" are subject to judicial

10  notice).  However, to the extent any of the factual allegations in these documents is disputed, the

11  Court does not take judicial notice of these disputed allegations.  *See, e.g.*, *Lee v. City of Los*

12  *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public

13  record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.")

14  (internal quotation marks omitted).  Accordingly, Defendants' first request for judicial notice is

15  GRANTED.

16          Defendants' second request for judicial notice, however, includes excerpts of various

17  depositions as well as several emails sent amongst various HACSC officials.  ECF No. 88-1.

18  Defendants appear to seek judicial notice not of the fact that a particular witness was deposed or

19  that a particular email was sent, but for the truth of the matters discussed therein.  The content of

20  these depositions and emails are not the sort of undisputed facts subject to judicial notice.  *See,*

21  *e.g.*, *United States v. $127,000 in U.S. Currency*, 2012 WL 2917467, *5 (N.D. Cal. July 7, 2012)

22  ("A court . . . may take judicial notice of undisputed facts . . . , but it may not take judicial notice

23  of disputed ones."); *accord Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (holding that

24  court may not take judicial notice of deposition excerpts subject to reasonable dispute).  Rather,

25  these transcripts and emails address (1) whether Defendants had a reasonable accommodation

26  policy, (2) what this reasonable accommodation policy required Defendants to do, and (3) how

27

28  Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants implemented this policy.  The parties disagree on these issues, and the resolution of these issues is critical to the resolution of this case.  Defendants' second request for judicial notice is therefore DENIED.

### B.  Objections to Plaintiffs' Exhibits

In opposing Plaintiffs' motion for summary judgment, Defendants have objected to 27 of Plaintiffs' Exhibits.  For purposes of organization, these Exhibits have been grouped into five categories: (1) deposition testimony, (2) HACSC policy documents, (3) HACSC internal documents, (4) denial letters and forms, and (5) other materials produced during discovery.  Def. Opp'n at 22 n.7.  The Court addresses each category in turn.

### 1.  Deposition Testimony (Exhibits 8–10 & 16–17)

First, Defendants argue that "Plaintiffs failed to attach the court reporter's certification" to certain deposition transcripts, which is "required for [purposes of] authenticity and admissibility."  *Id.*  However, in opposing Plaintiffs' summary judgment motion, Defendants have included excerpts from the same depositions, as summarized by the table below:

| Description | Plaintiffs' Exh. No. | Defendants' Exh. No. |
|---|---|---|
| December 30, 2015 Sangalang Deposition | ECF No. 81-8 | ECF No. 85-1 (Exh. M) |
| December 16, 2015 Sanchez Deposition | ECF No. 81-9 | ECF No. 85-1 (Exh. K) |
| July 1, 2015 Burrier Deposition | ECF No. 81-10 | ECF No. 85-1 (Exh. D) |
| December 11, 2015 Montano Deposition | ECF No. 81-16 | ECF No. 85-1 (Exh. J) |
| June 15, 2015 Gonzalez Deposition | ECF No. 81-17 | ECF No. 85-1 (Exh. C) |

Defendants have thus objected to the same testimony upon which Defendants also ask the Court to rely.  The only meaningful difference between Defendants' Exhibits and Plaintiffs' Exhibits is that Defendants' Exhibits included a reporter's certification.

In *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002), the Ninth Circuit stated that "[a] deposition or an extract therefrom is authenticated in a motion for summary

judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."  However, "a district court's admission of unauthenticated evidence in a summary judgment motion is harmless error when the same item of evidence has been authenticated by an opposing party."  *Id.* at 776. Because Defendants have included authenticated copies of all the deposition testimony to which Defendants object, it would be harmless error to consider Plaintiffs' Exhibits.  Defendants' objections to Exhibits 8–10 and 16–17 are therefore OVERRULED.

### 2.  HACSC Policy Documents (Exhibits 3–4)

The Court also finds unavailing Defendants' objection to documents describing HACSC's subsidy standard and reasonable accommodation policy.  As summarized below, Defendants filed these same documents for the Court's review amongst their own Exhibits:

| Description | Plaintiffs' Exh. No. | Defendants' Exh. No. |
| --- | --- | --- |
| HACSC Subsidy Standard Policy | ECF No. 81-3 | ECF No. 85-3 (Exh. C) |
| HACSC Reasonable Accommodation Policy | ECF No. 81-4 | ECF No. 85-3 (Exh. B) |

Defendants' objections to Exhibits 3–4 are therefore OVERRULED.

### 3.  HACSC Internal Documents (Exhibits 5, 11–12, 14–15 & 27)

Defendants also object to Plaintiffs' use of internal HACSC documents, which Defendants contend were not properly authenticated.  These objections lack merit.

First, Exhibit 5 is a document that describes changes to the Section 8 program following the 2013 sequester.  The document includes HACSC's logo on the upper left hand corner and HACSC's Bates number at the bottom right hand corner.  Defendants do not contend that this document is actually inauthentic or inadmissible.  In fact, Defendants rely upon the same facts discussed in this document—such as the changes to HACSC's bedroom allocation policy—in their own summary judgment motion. Def. Mot. at 5–6.  Thus, even if Exhibit 5 was excluded, the Court could simply cite Defendants' own filings to reach the same conclusions.

Second, Exhibit 11 is a document "showing the number of . . . reasonable accommodation

13

United States District Court
Northern District of California

1   requests" that HACSC received from "July 15, 2013 through December 31, 2013."  ECF No. 81 at

2   3.  This same document was filed with Plaintiffs' class certification motion.  ECF No. 43-7.

3   Defendants did not object to this document at that time, and Defendants do not now contend that

4   the document is actually inauthentic or inadmissible.

5        Third, Exhibit 12 is a March 5, 2014 letter sent from HACSC to Kara Brodfuehrer, an

6   attorney who previously represented Huynh.  Akin to the deposition testimony documents

7   discussed above, Defendants filed this same letter in opposing Plaintiffs' motion for class

8   certification.  ECF No. 49 (Exh. G).  Although Defendants did not file this letter in briefing the

9   instant motions, Federal Rule of Civil Procedure 56 allows courts to consider all materials in the

10  record when reviewing summary judgment motions.  Fed. R. Civ. P. 56(c)(3) ("The court need

11  consider only the cited materials, but it may consider other materials in the record.").

12       Fourth, Exhibit 14 is an HACSC document which provides information on HACSC's

13  reasonable accommodation policy.  The document includes HACSC's logo on the upper left hand

14  corner and HACSC's Bates number at the bottom right hand corner.  Defendants do not argue that

15  Exhibit 14 is inauthentic or inadmissible, and the information in this Exhibit—such as HACSC's

16  obligation to comply with various antidiscrimination laws—can be found in any number of

17  Defendants' own Exhibits.

18       Fifth, Exhibits 15 and 27 are emails sent by HACSC employees discussing how reasonable

19  accommodation requests should be handled.  Defendants filed these same emails as Exhibits in

20  opposing Plaintiffs' motion for summary judgment.  ECF No. 85-3 (Exh. E); ECF No. 85-3 (Exh.

21  D).  Accordingly, Defendants' objections to Exhibit 15 and Exhibit 27 are OVERRULED.  For the

22  reasons stated above, Defendants' objections to Exhibits 5, 11–12, and 14 are also OVERRULED.

23       **4.  Denial Letters and Forms (Exhibits 18–26, 29 & 31–33)**

24       Next, Defendants object to letters that Class Members received from HACSC denying their

25  reasonable accommodation requests.  Defendants also object to two internal HACSC memoranda

26  where an HACSC specialist recommended granting a Class Member's reasonable accommodation

27

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

14

request, only to have an HACSC supervisor overrule this recommendation.

These objections fail for a number of reasons.  First, several of these denial letters and memoranda were filed in support of Plaintiffs' motion for class certification.  ECF No. 43-13; ECF No. 43-14; ECF No. 43-18.  Defendants did not object to these materials despite opportunities to do so in their brief in opposition to class certification, at oral argument on class certification, and before the Ninth Circuit in their petition for permission to appeal class certification.  Even now, Defendants do not argue that these documents are actually inauthentic or inadmissible.  In fact, in opposing Plaintiffs' motion for summary judgment, Defendants filed a nearly identical internal memorandum, where an HACSC specialist recommended granting a reasonable accommodation request, only to have that recommendation be overruled.  ECF No. 85-1 (Exh. I).  Furthermore, each denial letter and internal memoranda at issue bears, at the bottom right hand corner, an HACSC Bates number.

More to the point, Defendants concede that they used standard language to deny reasonable accommodation requests.  As Defendants explain, "the standard verbiage disseminated by Ms. Sangalang in her email to . . . housing programs employees, as well as the boilerplate language prepared by Ms. Burrier . . . [were] prepared . . . to ensure consistency in the manner in which the results of [HACSC's] determinations were conveyed to each and every Voucher Program participant."  Def. Opp'n at 22.  In other words, the parties dispute whether HACSC applied a blanket policy to deny reasonable accommodation requests.  The parties do not dispute whether HACSC—after deciding to deny a request—sent each Class Member a form letter.  *Id.* at 22–23.

As a final matter, at the summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "[W]hen evidence is not presented in an admissible form in the context of a motion for summary judgment, *but . . . may be presented in an admissible form at trial*, a court may still consider that evidence."  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).  Accordingly, a court may consider a document on summary judgment so long

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

as "[a] competent witness with personal knowledge [can] authenticate the document" at issue.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1551 (9th Cir. 1989).  Here, each denial letter could be authenticated by the Class Member who received the letter.  Fed. R. Evid. 901(b)(1) (allowing authentication based upon "[t]estimony of a witness . . . that an item is what it is claimed to be.");  *see, e.g.*, ECF No. 81-21 (Huynh Denial Letter); ECF No. 81-23 (Ware Denial Letter).  Defendants' objections to Exhibits 18–26, 29 & 31–33 are therefore OVERRULED.

### 5.  Other Materials Produced by Defendants During Discovery (Exhibit 6)

Finally, Defendants object to Exhibit 6, which are Defendants' March 23, 2015 answers to the first set of Plaintiffs' Request for Admissions.  It is unclear on what basis Defendants seek to object.  First, Exhibit 6 includes, at the end, the signature of Helene Simvoulakis-Panos, an attorney representing Defendants.  Defendants also do not dispute that Exhibit 6 is a true and accurate copy of their answers to Plaintiffs' Request for Admissions.  Accordingly, Defendants' objection to Exhibit 6 is OVERRULED.

In sum, Defendants' objections have all been overruled.  Many objections were made without a legal basis or were based on a technical objection that had no effect because Defendants relied on the same documents for the instant motions.  Accordingly, given the fact that trial is only a month away, Defendants are strongly discouraged from renewing any such objections which have caused an unnecessary expenditure of Court and party resources.

### C.  Objections to Defendants' Exhibits (Exhibit O)

As a final matter, Plaintiffs object to Defendants' filing of a spreadsheet that summarizes HACSC's review of Class Members' reasonable accommodation requests.  This spreadsheet includes "the HACSC entity identification number for each household, the number of persons residing in each household, the subsidy size for each household, the type of disability being alleged, if known, as well as the alleged reasons why a separate bedroom is required to accommodate said disability."  ECF No. 85-1 at 4.  This spreadsheet is Exhibit O in ECF No. 85-

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1 | 1, filed with Defendants' opposition to Plaintiffs' motion for summary judgment.

2 |      In Plaintiffs' reply, filed on March 31, 2016, Plaintiffs objected to Exhibit O and stated

3 | that the Exhibit had not been "produced during discovery, and should therefore be excluded."  Pls.

4 | Reply at 7 n.2.  Plaintiffs further stated that "Plaintiffs' counsel ha[d] not . . . been able to review

5 | the accuracy of the information contained therein, and could therefore be substantially prejudiced

6 | by inclusion of this evidence."  *Id.*

7 |      On May 10, 2016, the Court ordered the parties to prepare to "address the admissibility of

8 | Exhibit O in ECF No. 85-1" at the May 12, 2016 summary judgment hearing.  ECF No. 101 at 1.

9 | Specifically, the Court asked the parties to discuss "(1) what evidence Defendants drew upon to

10 | produce Exhibit O, (2) whether this evidence was produced to Plaintiffs, and (3) how Exhibit O

11 | was created."  *Id.* at 1–2.

12 |      During the summary judgment hearing, Plaintiffs stated that Exhibit O had not been

13 | produced during discovery, did not include information on any of the named Plaintiffs, and

14 | inappropriately characterized Class Members' reasonable accommodation requests.  In response,

15 | Defendants conceded that Exhibit O relied upon some information that had never been produced

16 | to Plaintiffs, and that Defendants created and produced Exhibit O for the first time in March 2016.

17 |      Pursuant to Federal Rule of Civil Procedure 26(a), a party must provide the opposing party

18 | "a copy . . . of all documents . . . and tangible things that the disclosing party has in its possession,

19 | custody, or control and may use to supports its claims or defenses."  Fed. R. Civ. P. 26(a).  This

20 | affirmative obligation continues throughout the course of litigation: under Federal Rule of Civil

21 | Procedure 26(e), "if [a] party learns that in some material respect the disclosure or response is

22 | incomplete or incorrect, and if the additional or corrective information has not otherwise been

23 | made known to the other parties during the discovery process," then the disclosing party must

24 | "supplement or correct its disclosure or response in a timely manner."  Fed. R. Civ. P. 26(e)(1)(A).

25 | Federal Rule of Civil Procedure 37(c)(1) further provides that, "[i]f a party fails to provide

26 | information . . . as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not

*United States District Court*
*Northern District of California*

17

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   allowed to use that information . . . on a motion, at a hearing, or at trial, unless the failure was

2   substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  "Where the exclusion [of some

3   evidence] would not amount to dismissal of one or more of the plaintiff's claims, a court need not

4   find that the failure to disclose was in bad faith before excluding [the evidence at issue]." *Jackson*

5   *Family Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 104902, *1 (N.D. Cal. Jan. 9, 2014).

6        Here, the information in Exhibit O does not fall within the "substantially justified" or

7   "harmless" exceptions.  Defendants were on notice since at least March 31, 2016 of Plaintiffs'

8   objections to Exhibit O.  Nonetheless, Defendants acknowledged at the May 12, 2016 summary

9   judgment hearing that Defendants did not look into whether all documents used to create Exhibit

10  O had been produced to Plaintiffs until after the Court's May 10, 2016 order.  Additionally, the

11  information contained in Exhibit O purports to document the reasonable accommodation requests

12  of many Class Members, with information on the family size, unit size, voucher size, and reason

13  behind the reasonable accommodation request.  This information is critical to determining whether

14  Defendants handled each request on a case-by-case basis and thus whether Defendants violated

15  state and federal law.  Defendants' failure to produce documents used to create Exhibit O—even if

16  inadvertent—is not substantially justified and is not harmless.  Fact discovery closed on January

17  15, 2016, expert discovery closed on March 25, 2016, cross-motions for summary judgment have

18  been fully briefed, and trial begins next month.

19       Accordingly, Plaintiffs' objection to Exhibit O is SUSTAINED.  The Court does not

20  consider Exhibit O in the instant Order.  Moreover, Defendants may not use Exhibit O at the

21  pretrial conference or at trial.  Any summary charts that Defendants intend to use at trial must rely

22  upon evidence that was timely produced during discovery.

23  ## III.    LEGAL STANDARD

24       Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

25  inferences in the light most favorable to the nonmoving party, there are no genuine issues of

26  material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

27

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Where the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## IV.   DISCUSSION

Plaintiffs' central contention in their summary judgment motion is that Defendants "implemented a blanket policy, in practice if not in name, which denies all requests for reasonable accommodation for an additional bedroom where a live in aid or medical equipment [is] not involved," in violation of the Fair Housing Amendments Act ("FHAA"), the Fair Employment and Housing Act ("FEHA"), the California Disabled Persons Act ("CDPA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Americans with Disabilities Act ("ADA").  Pls. Mot. at 18.  Defendants' summary judgment motion, on the other hand, is essentially a mirror image of Plaintiffs' motion, with Defendants arguing that their reasonable accommodation procedures did not violate state and federal law.  Def. Mot. at 11.  In addition, Defendants claim that they did not

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  provide housing to Plaintiffs and thus can not be held liable under state and federal

2  antidiscrimination law. *Id.* at 16–25.

3       Because Defendants have already raised—and the Court has already rejected—

4  Defendants' argument that the antidiscrimination laws do not apply to them, the Court turns first

5  to the case's central contention: whether Defendants implemented a blanket reasonable

6  accommodation policy in violation of state and federal law.

7       As to Defendants' reasonable accommodation policy, the parties agree that Defendants

8  apply a two-step process to review Plaintiffs' reasonable accommodation requests.  First, "the

9  amount of money given to Plaintiffs [i]s calculated by the same subsidy standard applied equally

10  to both disabled and non-disabled households."  Def. Reply at 1.  That subsidy standard provides

11  one bedroom for the head of household and spouse or partner, and one bedroom for every two

12  other residents regardless of age and gender.  Def. Mot. at 6.  After applying this disability-neutral

13  subsidy standard, Defendants then reviews any reasonable accommodation requests that might

14  have been filed.  Def. Reply at 1.

15       According to Plaintiffs, Defendants must review every reasonable accommodation request

16  on a case-by-case basis.  Instead, however, Plaintiffs contend that Defendants apply a blanket

17  uniform policy to deny each request, without considering the factual circumstances behind the

18  request.  On the other hand, Defendants aver that they do engage in a case-by-case review of every

19  request.  Additionally, Defendants state that, for each Class Member, Defendants determined that

20  no nexus existed between the Class Member's disability and the requested accommodation.

21       These positions implicate several factual and legal disputes.  For purposes of clarity, the

22  Court examines the parties' arguments in two parts.  First, the Court addresses whether, as a legal

23  matter, Defendants' alleged blanket reasonable accommodation policy violates state and federal

24  law.  Second, the Court addresses whether, as a factual matter, Defendants actually implemented

25  such a policy.

26  **A.  As Alleged, Defendants' Blanket Reasonable Accommodation Policy Would Violate
       State and Federal Law**

27

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   The elements necessary to state a claim for disability discrimination under Plaintiffs'

2   various causes of action are essentially identical.  "To make out a claim of discrimination based on

3   failure to reasonably accommodate" under the FHAA, for instance, "a plaintiff must demonstrate

4   that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably

5   should have known of the plaintiff's handicap; (3) accommodation of the handicap may be

6   necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants

7   refused to make such accommodation."  *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir.

8   2003) (internal quotation marks omitted).[2]

9   Similarly, "[a] *prima facie* case is established under the FEHA where the plaintiff shows

10   that she is a member of a protected class, that she applied and was qualified for a housing

11   accommodation, was denied such housing accommodation, and that similarly situated individuals

12   not in a protected class applied for and obtained housing."  *McDonald v. Coldwell Banker*, 543

13   F.3d 498, 503 (9th Cir. 2008).

14   The CDPA provides that "[a]ny person renting, leasing, or otherwise providing real

15   property for compensation shall not refuse to make reasonable accommodation in rules, policies,

16   practices, or services, when those accommodations may be necessary to afford individuals with a

17   disability equal opportunity to use and enjoy the premises."  Cal. Civ. Code § 54.1(b)(3)(B).  As

18   courts have observed, "[t]his language closely parallels the language defining a 'reasonable

19   accommodation' claim under the FEHA."  *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79

20   F. Supp. 3d 1120, 1132 (C.D. Cal. 2015).

21   Next, "[t]o prove a public program or service violates Title II of the ADA, a plaintiff must

22   show: (1) he is a qualified individual with a disability; (2) he was either excluded from

23   participation in or denied the benefits of a public entity's services, programs or activities, or was

24   otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

25   _____

26   [2] Although the FHAA employs the term "handicap" rather than "disability," the "terms 'handicap'

27   and 'handicapped' [in the FHAA] have interchangeable meaning with 'disability' and 'disabled'" as used in the ADA and Section 504.  *Giebeler*, 343 F.3d at 1146 n.2.

21

28   Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    discrimination was by reason of his disability." *Weinreich v. Los Angeles Cnty. Metro. Transp.*

2    *Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (internal quotation marks omitted) (emphasis removed).

3    Finally, "under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an

4    individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied

5    the benefits of the program solely by reason of his disability; and (4) the program receives federal

6    financial assistance." *Id.* (internal quotation marks and footnote omitted) (emphasis removed).

7    To summarize, for each of the SAC's substantive causes of action, Plaintiffs must—in

8    essence—establish (1) that Plaintiffs had a disability which Defendants knew or should have

9    known about, (2) that Plaintiffs made a reasonable accommodation request, and (3) that this

10   request was denied.  There is no dispute as to the first and third requirements.  The core legal

11   dispute thus relates to (2), the second requirement: whether Class Members' request for a larger

12   subsidy for an additional bedroom is a reasonable accommodation.

13   Given the similarity between Plaintiffs' causes of action, courts have generally held that

14   this reasonable accommodation requirement should be interpreted consistently across state and

15   federal antidiscrimination laws.  *See, e.g.*, *Giebeler*, 343 F.3d at 1149 ("[W]e have applied

16   [Section 504] regulations and case law when interpreting the FHAA's reasonable accommodation

17   provisions."); *id.* ("[W]e have relied on ADA cases in applying [Section 504], because, as a

18   general matter, there is no significant difference in the analysis or rights and obligations created by

19   the two Acts.") (internal quotation marks omitted); *Montano*, 79 F. Supp. 3d at 1126 ("Many, if

20   not all, of plaintiff's requested accommodations are 'reasonable' within the meaning of the

21   applicable statutes—the FHA[A], ADA, Rehabilitation Act, FEHA, and CDPA."); *Oconomowoc*

22   *Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002) ("The requirements

23   for reasonable accommodation under the ADA are the same as those under the FHAA.").

24   Both parties also agree that a single standard should govern Plaintiffs' reasonable

25   accommodation claims.  The parties cite *Giebeler v. M & B Associates*, where the Ninth Circuit

26   determined that "an accommodation is reasonable under the FHAA when it imposes no

27

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1  fundamental alteration in the nature of the program or undue financial or administrative burdens."

2  343 F.3d at 1157 (internal quotation marks omitted); *see* Def. Mot. at 13 (citing *Giebeler*); Pls.

3  Mot. at 11 (same).  In light of the parties' positions and in accord with Ninth Circuit precedent, the

4  Court shall not distinguish between Plaintiffs' causes of action in determining whether

5  Defendants' alleged blanket policy runs afoul of state and federal law.  Instead, the Court shall

6  employ the standard set forth in *Giebeler*, with reference to other authority where appropriate.

7         *Giebeler* established a two part test to determine whether a particular accommodation

8  should be considered reasonable under the FHAA.  First, a plaintiff must demonstrate causation:

9  "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal

10  opportunity to enjoy the housing of their choice."  343 F.3d at 1155.  "[W]ithout a causal link

11  between defendants' policy and the plaintiff's injury, there can be no obligation on the part of

12  defendants to make a reasonable accommodation."  *Id.*  Next, a plaintiff must establish that the

13  requested accommodation was "reasonable": a "reasonable" accommodation is one that "imposes

14  no fundamental alteration in the nature of the program or undue financial or administrative

15  burdens."  *Id.* at 1157 (internal quotation marks omitted).  The Court addresses these prongs—

16  causation and reasonableness—in turn.

17       **1. Causation**

18         On causation, a plaintiff must "show that [an] alteration [to] a particular policy may be

19  necessary to her use and enjoyment of the property."  *Id.* at 1155 (internal quotation marks

20  omitted).  "[E]*qual* opportunity is a key component" to this analysis: "an accommodation must be

21  possibly necessary to afford the plaintiff [an] *equal* opportunity to use and enjoy a dwelling" as a

22  non-disabled individual.  *Id.* (emphasis added).

23         In *Giebeler*, for instance, plaintiff had AIDS and was no longer able to work.  *Id.* at 1144.

24  "Once he was no longer earning a salary, his former apartment became too expensive for him.  In

25  addition, he needed assistance with daily matters because of his illness and so wanted to live

26  closer to his mother."  *Id.*  Plaintiff sought and found an available apartment, which was less

27

28  Case No. 14-CV-02367-LHK
   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
   JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    expensive than his former apartment.  However, because plaintiff could not meet the necessary

2    income requirements for this new apartment, plaintiff's mother offered to cosign on plaintiff's

3    lease.  "The owners of the apartment complex refused to rent either to Giebeler or to his mother,

4    citing a management company policy against cosigners."  *Id.*  Plaintiff thereafter requested a

5    reasonable accommodation to the cosigner policy on the basis of his disability.  *Id.* at 1145.  This

6    request was denied, with defendants arguing that changing its cosigner policy "would (1) prefer

7    disabled over nondisabled impecunious individuals; (2) accommodate Giebeler's poverty rather

8    than his disability; and (3) increase M & B's financial exposure."  *Id.* at 1148.

9        The Ninth Circuit rejected this argument and held that "the causal link between

10   [defendants'] failure to accommodate and Giebeler's disability [was] obvious."  *Id.* at 1155.

11   "Giebeler was unemployed because of his disability and therefore had insufficient income to

12   qualify for the apartment."  *Id.*  Allowing plaintiff's mother to cosign on an apartment lease was

13   "necessary to enable Giebeler to live in [the] apartment at [issue]."  *Id.*  On the element of equal

14   opportunity, the Ninth Circuit recognized that defendants' policy denied plaintiff "an opportunity

15   for which he would otherwise be qualified."  *Id.* at 1156.  As the court observed, "Giebeler is

16   similarly situated to other tenants at [the apartment complex] in terms of the financial resources he

17   can bring to a tenancy at [the apartment complex].  It is [only] his way of demonstrating and

18   deploying these resources that is different."  *Id.*

19       In reaching its decision, the *Giebeler* court relied extensively upon the U.S. Supreme

20   Court's decision in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).  In *Barnett*, plaintiff, after

21   injuring his back, had been "transferred to a less physically demanding mailroom position."  *Id.* at

22   394.  However, under U.S. Airways' "seniority-based employee bidding" system, a more senior

23   employee could, from time to time, bid for plaintiff's mailroom position.  *Id.*  Two employees

24   senior to plaintiff did bid for plaintiff's position, and plaintiff sought an exception under the ADA

25   to U.S. Airways' seniority requirements on the basis of his disability.  *Id.*

26       U.S. Airways denied this request and argued that "the fact that an accommodation would

27

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   violate the rules of a seniority system always shows that the accommodation is not a 'reasonable'

2   one." *Id.* at 396.  According to U.S. Airways, the ADA "seeks only 'equal' treatment for those

3   with disabilities"—it does not "require an employer to grant preferential treatment." *Id.* at 397.

4   Hence, the ADA "does not require the employer to grant a request that, in violating a disability-

5   neutral rule, would provide [such] a preference." *Id.*

6          The U.S. Supreme Court rejected this reading.  As the *Barnett* Court held, "preferences

7   will sometimes prove necessary to achieve the [ADA's] basic equal opportunity goal." *Id.*

8   Indeed, the ADA in fact "*requires* preferences in the form of 'reasonable accommodations' that

9   are needed for those with disabilities to obtain the *same* workplace opportunities that those

10   without disabilities automatically enjoy." *Id.* (first emphasis added).  Moreover, "*any* special

11   'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*,

12   preferentially." *Id.* (emphasis added).  Thus, "the fact that the difference in treatment violates an

13   employer's disability-neutral rule cannot by itself place the accommodation beyond the [ADA's]

14   potential reach." *Id.*

15          To underscore this point, the *Barnett* Court drew attention to certain "neutral" rules, such

16   as "[n]eutral office assignment rules [which] would automatically prevent the accommodation of

17   an employee whose disability-imposed limitations require him to work on the ground floor" and

18   "[n]eutral 'break-from-work' rules [which] would automatically prevent the accommodation of an

19   individual who needs additional breaks from work." *Id.* at 397–98.  Reasonable accommodation

20   provisions "could not accomplish" their "intended objective[s]" if the disabled were not given

21   some form of "preferential treatment" to these otherwise neutral rules.  *Id.* at 397.[3]

22          Consistent with *Giebeler* and *Barnett*, in *McGary v. City of Portland*, 386 F.3d 1259, 1262

---

[3] Although *Barnett* addressed a claim brought under Title I of the ADA, which prohibits
employment discrimination, and the instant Plaintiffs bring a claim under Title II, which prohibits
discrimination in the provision of public services, that difference is immaterial in the reasonable
accommodation context. *See, e.g.*, *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th
Cir. 1999) (applying same legal standards for reviewing reasonable accommodation claims
brought under Title I, Title II, and Section 504).

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

(9th Cir. 2004), the Ninth Circuit rejected the argument that a plaintiff had "failed to allege he was denied the equal opportunity to 'use and enjoy' his dwelling[] since he was not denied use of his home or prohibited from living there."  The "equal opportunity" and "use and enjoy" elements, the *McGary* court noted, should be read "broad[ly]."  *Id.*  A disabled individual could bring a viable FHAA claim if a policy or program prevented that individual from using and enjoying a particular aspect of their home on an equal basis as a non-disabled individual.  Thus, the *McGary* court held that imposing generally applicable fees without considering a reasonable accommodation request could constitute interference with the use and enjoyment of one's home.  *Id.* at 1263–64.  Similarly, refusing to grant a disabled person additional time to clean up the person's yard in order to comply with a city nuisance policy could also constitute interference.  *Id.*

Other courts are in accord with the reasoning in *Giebeler*, *Barnett*, and *McGary*.  Several courts, for example, have held that the FHAA—and, in particular, the "use and enjoy" and "equal opportunity" requirements—should be interpreted broadly.  *See, e.g.*, *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) ("[T]he FHA[A] must be given a 'generous construction' in order to carry out 'a policy that Congress considered to be of the highest priority.'") (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211–12 (1972)).

More to the point, in *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008), the Eleventh Circuit observed that "[t]he word 'equal' is a relative term that requires a comparator to have meaning."  Within the FHAA context, "equal opportunity" means that "handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps*."  *Id.*  "Thus, waiving an ordinance that applies to both handicapped and non-handicapped people may be 'necessary' to afford the handicapped an 'equal opportunity' *if* the waiver addresses a need created by the handicap."  *Id.*

Likewise, in *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015), the Sixth Circuit held that "[e]qual use and enjoyment of a dwelling are achieved when an accommodation

26

ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could."  Applying this principle, the Sixth Circuit concluded that a disabled plaintiff, who requested that she be allowed to have a miniature horse in her backyard as a service animal "to play and get exercise," had plausibly shown causation.  *Id.* at 346, 362.  Plaintiff's accommodation, the Sixth Circuit reasoned, was "necessary for her to have an equal opportunity to enjoy a particular use of her house—independent recreation and exercise in her backyard."  *Id.* at 362.

In the instant case, Defendants apply a disability-neutral subsidy standard that allocates one bedroom for the head of household and spouse or partner, and one bedroom for every two other household members regardless of age or gender.  This policy is applied to all voucher holders.  Where there are voucher holders with a medically documented disability that requires a separate bedroom, then the disability-neutral subsidy standard, coupled with an alleged blanket policy, would deny disabled persons an equal opportunity to use and enjoy their homes.

For example, a three person family with two disabled family members who both have a medically-documented need for a separate bedroom would receive a two-bedroom subsidy allocation.  By not providing the requested reasonable accommodation, one family member would have to sleep in the living room.  On this point, federal regulations allow, but do not require, HACSC to consider a living area as a sleeping area.  *See, e.g.*, 24 C.F.R. § 982.401(d)(2)(ii) ("The dwelling unit must [also] have at least one bedroom or living/sleeping room for each two persons.").  However, HACSC concedes that they do not require non-disabled households to use the living room as a sleeping area.  *See* Def. Reply at 4 ("[*O*]*nly if* an accommodation request is made[] do Defendants consider a living area [as a sleeping area] for determining if more money is justified as an accommodation.").  Thus, Defendants' disability-neutral subsidy standard, coupled with an alleged blanket denial policy, can deny certain disabled voucher holders an equal opportunity to use and enjoy their homes as compared to non-disabled voucher holders.

Defendants argue that an exception to this disability-neutral subsidy standard would create

27

United States District Court
Northern District of California

preferential treatment for disabled voucher holders, and that such preferential treatment is impermissible. This argument was rejected by the U.S. Supreme Court in *Barnett*. As the *Barnett* Court stated, "*any* special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*, preferentially." 535 U.S. at 397. "[T]he fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach." *Id.* "Were that not so, the 'reasonable accommodation' provision could not accomplish its intended objective." *Id.* Accordingly, in *Barnett*, the U.S. Supreme Court held that an employee could be provided preferential treatment so that his disability-related needs could trump an employer's otherwise neutral seniority bidding rules. Such preferential treatment may be necessary to further the purpose of antidiscrimination laws.

The Ninth Circuit applied this principle in both *McGary* and *Giebeler*. In *McGary*, the Ninth Circuit held that a homeowner could be granted preferential treatment so that his disability-related needs would allow him extra time to comply with a city's otherwise neutral nuisance abatement policy. In *Giebeler*, the Ninth Circuit held that a prospective tenant could request an exception from an otherwise neutral policy against cosigners.

Here, Plaintiffs' request that, after undertaking a case-by-case review, Defendants provide an exception to Defendants' otherwise neutral subsidy standard policy in order to afford Plaintiffs an equal opportunity to use and enjoy their homes. Defendants' alleged decision to instead act on a blanket and classwide basis does not allow for the individualized analysis of equal use and enjoyment that may be necessary under *Barnett*, *McGary*, and *Giebeler*. Thus, Plaintiffs have shown "that [an] alteration [to] a particular policy may be necessary to her use and enjoyment of the property." *Id.* at 1155 (internal quotation marks omitted). Accordingly, the Court finds that the causation requirement has been met.

## 2. Reasonableness

The Court turns next to the reasonableness requirement. On this point, the Court requested in its May 10, 2016 order that the parties answer whether, "as a purely legal matter—a

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

hypothetical blanket reasonable accommodation policy where all requests for a larger subsidy are denied without consideration of a disabled individual's fact-specific circumstances would violate state and federal antidiscrimination law."  ECF No. 101 at 1.

Defendants answered in the negative.  ECF No. 102.  As Defendants stated, "[t]he individual's fact-specific circumstances are *irrelevant* so long as Defendants may consider a living area as a sleeping area, consistent with federal regulations, when processing accommodation requests."  ECF No. 102 at 2 (emphasis added).  Defendants continued, "[i]f the living area may be considered a sleeping area . . . , then more money from the Voucher Program is not required . . . *whether or not* there is *any* question as to the existence of the disability, the need for the room, or whether the need can be met in another way."  *Id.* (emphasis added).

This legal statement does not comport with Ninth Circuit precedent.  In *Wong v. Regents of University of California*, 192 F.3d 807 (9th Cir. 1999), the Ninth Circuit stated that "[b]ecause the issue of reasonableness depends on the individual circumstances of each case, this determination *requires a fact-specific, individualized analysis of the disabled individual's circumstances* and the accommodations that might allow him to meet the program's standards."  *Id.* at 818 (emphasis added).  "Mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; [state and federal law] create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary to enable the individual to meet the standards in question."  *Id.* (internal quotation marks and alteration omitted).

Two years later, in *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), the Ninth Circuit again held that public entities must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation."  In *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137 (9th Cir. 2001), the Ninth Circuit further stated that "[o]nce an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    implement [an] appropriate reasonable accommodation."[4]  "The interactive process requires

2    communication and good-faith exploration of possible accommodations between employers and

3    individual employees."  *Id.*  Those "who fail to engage in the interactive process in good faith[]

4    face liability for the remedies imposed by the statute if a reasonable accommodation would have

5    been possible."  *Id.* at 1137–38.

6          Consistent with *Humphrey*, the Ninth Circuit in *Allen v. Pacific Bell*, 348 F.3d 1113, 1115

7    (9th Cir. 2003) (per curiam), determined that "[e]ven if [a plaintiff] was not qualified to perform a

8    [certain] job with reasonable accommodation, [a defendant] still ha[s] a duty to engage in an

9    interactive process to consider whether an alternative accommodation . . . would be possible."

10         More recently, in *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006), the court

11   held that a plaintiff "has the burden of showing the existence of a reasonable accommodation that

12   would have enabled him to perform the essential functions of an available job."  "To avoid

13   summary judgment," a plaintiff "need only show that an accommodation seems reasonable on its

14   face, i.e., ordinarily or in the run of cases."  *Id.* (internal quotation marks omitted) (emphasis

15   removed).  U.S. Circuit Judge Diarmuid O'Scannlain, writing for the court, also emphasized that

16   "our cases make clear that [defendants bear] an affirmative obligation to engage in an interactive

17   process in order to identify, if possible, a reasonable accommodation" for a plaintiff.  *Id.*

18         Taken together, these cases contradict Defendants' position that an "individual's fact-

19   specific circumstances are irrelevant."  ECF No. 102 at 1.  These cases instead demonstrate that a

20   public entity such as HACSC must undertake a fact-specific, case-by-case review of each

21   reasonable accommodation request.  If, after conducting such a review, the entity determines that

22   some accommodation may be necessary, the entity may need to then engage in an interactive

23   process to determine what accommodation to provide.  Likewise, after conducting an

24   individualized review, the entity may also determine that the requested accommodation is not

25   _____

26   [4] As noted in footnote 3, courts—including the Ninth Circuit—routinely rely upon employment
     discrimination cases to interpret the reasonable accommodation requirement in the housing
27   context.

30

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1  needed.  Pursuant to this principle, if—as Plaintiffs allege—Defendants implemented a blanket

2  reasonable accommodation policy where all requests for a larger subsidy were denied without any

3  consideration of an individual's fact-specific circumstances, then Defendants would have violated

4  state and federal antidiscrimination law.

5       Consequently, Plaintiffs' motion for summary judgment on the legal issue of whether

6  Defendants' alleged blanket policy violates state and federal law is GRANTED.  Defendants'

7  motion for summary judgment on this legal issue is therefore DENIED.

8  **B.  There is a Genuine Dispute of Material Fact As to Whether Defendants Implemented a Blanket Policy**

9

10       Plaintiffs also contend that, as a factual matter, Defendants implemented a blanket

11  reasonable accommodation policy.  Instead of conducting an individual review, Plaintiffs argue

12  that Defendants "categorically refus[ed] to grant reasonable accommodations to the class."  Pls.

13  Mot. at 15.  On the other hand, Defendants claim that they conducted an individualized assessment

14  of each request and determined that there was no nexus between the request and the alleged

15  disability.

16       In support of their position, Plaintiffs note that, between July 15, 2013 and December 31,

17  2015, there were "215 total requests for reasonable accommodation for a separate bedroom" by

18  the Class.  *Id.* at 18.  All 215 of these requests were denied.  *Id.* at 19.  As an example, HACSC

19  denied Gomes's request for a third bedroom even though both Gomes and one of her two sons are

20  disabled and have a documented need for their own bedrooms.  Plaintiffs allege that HACSC's

21  decision required that Gomes sleep in her living room while her two sons sleep in the two

22  bedrooms.  As stated above, HACSC does not required non-disabled households to use the living

23  room as a sleeping area.

24       Moreover, "[i]n denying accommodations for an extra bedroom, HACSC routinely sent

25  nearly identical denial letters with little to no customization."  *Id.*  Finally, Plaintiffs cite

26  deposition testimony which allegedly demonstrates that "HACSC's administration of the

27  reasonable accommodation policy is perfunctory and mechanical."  *Id.* at 16.  Defendants dispute

31

28  Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  these claims and have presented deposition testimony and other evidence in support of their

2  position.

3      In adjudicating motions for summary judgment, the Court "does not assess credibility or

4  weigh the evidence, but simply determines whether there is a genuine factual issue for trial."

5  *House*, 547 U.S. at 559–60.  With this standard in mind, the Court finds summary judgment

6  inappropriate as to whether Defendants actually implemented a blanket reasonable

7  accommodation policy.

8      A jury could find that Defendants addressed the named Plaintiffs' reasonable

9  accommodation requests in a case-by-case manner.  For example, Huynh made a reasonable

10  accommodation request and subsequently received a letter denying his request.  Huynh thereafter

11  requested an administrative hearing, and submitted evidence in support of his need for an

12  additional bedroom to the hearing officer.  At the hearing, HACSC officer Karen Goodman

13  upheld the denial of Huynh's request, discussed Huynh's disability-related needs, and determined

14  that a larger subsidy was not necessary.  Huynh requested that Goodman's decision be reversed,

15  and in response HACSC sent Huynh a lengthy letter explaining why Huynh's request was denied.

16  ECF No. 81-12.  The other named Plaintiffs also requested and received informal hearings from

17  HACSC.  A jury could find that Plaintiffs' reasonable accommodation requests received case-by-

18  case, fact-specific review.

19      Likewise, the fact that Defendants used standard rejection letters may be consistent with

20  Defendants' explanation that Defendants sought to provide a consistent message to those making

21  reasonable accommodation requests.  Def. Opp'n at 22.

22      Finally, Plaintiffs overextend the deposition testimony at issue.  Plaintiffs, for instance,

23  state that during HACSC Executive Director Katherine Harasz's ("Harasz") deposition, Harasz

24  "was able to take basic information reciting the family composition and documented disability and

25  determine that there [was] no nexus . . . [and that] the other family members c[ould] rearrange to

26  accommodate the family member with the disability." Pls. Mot. at 16–17.  However, a closer

27

28  Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

examination of Harasz's testimony reveals that Harasz appears to have been referring to an

October 29, 2013 email that Harasz's colleague, Aleli Sangalang, sent to Jesse Webster

("Webster"), a HUD official.  ECF No. 81-2 at 142–43.  In this email, Sangalang sought

Webster's advice on whether certain reasonable accommodation requests should be granted or

denied.  ECF No. 81-15.  Each of the examples listed in the email appears to refer to an actual

request.  Under these circumstances, a jury could find that Defendants engaged in the requisite

individualized, case-by-case analysis.

　　　　Defendants have also submitted deposition transcripts where HACSC employees

emphasized that HACSC does not "have a policy that denies reasonable accommodations for

additional bedrooms if not every member of the family has a disability," ECF No. 85-1 (Exh. B at

35).  Several employees referred to the DANCE Procedure, which HACSC employee Dora

Foppiano described as follows:

> DANCE is, first of all, determining if the person has a disability; whether or not—
> how the disability is related to the accommodation that they requested or whether
> or not there is a nexus; if there is a need; if there is any cost involved; and whether
> or not it fundamentally changes the nature of our program.

ECF No. 85-1 (Exh. E) at 22–23.

　　　　In light of the above evidence, a genuine dispute of material fact exists concerning whether

Defendants implemented a blanket reasonable accommodation policy.  Accordingly, Plaintiffs'

motion for summary judgment as to whether Defendants actually implemented a blanket

reasonable accommodation policy is DENIED.  Defendants' motion for summary judgment as to

this same issue is also DENIED.

**C.  Defendants are Subject to State and Federal Antidiscrimination Laws**

　　　　The Court turns finally to whether various state and federal antidiscrimination laws apply

to Defendants.  As noted above, Defendants made these same arguments in their motion to

dismiss.  The Court found them to be without merit at that time, and these arguments remain

without merit.

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

### 1. FHAA

In moving to dismiss the original complaint, Defendants asserted that "the FHAA does not apply to them because 'Defendants are not offering dwellings for rent, but [are] instead allocating federal money to [Huynh].'"  MTD Order at 7 (quoting Mot. to Dismiss at 6).  "Defendants focus[ed] on the definition and use of the term 'dwelling' in the FHAA, arguing that they do not own any dwellings at issue."  *Id.*  In making this argument, Defendants relied upon two cases: *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277 (3d Cir. 1993), and *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337 (6th Cir. 1994).

However, as the Court explained, "neither case reaches as far as Defendants propose."  MTD Order at 7.  Indeed, "the facts in *Growth Horizon[s]* bear little resemblance to [the] denial of a Section 8 voucher."  *Id.* at 8.  In *Growth Horizons*, the Third Circuit was concerned with whether and to what extent a PHA could exercise discretion in buying or leasing housing from a third-party developer.  There are no such third-party developers in the instant case.  Instead, in the instant case, Defendants provide housing vouchers directly to Plaintiffs, and Plaintiffs allege that Defendants violated the FHAA by denying, through a blanket policy, Plaintiffs' requests for a larger housing subsidy.  In addition, *Growth Horizons* "dealt only with § 3604(f)(1) [of the FHAA], which prohibits actions that 'otherwise make unavailable or deny' housing."  *Id.*  However, Plaintiffs here have also pleaded "violations of § 3604(f)(2) [of the FHAA], which prohibits discrimination 'in the provision of services or facilities in connection with such dwelling.'"  *Id.*  "Defendants have not explained why administration of housing vouchers cannot qualify as 'provision of services . . . in connection with' a dwelling."  *Id.*

On *Babin*, the Court characterized Defendants' reliance on the case as "misplaced."  *Id.* at 9.  "*Babin* rejected the claim that buying a house constitutes discrimination merely because it prevents use of that house for the disabled."  *Id.*  "That situation," the Court emphasized, "bears *no* resemblance to HACSC's administration of Section 8 housing vouchers."  *Id.* (emphasis added).  Moreover, certain passages in *Babin* "actually suggest[] that government agencies (such as

34

United States District Court
Northern District of California

1   HACSC) might fall within the ambit of the FHAA if they interfere with availability of housing for

2   the disabled, despite not owning housing." *Id.* at 10.

3           Accordingly, instead of relying upon *Growth Horizons* and *Babin*, the Court found more

4   persuasive the FHAA's text, which appears to directly "contradict Defendants' position." *Id.* at 7.

5   The Court also discussed the Ninth Circuit's decision in *Burgess v. Alameda Housing Authority*,

6   98 F. App'x 603 (9th Cir. 2004), where the Ninth Circuit "allowed a Section 8 voucher recipient

7   to proceed on her FHAA claims that the Alameda Housing Authority unlawfully refused to

8   approve her second voucher extension because of a disability." MTD Order at 10.  Finally, the

9   Court cited cases where "a local government's use of zoning ordinances . . . [were found to be]

10  subject to the FHAA" as an illustration of the FHAA's broad reach.  *Id.*

11          In the instant motions, Defendants once again argue that "there is no evidence that

12  Defendants ever provided any 'dwelling' to Plaintiffs or indirectly made any 'dwelling'

13  unavailable."  Def. Mot. at 18.  These arguments fail on several grounds.  First, Defendants'

14  position is premised upon the holdings of three cases: *Growth Horizons*, *Babin*, and a third case,

15  *Taylor v. The Housing Authority of New Haven*, 267 F.R.D. 36 (D. Conn. 2010).  As the Court has

16  explained, both *Growth Horizons* and *Babin* are distinguishable.  Furthermore, *Taylor* lends no

17  weight to Defendants' argument.  In *Taylor*, the district court noted "that no court [appears to have

18  directly] addressed the question of whether the Fair Housing Act or its Amendments apply to the

19  conduct of a public housing authority acting *not* as a dwelling owner (i.e., in the context of low

20  income public housing), but instead as a provider of funds for use in renting privately-owned

21  dwellings (i.e., in the context of administering a Section 8 Program)."  267 F.R.D. at 48.

22  Nonetheless, the *Taylor* court, citing the Ninth Circuit's *Burgess* decision, acknowledged that

23  "[s]ome courts have [gone ahead and] addressed the merits of such claims."  *Id.*  Consistent with

24  these decisions, the *Taylor* court would "assume the applicability of . . . the FHAA" because the

25  FHAA "states an extremely broad governmental policy—to provide, within constitutional

26  limitations, for fair housing throughout the United States—that would be furthered by preventing

27

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   public housing authorities administering Section 8 voucher programs from discriminating on the

2   basis of disability." *Id.* at 49 (internal quotation marks and citation omitted).  Thus, in accord with

3   this Court, *Taylor* found that entities such as HACSC could be held liable under the FHAA.  *Id.*

4       Second, under the law of the case doctrine, "a court is generally precluded from

5   reconsidering an issue that has already been decided by the same court."  *United States v.*

6   *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  A court may depart from the law of the case where

7   "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3)

8   the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a

9   manifest injustice would otherwise result."  *Id.*  "Failure to apply the doctrine of the law of the

10  case absent one of the[se] requisite conditions constitutes an abuse of discretion."  *Id.*

11      None of these exceptions apply in the instant case.  First, the Court's Motion to Dismiss

12  Order was not clearly erroneous.  Second, there have been no intervening changes in the law:

13  *Growth Horizons*, *Babin*, and *Taylor* were all out of circuit cases that were decided in 1993, 1997,

14  and 2010, respectively.  Third, the instant case has not been remanded.  Fourth, there has been no

15  change in factual circumstances.  Defendants did not then and do not now challenge the following

16  factual allegations: that Plaintiffs received a subsidy standard based on their bedroom allocation,

17  that Plaintiffs made a reasonable accommodation request on the basis of their disabilities, and that

18  Plaintiffs' requests were denied.  Finally, the Court finds that manifest injustice would not result.

19      Defendants nonetheless claim that the law of the case does not apply "because the legal

20  standards governing motions to dismiss and motions for summary judgment are entirely distinct."

21  Def. Reply at 10.  Although Defendants are correct that the "law of the case" doctrine does not, in

22  many circumstances, "preclude a district court from granting summary judgment based on

23  evidence after denying a motion to dismiss based only on the plaintiff's allegations," *Maraschiello*

24  *v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013), this general rule does not apply

25  here.  As other courts have noted, the law of the case "addresses *legal issues* decided by a court."

26  *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 957 F. Supp. 1184, 1195 (D. Nev. 1997).  If no factual

27                                                                          36

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    issues have changed between the initial decision and the instant motion, "the law of the case is still

2    applicable." *Bollinger v. Oregon*, 172 F. App'x 770, 771 (9th Cir. 2006).

3          Here, whether or not Defendants offer dwellings for rent is a legal issue that turns upon the

4    interpretation of the FHAA.  Moreover, Defendants have never before and do not now dispute the

5    basic framework of the Section 8 program.  Given the parties' agreement over how the Section 8

6    Program works, Defendants have provided no reason why the law of the case doctrine should not

7    apply on an issue of legal interpretation.

8          As a final point, Defendants have at no time since the Court's Motion to Dismiss Order

9    filed a motion for leave to file a motion for reconsideration pursuant to Civil Local Rule 7-9.  Such

10   a motion would have been the proper procedural vehicle for Defendants to seek review of the legal

11   conclusions set forth in the Court's Motion to Dismiss Order.  Instead of filing such a motion,

12   Defendants allowed Plaintiffs to file the FAC and the SAC, with both complaints based on the

13   same core legal theories set forth in the original complaint.

14         In sum, Defendants' arguments as to the FHAA were unavailing when Defendants' moved

15   to dismiss the original complaint, and they remain unavailing today.

16         **2.   FEHA**

17         As to Plaintiffs' FEHA claim, Defendants contend that "Plaintiffs' claim . . . fails due to

18   Plaintiffs' inability to demonstrate that Defendants qualify as [property] 'owners' sufficient to

19   impute liability pursuant to Section 12955(a)" of the FEHA.  Defendants raised this same

20   contention in moving to dismiss the original complaint, *see* Mot. to Dismiss at 9 ("This claim fails

21   because Plaintiff has not alleged . . . that Defendants are 'owners of any housing

22   accommodation.'"), which the Court considered and rejected, MTD Order at 11–12.

23         As the Court pointed out, the FEHA's definition of "owner" includes "the lessee,

24   sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any

25   legal or equitable right of ownership or possession or the right to rent or lease housing

26   accommodations, *and includes the state and any of its political subdivisions and any agency*

27

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   *thereof.*"  *Id.* at 11 (quoting Cal. Gov't Code § 12927(e)).  Moreover, the Ninth Circuit has held on

2   numerous occasions that the "FEHA provides at least as much protection to the disabled as the

3   FHAA does."  *Id.* at 11; *see also Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir.

4   2001) ("[W]e apply the same standards to FHA[A] and FEHA claims.").

5        In the instant motions, Defendants rely upon a single new case, *Inland Mediation Board v.*

6   *City of Pomona*, 158 F. Supp. 2d 1120 (C.D. Cal. 2001), which Defendants contend "makes clear

7   that, absent evidence demonstrating Defendants' status as 'owners' within the context of the

8   FEHA, Plaintiffs cannot . . . demonstrate liability under this statute."  Def. Reply at 12.

9        Defendants' reliance upon *Inland Mediation* is misplaced.  The Section 8 program was not

10   at issue in *Inland Mediation*, and the *Inland Mediation* plaintiffs did not allege disability

11   discrimination.  Instead, a group of landlords had joined together to form a neighborhood

12   association to select more "desirable tenants."  158 F. Supp. 2d at 1129.  At some point, a City

13   Council member began attending these meetings, and helped put the group in touch with city

14   officials and police officers.  During various meetings, the group director advocated that landlords

15   "g[et] rid of all the Black[] [tenants]" because these tenants brought "problems relating to drugs"

16   and "crime."  *Id.* at 1132.  Plaintiffs thereafter filed suit against the group director and the City

17   under the FHAA, the FEHA, and various other state and federal laws.  As to the FEHA claims, the

18   City argued that it was not a housing "owner" and was "therefore not subject" to the FEHA.  *Id.* at

19   1150.  Plaintiffs agreed, and conceded that "they [were] not pursuing their [FEHA] claims . . .

20   against the City."  *Id.*  Accordingly, the *Inland Mediation* court granted summary judgment for the

21   City on plaintiffs' FEHA claim.

22        In *Inland Mediation*, the City did not provide housing vouchers to plaintiffs, and appeared

23   to only assist the group director from time to time on discrete initiatives.  On the other hand, in the

24   instant case, HACSC determines the bedroom allocation for each Class Member, distributes

25   vouchers pursuant to this allocation, and reviews each Class Members' reasonable accommodation

26   request.  HACSC thus has a more direct role in determining the housing benefits accorded to Class

27

28   Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Members.  The holding in *Inland Mediation* does not, therefore, compel the Court to depart from

2    its decision in the Motion to Dismiss Order.

3         Moreover, the *Inland Mediation* court did not discuss § 12955.6 of the FEHA, which

4    provides that "[n]othing in this part shall be construed to afford to the classes . . . fewer rights or

5    remedies than the federal Fair Housing Amendments Act . . . and its implementing regulations."

6    Cal. Gov't Code § 12955.6.  In interpreting this section, the Ninth Circuit has held, on several

7    occasions, that the "same standards" apply to FHAA and FEHA claims, and that a viable FHAA

8    claim is also a viable FEHA claim.  *Pac. Shores Properties, LLC v. City of Newport Beach*, 730

9    F.3d 1142, 1156 n.14 (9th Cir. 2013); *Walker*, 272 F.3d at 1131 n.8.  As the Court has explained,

10   Defendants are subject to the FHAA.  Accordingly, under § 12955.6 of the FEHA, Defendants are

11   also subject to the FEHA.

12        **3.  CDPA**

13        As to the CDPA, Defendants contend that "there is no evidence that Defendants qualify as

14   persons renting, leasing or otherwise providing real property for compensation."  Def. Opp'n at

15   16.  Again, the Court rejected these arguments in the Motion to Dismiss Order.  As the Court

16   noted, "Defendants cite[d] no legal authority [in their motion to dismiss] holding that Public

17   Housing Agencies that administer Section 8 vouchers are exempt from § 54.1(b)(3)(B), or from

18   the CDPA more generally."  MTD Order at 13.  Moreover, "Defendants [do] receive

19   compensation (in the form of funding) from the federal government to provide housing vouchers

20   to Huynh and other low-income residents."  *Id.*

21        In the instant motions, Defendants continue to provide no legal authority to support their

22   position.  In fact, Defendants have repeated verbatim the arguments Defendants previously made

23   in their motion to dismiss.  *Compare* Mot. to Dismiss at 11 ("Plaintiff has failed to allege that . . .

24   Defendants qualify as persons renting, leasing, or otherwise providing real property for

25   compensation.") (internal quotation marks and alteration omitted), *with*, Def. Opp'n at 16

26   ("[T]here is no evidence that Defendants qualify as persons renting, leasing or otherwise providing

27                                                    39

28   Case No. 14-CV-02367-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
     JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   real property for compensation."). As before, Defendants' arguments regarding CDPA liability

2   are unavailing.

3       **4.  Section 504**

4       Next, Defendants contend that Plaintiffs' Section 504 claim fails because "Plaintiffs and

5   the Class continue to receive housing subsidies in accordance with the Voucher Program, albeit

6   reduced subsidies, just like every other Voucher Program participant." *Id*. at 22; *see also id.*

7   ("Plaintiffs and the Class remain participants of the Voucher Program, and . . . continue to

8   maintain meaningful access to its benefits."). Once again, Defendants raised—and the Court

9   rejected—these arguments in adjudicating Defendants' motion to dismiss.

10      Indeed, Defendants continue to rely upon *Alexander v. Choate*, 469 U.S. 287 (1985), and

11  *Wright v. Giuliani*, 230 F.3d 543 (2d Cir. 2000), two cases which the Court discussed in the

12  Motion to Dismiss Order. MTD Order at 15–17. As the Court remarked, "[i]n *Alexander* and

13  *Wright*, the plaintiffs requested extra services that defendants did not provide to non-disabled

14  people." *Id*. at 16. In this case, however, Plaintiffs "request[] a modification of Defendants'

15  voucher policy, as part of the existing Section 8 program, to accommodate [their] disabilit[ies]."

16  *Id*. "To win on the merits of [Plaintiffs'] claim, [Plaintiffs] will need to show that [their] request is

17  a reasonable modification of Defendants' administration of the Section 8 program." *Id*. Plaintiffs

18  do not, in short, request the sort of extra services at issue in *Alexander* and *Wright*.

19      In lieu of repeating the Court's reasoning from the Motion to Dismiss Order, the Court

20  focuses instead on Defendants' reliance upon *Taylor v. The Housing Authority of New Haven*, a

21  case also discussed above. According to Defendants, "when defining the 'benefits' afforded by

22  the Voucher Program," the *Taylor* court "expressly excluded the 'provision of housing.'" Def.

23  Mot. at 18. That holding, Defendants argue, precludes Plaintiffs from seeking Section 504 relief.

24      Defendants have read *Taylor* out of context. The *Taylor* plaintiffs brought suit against the

25  Housing Authority of New Haven ("HANH") because HANH allegedly "fail[ed] to provide them

26  'mobility counseling' to assist them in searching for, finding, applying for, and moving into

27                                                   40

28

United States District Court
Northern District of California

disabled-accessible housing" and "fail[ed] to furnish them with a list of available accessible units."

267 F.R.D. at 39.  After a bench trial, the *Taylor* court concluded that plaintiffs had failed to

demonstrate Section 504 liability.  *Id.*  Specifically, the district court stated "that the Section 8

Program's benefit consists of the voucher, housing assistance payments, and, upon request, lease

negotiation."  *Id.* at 58.  "[T]he program's benefit does not include search assistance, [the

provision of] housing, or a guarantee of suitable housing."  *Id.*  The *Taylor* plaintiffs' claims,

however, related to "search assistance," as plaintiffs asserted that HANH had failed to help them

find disability-accessible housing.  Such requests for relief, the district court reasoned, did not fall

within the ambit of "benefits" encompassed by the Section 8 program.  *See, e.g.*, *id.* ("While

HANH may help its Section 8 participants participate in the private housing market, the benefit—

the very purpose—of the Section 8 Program is to provide recipients financial assistance necessary

for them to participate in the private housing market.").

Unlike the *Taylor* plaintiffs, Plaintiffs here do not ask for help searching for housing.

Instead, Plaintiffs request that their subsidies be modified to accommodate their disabilities.

Plaintiffs' request thus relates directly to the amount of their "housing assistance payments," a

category the *Taylor* court listed as a "benefit" of the Section 8 program.  *See id.* ("[T]he Section 8

Program's benefit consists of the voucher, housing assistance payments, and, upon request, lease

negotiation.").

In support of this particular interpretation, the *Taylor* court appeared to discuss a

reasonable accommodation request for an extra bedroom as a "benefit" under the Section 8

program.  *Id.* at 63 ("Many disabled voucher-holders sought, as a reasonable accommodation, an

allowance in their vouchers for an extra bedroom . . .  The evidence shows that these requests were

generally granted after HANH received verification from the participant's physician of the

participant's medical need.").  Defendants' handling of analogous reasonable accommodation

requests is the exact point of contention in the instant case.  Thus, if anything, *Taylor* weighs in

favor of Plaintiffs, not Defendants.

41

United States District Court
Northern District of California

1    Accordingly, Defendants' reliance upon *Taylor*, *Alexander*, and *Wright* is inapposite, and

2  Defendants remain subject to Section 504 of the Rehabilitation Act.

3    **5. ADA**

4    Turning finally to Plaintiffs' ADA claim, Defendants state that "[l]iability under the ADA

5  is contingent on the disabled plaintiff's ability to prove that he was either excluded from

6  participation in or denied the benefits of a public entity's services, programs or activities, or was

7  otherwise discriminated against by the public entity."  Def. Reply at 14.  According to Defendants,

8  "Plaintiffs do not meet this requirement because they each participate in and [continue to] receive

9  benefits from the [Section 8] Program."  *Id.*

10    These arguments essentially repeat Defendants' Section 504 contentions, and were

11  previously rejected by the Court.  *See* MTD Order at 18.  As the Court noted, "'Title II of the

12  ADA must be interpreted in a manner consistent with Section 504' of the Rehabilitation Act."  *Id.*

13  (quoting *McGary v. City of Portland*, 386 F.3d at 1269 n.7); *see also Vinson v. Thomas*, 288 F.3d

14  1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as

15  section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of

16  rights and obligations created by the two Acts.").  In the instant motions, Defendants cite no case

17  law that would compel a different result from the Motion to Dismiss Order.  Thus, consistent with

18  that Order, Defendants' ADA arguments remain unavailing.

19    Defendants' motion for summary judgment as to whether the FHAA, the FEHA, the

20  CDPA, Section 504, and the ADA apply to them is therefore DENIED.  As a concluding point, for

21  all of these causes of action, Defendants have in the instant motions used the same language and

22  the same case law to re-raise arguments that the Court has already rejected.  Defendants failed to

23  file a motion for reconsideration and a summary judgment motion is not the appropriate vehicle to

24  re-raise rejected arguments.  Going forward, the Court asks Defendants to be mindful of the

25  limited resources of the Court and the parties.

26  **V.    CONCLUSION**

27
                                                        42

28  Case No. 14-CV-02367-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
    JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1         For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED in part

2    and DENIED in part.  Defendants' motion for summary judgment is DENIED.  Specifically, the

3    Court finds that, as alleged, Defendants' blanket reasonable accommodation policy violates the

4    FHAA, the FEHA, the CDPA, Section 504, and the ADA.  A dispute of material fact exists as to

5    whether Defendants actually implemented the alleged blanket reasonable accommodation policy.

6    **IT IS SO ORDERED.**

7    Dated:  May 12, 2016

8    _____

9    LUCY H. KOH
     United States District Judge

Case No. 14-CV-02367-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California