1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THANH HUYNH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOUSING AUTHORITY OF THE<br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | Case No. 14-CV-02367-LHK<br><br>**AMENDED ORDER GRANTING<br>ATTORNEY'S FEES**<br><br>Re: Dkt. No. 157 |

This order supersedes ECF No. 164, which was been vacated.

Plaintiffs[1] bring this action against the Housing Authority of the County of Santa Clara ("HACSC") and Katherine Harasz, in her official capacity as HACSC's Executive Director (collectively, "Defendants"). Before the Court is Plaintiff's Motion for Attorney's Fees and Costs. ECF No. 157. The Court held a hearing on this motion on March 16, 2017.

Having considered the submissions and oral arguments of the parties, the relevant law, and the record in this case, the Court GRANTS Plaintiff's Motion for Attorney's Fees and Costs. The

---

[1] The named Plaintiff households are: (1) Thanh Huynh, (2) Venus Benabides and Rudy Garcia, (3) Lynda Gomes and Nicholas Wallace, (4) Lillie Ware and Stephen Jones, and (5) Dehab Haile and Freihiwet Tesfamariam. As discussed below, under the terms of the settlement agreement each named Plaintiff household will receive a $10,000 Plaintiff incentive award.

1   Court awards $712,500 in attorney's fees and costs, as well as $50,000 in named Plaintiff

2   incentive awards.

3   **I.      BACKGROUND**

4      **A.  Factual Background**

5           The Section 8 Voucher Program provides monthly housing subsidies to low-income

6   individuals and their families.  ECF No. 30 ("SAC") ¶ 23.  Unlike traditional public housing

7   programs, subsidies provided under the Section 8 Program are "not tied to a particular unit in a

8   particular building."  *Id.* ¶ 24.  Instead, voucher holders find a private landlord willing to accept a

9   Section 8 voucher.  If the private landlord agrees to rent to the voucher holder, the landlord is paid

10  a monthly subsidy by a local Public Housing Agency ("PHA"), known as the "housing assistance

11  payment."  *Id.* ¶ 27.  The voucher holder pays the remaining balance.  *Id.* ¶ 23.

12          Various federal regulations govern how a local PHA may operate its Section 8 Program.

13  Under 24 C.F.R. § 982.503(a), for instance, a "PHA must adopt a payment standard schedule that

14  establishes voucher payment standard amounts for each [market] area in the PHA['s] jurisdiction."

15  24 C.F.R. § 982.503(a).  These voucher payment standards are based on the fair market value of

16  rental units and "are used to calculate the monthly housing assistance payment for a family."  *Id.*

17  According to Plaintiffs, Santa Clara County voucher holders were generally responsible "for

18  paying a [monthly] rental amount equal to 30% of their income," although the exact percentage

19  varied.  SAC ¶ 25.  Likewise, 24 C.F.R. § 982.402(a) provides that a PHA "must establish subsidy

20  standards that determine the number of bedrooms needed for families of different sizes and

21  compositions."  24 C.F.R. § 982.402(a).  "For each family, the PHA determines the appropriate

22  number of bedrooms under the PHA subsidy standards."  *Id.*  Each voucher holder is "allocated a

23  specific number of bedrooms . . . based on their family size and composition."  SAC ¶ 26.

24  Although "a family [may] choose[] to live in a unit with more bedrooms than the family is

25  allocated under the [subsidy] standard," the subsidy standard establishes "the maximum amount

26  [of] housing assistance" that a voucher holder may receive.  *Id.*  Finally, 24 C.F.R. § 982.54(a)

27  requires PHAs to "adopt a written administrative plan that establishes local policies for

28

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California

1  administration of the program in accordance with HUD requirements." 24 C.F.R. § 982.54(a).

2      Given the complex interplay between these regulations, the Court takes a moment to

3  review them in additional detail.  Family size and composition determine the number of bedrooms

4  that a voucher holder is allocated, which in turn determines the voucher holder's subsidy standard.

5  The subsidy standard is tied to a payment standard schedule, which is set by the market value for

6  rental units within a particular area.  By way of example, HACSC will "pay no more than

7  $1628.00 towards a 2-bedroom unit." SAC ¶ 25.  A Santa Clara County voucher holder allocated

8  a two-bedroom unit would therefore receive a maximum subsidy of $1628.  The voucher holder

9  may decide to rent a three-bedroom unit, but will not receive any more than $1628, unless the

10 market value for a two-bedroom unit changes.

11     Defendant HACSC is the PHA responsible for administering the Section 8 Program in

12 Santa Clara County.  *Id.* ¶ 17.  As Executive Director, Katherine Harasz ("Harasz") is responsible

13 for "carrying out the duties outlined in the [HACSC's] Administrative Plan and the regulations

14 promulgated by [HUD]."  *Id.* ¶ 16.

15     In early 2013, "the federal government imposed an $85 billion across-the-board cut in

16 discretionary federal spending."  Def. Mot. at 5.  Known as "sequestration" or the "sequester," this

17 reduction "resulted in an approximately $2 billion decrease to HUD's housing support programs,

18 including $21 million in funding for HACSC's Voucher Program."  *Id.*  In order to address this

19 decrease in funding, HACSC made significant revisions to its administration of the Section 8

20 Program on March 1, 2013.  SAC ¶ 28.

21     Two such changes are relevant to the instant action.  First, prior to March 1, 2013,

22 "children of the opposite sex (unless they were very, very young children) and persons from

23 different generations (parents, grandparents, children) were not required to share a room."  *Id.* ¶

24 29.  After March 1, 2013, "the head of household (with spouse, co-head, Registered Domestic

25 Partner, or boyfriend/girlfriend if any) [were assigned] one room and an additional bedroom [was

26 assigned] for every two persons regardless of age or gender."  *Id.*  Second, "[t]he revised

27 calculations increased each participant's total tenant payment from 30% to 35% of their gross

28

3

United States District Court
Northern District of California

monthly income or $50 a month, whichever [was] higher." Def. Mot. at 5–6.

These changes resulted in many voucher holders receiving a smaller bedroom allocation and a smaller subsidy.  SAC ¶ 31.  Subsequent to these changes, each named Plaintiff submitted a reasonable accommodation request for an additional bedroom based on at least one family member having a documented disability.  *Id.* ¶ 3.  HACSC denied these requests.

**B.  Procedural History**

On April 14, 2014, Huynh filed the original complaint in this case in Santa Clara County Superior Court.  ECF No. 1-1 ("Compl.").  Defendants removed this case to federal court on May 22, 2014.  ECF No. 1.  On May 29, 2014, Defendants moved to dismiss the original complaint. ECF No. 8 ("Mot. to Dismiss").  The Court granted in part and denied in part Defendants' motion to dismiss on September 2, 2014, ECF No. 14 ("MTD Order"), and Huynh subsequently filed a First Amended Complaint.  ECF No. 18 ("FAC").  On January 7, 2015, the Court granted Huynh's request to file a Second Amended Complaint, and on January 12, 2015, Huynh—now joined by the rest of the named Plaintiffs—filed the SAC.  Defendants answered the SAC on February 6, 2015.  ECF No. 31.

The SAC contains five substantive causes of action, based on violations of (1) the Fair Housing Amendments Act, (2) the Fair Employment and Housing Act, (3) the California Disabled Persons Act, (4) Section 504 of the Rehabilitation Act, and (5) the Americans with Disabilities Act.  The SAC also includes a sixth cause of action for declaratory relief.

On September 17, 2015, Plaintiffs moved for class certification pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).  After holding a hearing on Plaintiffs' motion, the Court granted Plaintiffs' motion on November 12, 2015.  ECF No. 67 ("Class Cert. Order").  Specifically, the Court certified the following Class:

> Santa Clara County Section 8 voucher holders who have disabilities and/or have family members with disabilities who (1) made a reasonable accommodation request to HACSC for an additional bedroom after July 1, 2013, (2) had a documented and undisputed need for a separate bedroom, (3) were denied a disability-related increase in the number of bedrooms by HACSC, (4) were not previously granted a permanent reasonable accommodation request, (5) did not

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

request the additional bedroom for a live-in caregiver or for storage of medical equipment, and (6) have at least one family member who is not disabled. *Id.* at 23.  In addition, the Court appointed Thanh Huynh, Venus Benabides, Rudy Garcia, Lynda Gomes, Nicholas Wallace, Lillie Ware, Stephen Jones, Dehab Haile, and Freihiwet Tesfamariam as Class Representatives and the Law Foundation of Silicon Valley as Class Counsel.  *Id.*

Pursuant to Federal Rule of Civil Procedure 23(c)(2), the parties filed a proposed Notice and Opt Out Form for the Court's review on April 1, 2016.  ECF No. 90; Fed. R. Civ. P. 23(c)(2) (requiring parties to send "the best notice that is practicable under the circumstances . . . [f]or any class certified under Rule 23(b)(3)").  The Court made suggested amendments to these documents, which the parties adopted in full on April 6, 2016.  ECF No. 93.  The Court approved the amended Notice and Opt Out Form on April 6, 2016, which included an opt out deadline of May 5, 2016.  ECF No. 95; *see Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (approving opt out deadline of less than one month after notice).  There have been three opt outs from the class.

On November 25, 2015, Defendants filed before the Ninth Circuit a petition for permission to appeal the Court's class certification order.  ECF No. 71.  The Ninth Circuit denied this petition on April 6, 2016.  ECF No. 96.

On March 10, 2016, the parties filed cross-motions for summary judgment.  ECF No. 79 ("Def. Mot."); ECF No. 80 ("Pls. Mot.").  On May 10, 2016, the Court issued an order which included three questions for the parties to address at the May 12, 2016 hearing on the parties' cross-motions for summary judgment.  ECF No. 101.  In addition, the Court requested the parties to file a response to a fourth question. ECF No. 101 at 1.  The parties filed their responses on May 11, 2016.  ECF Nos. 102 & 103. The Court held a hearing on the motions on May 12, 2016. ECF No. 104.

On May 12, 2016, the Court granted in part and denied in part Plaintiffs' motion for summary judgment and denied Defendants' motion for summary judgment. ECF No. 106. Specifically, the Court found that, as alleged, Defendants' blanket reasonable accommodation policy violated the FHAA, the FEHA, the CDPA, Section 504, and the ADA. *Id.* at 43. However,

5

United States District Court
Northern District of California

1 the Court found that a dispute of material fact existed as to whether Defendants actually

2 implemented the alleged blanket reasonable accommodation policy. *Id.*

3        After filing several motions in limine, ECF Nos. 118–121, and preparing for trial, the

4 parties filed a notice of settlement on June 8, 2016, ECF No. 135. The parties then filed a motion

5 for preliminary approval of class action settlement on August 11, 2016. ECF No. 139. Before the

6 hearing on the motion for preliminary approval, the Court ordered the parties to respond to several

7 issues regarding the proposed settlement. ECF No. 145.

8        As relevant to the instant motion, the Court ordered the parties to provide additional

9 justification for their requests for attorney's fees and service awards. *Id.* at 2. First, the Court noted

10 that Fish & Richardson requested attorney's fees even though Fish & Richardson had never been

11 appointed Class Counsel and Fish & Richardson had consistently represented to the public that it

12 provided legal assistance in this case on a pro bono basis. *Id.* The Court requested Class Counsel

13 to identify any legal authority allowing for the recovery of attorney's fees and costs in a class

14 action settlement in these circumstances. *Id.* The Court also noted that $5,000 was the benchmark

15 for an award for representative plaintiffs, and the Court requested Class Counsel to state "why the

16 representative Plaintiffs should receive $10,000 each in service awards." *Id.* at 3. The parties filed

17 responses addressing these issues on September 8, 2016. ECF Nos. 146–47.

18        The Court held a hearing on the motion for preliminary approval of class action settlement

19 on September 15, 2016, and granted the motion for preliminary approval the same day. ECF Nos.

20 148–49. At the September 15, 2016 hearing, the parties stated that the proposed settlement could

21 not go into effect until the settlement was approved by HACSC's Board of Commissioners and the

22 United States Department of Housing and Urban Development ("HUD"). This approval was

23 delayed, and therefore the Court twice continued the notice and settlement administration

24 deadlines set in the Court's order granting preliminary approval. ECF Nos. 153 & 156.

25        The parties filed the motion for final approval of class action settlement, ECF No. 158, and

26 the instant motion for attorney's fees, costs, and incentive payments, ECF No. 157, on February

27 14, 2017. Defendants filed a statement of non-opposition to the motions on March 2, 2017. ECF

28

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California

1     No. 159. Plaintiffs filed a reply on March 9, 2017.  ECF No. 160. The Court held a hearing on the

2     motions on March 16, 2017. ECF No. 161.

3     **II.**      **LEGAL STANDARD**

4          Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class

5     action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by

6     law or by the parties' agreement."  "[A]wards of attorneys' fees serve the dual purpose of

7     encouraging persons to seek redress for damages caused to an entire class of persons and

8     discouraging future misconduct."  *In re Apollo Group Inc. Secs. Litig.*, 2012 U.S. Dist. LEXIS

9     55622, at *19 (D. Ariz. Apr. 20, 2012). In considering whether requested attorney's fees are

10     reasonable, a court should consider "the quality of representation, the benefit obtained for the

11     class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re*

12     *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

13          In civil rights cases, the court should use the lodestar method when calculating Plaintiffs'

14     reasonable attorneys' fees. *See, e.g., Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th

15     Cir. 2013) ("In general, California courts, like their federal counterparts, utilize the lodestar (or

16     'touchstone') approach to determine a proper fee award to a prevailing plaintiff in a civil rights

17     law suit."). The lodestar method calculates fees based on the number of hours reasonably spent on

18     litigation multiplied by a reasonable hourly rate. *See, e.g., Jordan v. Multnomah Cnty.*, 815 F.2d

19     1258, 1262 (9th Cir. 1987); *Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1060

20     (N.D. Cal. 2005).

21          Under the Civil Local Rules for United States District Court for the Northern District of

22     California, a motion for attorneys' fees and costs must include (1) the number of hours spent on

23     the litigation by each biller, (2) detailed billing records showing how much time was spent on each

24     task, and (3) each biller's billable rate and justification for such rate. Additionally, for each biller

25     who worked on this action, Class Counsel must specify whether any court within the Northern

26     District of California has approved the biller's billable rate.

27          Additionally, "named plaintiffs . . . are eligible for reasonable incentive payments." *Staton*

28

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

*United States District Court*
*Northern District of California*

1   *v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Incentive payments must be evaluated based on

2   "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

3   has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in

4   pursuing the litigation . . . and reasonabl[e] fear[s of] . . . retaliation." *Id.* (quoting *Cook v. Niedert*,

5   142 F.3d 1004, 1016 (7th Cir. 1998)). "To assess whether an incentive payment is excessive,

6   district courts balance 'the number of named plaintiffs receiving incentive payments, the

7   proportion of the payments relative to the settlement amount, and the size of each payment.'"

8   *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (quoting *Staton*,

9   327 F.3d at 977).

10   **III.    DISCUSSION**

11          Pursuant to the terms of the settlement agreement, Plaintiffs request $712,500 in attorney's

12   fees and costs, as well as $50,000 in named Plaintiff incentive payments. The instant case is a civil

13   rights case, and therefore the Court utilizes the lodestar method to determine if Plaintiffs'

14   $712,500 request for attorney's fees and costs is reasonable. *See, e.g., Muniz*, 738 F.3d at 222 (9th

15   Cir. 2013) ("In general, California courts, like their federal counterparts, utilize the lodestar (or

16   'touchstone') approach to determine a proper fee award to a prevailing plaintiff in a civil rights

17   law suit."). Under the lodestar method, a "lodestar figure is calculated by multiplying the number

18   of hours the prevailing party reasonably expended on the litigation (as supported by adequate

19   documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In*

20   *re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965

21   (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an

22   appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941–

23   42 (citations and internal quotation marks omitted). These factors include "the quality of

24   representation, the benefit obtained for the class, the complexity and novelty of the issues

25   presented, and the risk of nonpayment.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

26   1029 (9th Cir. 1998)).

27          In the motion for attorney's fees, both Law Foundation of Silicon Valley ("Law

28

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California

Foundation"), which the Court previously appointed as Class Counsel, and Fish & Richardson

P.C., which the Court did not appoint as Class Counsel, have requested attorney's fees. In total,

Plaintiffs report a lodestar of $1,125,992 for attorneys, consisting of $498,192 for Fish &

Richardson and $627,800 for Law Foundation. Plaintiffs also report a lodestar of $46,523.50 for

paralegals, entirely attributable to Fish & Richardson. Finally, Plaintiffs report $20,142.68 in

costs, consisting of $12,438.92 for Fish & Richardson and $7,703.76 for Law Foundation.

In the settlement agreement, the parties agreed to a total award of $712,500 for reasonable

attorneys' fees and costs. ECF No. 156, at 4. Therefore, the Court must decide whether this award

of $712,500 is reasonable in light of the reported lodestar and considering "the quality of

representation, the benefit obtained for the class, the complexity and novelty of the issues

presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 942. The Court addresses the

lodestar of Law Foundation and Fish & Richardson separately. The Court then considers

Plaintiffs' requested incentive awards for the named Plaintiff households.

**A. Law Foundation**

Law Foundation reports a lodestar for attorneys of $627,800. According to Law

Foundation, eight attorneys from Law Foundation worked on this action. The hourly rates for

these attorneys are as follows:

| Name | Title | Graduation Year | Rate | Hours | Fees |
|---|---|---|---|---|---|
| Kazantzis, Kyra A. | Directing Attorney | 1990 | $800 | 94 | $75,200 |
| Kirkham, Annette D. | Senior Attorney | 2001 | $660 | 557.92 | $368,227 |
| Melissa Morris | MHAP Supervising Attorney | 2004 | $635 | 22.4 | $14,509 |
| Nadia Aziz | Senior Attorney | 2007 | $545 | 72.54 | $39,534 |
| Brodfuehrer, Kara E. | MHAP Senior Attorney | 2008 | $545 | 167.95 | $91,015 |
| Thomas Zito | Senior Attorney | 2010 | $415 | 131.40 | $54,531 |
| Judy Wong | Fellow | 2014 | $325 | 29.25 | $9,506 |
| Matthew Warren | Staff Attorney | 2015 | $325 | 25.6 | $8,320 |

These rates are based on fee rates approved by Santa Clara County Superior Court Judge

Mark Pierce in *CBIA v. City of San Jose*, 110CV167289 (Santa Clara Sup. Ct.). Additionally, Law

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

1  Foundation has provided information about the education and legal experience of each of the

2  billing attorneys. Having reviewed this information, the Court finds that the education and

3  experience of each attorney justifies each of the requested rates.

4      Next, the Court considers the *In re Bluetooth* factors—the quality of representation, the

5  benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

6  nonpayment—and finds that each factor weighs in favor of Law Foundation's requested fees.

7      First, Law Foundation achieved a result that was beneficial to the Class. The settlement

8  that Law Foundation has negotiated with HACSC provides for significant benefits to the class.

9  Most importantly, HACSC has agreed to stop the practice at issue. Specifically, when considering

10  a request for reasonable accommodation for an additional bedroom that results in an adjustment to

11  a Household's subsidy size, HACSC will not consider a living room as a bedroom. ECF No. 141-

12  1, at 3. HACSC will also require its staff to attend training sessions regarding the new plan and

13  will retain an expert on disability law to provide such training. *Id.* at 4. Furthermore, HACSC will

14  provide an increase in the subsidy size for class members in the future. *Id.* at 4–5. Additionally,

15  HACSC will pay $3,200,000 in damages to a class of 180 members. All class members will

16  receive 100% of their actual damages as calculated by Plaintiffs' expert. These actual damages

17  payments will range from $916 to $25,406. *Id.* at 6–7. In addition, $695,560 will be distributed as

18  emotional distress damages to class members who experienced homelessness. *Id.*

19      Second, the instant case presented complex and novel issues. Law Foundation faced the

20  previously undecided issue of whether a blanket policy of denying subsidy increases for an extra

21  bedroom violated federal antidiscrimination law, as well as the previously undecided issue of

22  whether a living area can be counted as a sleeping area when processing accommodation requests.

23  ECF No. 106, at 29.

24      Third, Law Foundation faced the possibility of losing at trial and thus a risk of nonpayment

25  in the absence of settlement. The parties filed a notice of settlement on the eve of trial. In ruling on

26  the parties' motions for summary judgment, the Court found that a blanket policy of denying

27  requests for a larger subsidy would violate federal antidiscrimination law, but the Court also found

28

United States District Court
Northern District of California

10

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

that there was a disputed question of fact whether HACSC actually had such a blanket policy. HACSC contended that it evaluated class members on a case-by-case basis. If the jury had found in HACSC's favor on this issue, the class would not have recovered any damages, and Law Foundation would not have been paid.

Thus, the *In re Bluetooth* factors support Law Foundation's request for attorney's fees and costs. Therefore, the Court finds that Law Foundation's request for $627,800 in attorney's fees and $7,703.76 in costs, for a total of $635,503.76 is reasonable.

**B. Fish & Richardson**

Fish & Richardson reports a lodestar for attorneys of $498,192, a lodestar for paralegals of $46,523.50, and costs of $12,438.92. According to Fish & Richardson, eleven attorneys from Fish & Richardson worked on this action. The hourly rates and total billing for these attorneys and paralegals is as follows.

| Name | Title | Graduation Year (JD) | Average Hourly Rate | Hours | Fees |
|---|---|---|---|---|---|
| Vidal, Katherine Z. | Principal | 1996 | $862.07 | 84 | $72,414 |
| Headley, Michael R. | Principal | 2002 | $700 | 58.4 | $40,880 |
| Lamberson, Jonathan | Principal | 2005 | $676.75 | 156 | $105,573 |
| Basso, Bryan | Associate | 2011 | $530 | 18.8 | $9,964 |
| RaoRane, Meghana | Associate | 2007 | $475 | 133.4 | $63,365 |
| Petersen Garff, Emily | Associate | 2014 | $362.54 | 232.2 | $84,181.50 |
| Victorson, Holly | Associate | 2015 | $329.09 | 321.1 | $105,671.50 |
| Alana Mannigé | Associate | 2016 | $330.11 | 48.9 | $16,142.50 |
| Wheeler, Julie M. | Paralegal | N/A | $274.92 | 109.1 | $29,993.50 |
| Goodrich, Trevor | Paralegal | N/A | $255 | 60.1 | $15,325.50 |
| Taylor, James | Paralegal | N/A | $236.18 | 5.1 | $1,204.50 |

Fish & Richardson has stated that none of these rates have been approved by a court in the Northern District of California. ECF No. 157-1, at 2–5. However, Fish & Richardson has provided information about the education and legal experience of each of the billing attorneys. Having reviewed this information, the Court finds that the education and experience of each attorney justifies each of the requested rates.

However, Fish & Richardson has not given any information about the education or legal experience of the paralegals for whom it requests fees. Therefore, because the Court has no

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

1  information about the education or experience of the paralegals and because no Court in the

2  Northern District of California has approved these paralegals' rates, the Court declines to approve

3  the paralegals' rates. The Court therefore will not consider the $46,523.50 attributable to

4  paralegals as part of Fish & Richardson's lodestar. *See In re Yahoo Mail Litig.*, 2016 WL

5  4474612, at *9 (N.D. Cal. Aug. 25, 2016) (excluding requested fees under similar circumstances).

6  In addition, consideration of the paralegal fees is unnecessary because Fish & Richardson requests

7  only a small portion of its reported fees. This small portion is more than justified by the fees

8  reported by attorneys alone.

9       The Court next considers whether the hours reported by Fish & Richardson are reasonable

10  in light of the work performed. In the Court's Order Regarding Preliminary Approval Hearing on

11  September 1, 2016, the Court noted that "Fish and Richardson entered its first appearance in this

12  action on November 6, 2015, . . . after the motion for class certification was fully briefed." ECF

13  No. 145, at 2. Thus, Fish & Richardson was never appointed as Class Counsel. Additionally, the

14  Court noted that Fish & Richardson had "consistently represented to the public that it has provided

15  legal assistance in this case on a pro bono basis." *Id.*

16       In its motion for attorney's fees, Fish & Richardson has provided authority supporting its

17  position that Fish & Richardson may receive attorney's fees and costs although the firm was never

18  appointed Class Counsel and represented that it was litigating the case pro bono. First, Fish &

19  Richardson states that Federal Rule of Civil Procedure ("Rule") 23 allows for non-class-counsel to

20  receive attorney's fees. Specifically, Fish & Richardson points to the Committee Notes for the

21  2003 amendment when Rule 23(h) was enacted, which state that Rule 23(h) "provides a format for

22  all awards of attorney fees and nontaxable costs in connection with a class action, not only the

23  award to class counsel. In some situations, there may be a basis for making an award to other

24  counsel whose work produced a beneficial result for the class, such as attorneys who acted for the

25  class before certification but were not appointed class counsel, or attorneys who represented

26  objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other

27  situations in which fee awards are authorized by law or by agreement of the parties may exist."

28
Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California

1    Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *see also Kyurkjian v. Axa*, No.

2    2:02-CV- 01750-CAS, 2014 WL 1577767, at *1 (C.D. Cal. Apr. 21, 2014) ("The Court agrees that

3    Rule 23(h) authorizes the award of attorneys' fees to attorneys other than class counsel.").

4         In the instant case, the award for attorney's fees and costs is made pursuant to the

5    settlement agreement between the parties, which provides for a total award of $712,500.

6    Additionally, pursuant to a September 2015 agreement between Fish & Richardson and Law

7    Foundation, Fish & Richardson agreed not to waive its claims to attorney fees and agreed to

8    donate any attorney's fees that Fish & Richardson recovered to Law Foundation. Although the

9    better course would have been for Fish & Richardson to seek appointment as co-Class Counsel, in

10   this instance, because Fish & Richardson will donate its fees to Law Foundation pursuant to the

11   September 2015 agreement, the Court finds that Fish & Richardson was effectively working on

12   behalf of Class Counsel and is therefore entitled to fees under Rule 23(h).

13        Fish & Richardson also points out that the Ninth Circuit has held that "[a]ttorneys' fees are

14   recoverable by pro bono attorneys to the same extent that they are recoverable by attorneys who

15   charge for their services." *Voice v. Stormans Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014); *see also*

16   *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 103 L.Ed.2d 67 (1989) ("[W]here there

17   are lawyers or organizations that will take a plaintiff's case without compensation, that fact does

18   not bar the award of a reasonable fee.").

19        In the instant case, the Court finds that Fish & Richardson is entitled to attorney's fees

20   because Fish & Richardson was effectively working on behalf of Class Counsel and will donate its

21   fees to Law Foundation pursuant to the September 2015 agreement. ECF No. 157, at 19.

22   Additionally, the Court's concerns about granting fees are alleviated somewhat because the

23   requested fees and costs are provided for separately in the settlement and will not come out of the

24   recovery for the class. ECF No. 141-1, at 6–7.

25        The Court appreciates Fish & Richardson's dedication of significant resources to litigate

26   this case pro bono and the fact that Fish & Richardson and Law Foundation have obtained such

27   significant benefits for the class, namely $3,200,000 in damages, which provides 100% recovery

28

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California

of all class members' actual damages as calculated by Plaintiffs' expert, and $695,560 in emotional distress damages. However, the number of hours billed by Fish & Richardson appears high relative to the number of hours billed by Law Foundation. Fish & Richardson has represented that it conducted several depositions, "handled the motions for summary judgment," "took the lead in pre-trial preparations," and participated in the mediation session. ECF No. 157, at 5–6. In doing so, Fish & Richardson recorded more attorney hours (even excluding Fish & Richardson's paralegal hours) than Law Foundation, which had drafted the pleadings, litigated a motion to dismiss, conducted extensive discovery, litigated the motion for class certification, assisted with pre-trial preparations, and participated in the mediation session. In short, Law Foundation litigated the case for a year and a half before Fish & Richardson began working on the case.

Nevertheless, the Court need not conduct a detailed inquiry into the reasonableness of each of Fish & Richardson's billing entries. As discussed above, pursuant to the settlement Plaintiffs request a total of $712,500 in attorney's fees and costs. The Court has already found that an award of $635,503.76 in attorney's fees and costs for the work of Law Foundation is reasonable. Thus, as long as Fish & Richardson's fees and costs of $76,996.24 are reasonable, the Court will award the Plaintiffs' total request of $712,500 in attorney's fees and costs.

As discussed above, Fish & Richardson conducted several depositions, "handled the motions for summary judgment," "took the lead in pre-trial preparations," and participated in the mediation session. *Id.* at 5–6. Moreover, Fish & Richardson obtained significant benefits for the class. Therefore, the Court concludes that Fish & Richardson incurred reasonable fees and costs of $76,996.24.

Accordingly, for the reasons discussed above, the Court finds that the *In re Bluetooth Litigation* factors support Plaintiffs' full requested amount of $712,500 in attorney's fees and costs.

### C. Incentive Awards for Named Plaintiffs

In evaluating whether representative plaintiffs are entitled to reasonable incentive payments, district courts "must evaluate their awards individually, using 'relevant factors

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

1   including the actions the plaintiff has taken to protect the interests of the class, the degree to which

2   the class has benefitted from those actions...the amount of time and effort the plaintiff expended in

3   pursuing the litigation...and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977

4   (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).

5       Plaintiffs request $10,000 incentive payments for each of the named Plaintiff households,

6   for a total of $50,000 in incentive payments. Plaintiffs argue that the *Staton* factors are met for

7   each of the named Plaintiffs for several reasons. First, Plaintiffs argue that the named Plaintiffs

8   helped to secure an excellent result for the class and that the incentive awards are roughly

9   equivalent to the damages awards to class members. ECF No. 157, at 30 ("Here, many class

10  members will be receiving more than $10,000 and a large portion will be receiving more than

11  $20,000."). Second, Plaintiffs claim that the named Plaintiffs "have expended significant time and

12  effort in this litigation," including being deposed and participating in two days of settlement

13  conferences. *Id.* Third, Plaintiffs state that the named Plaintiffs disclosed potentially embarrassing

14  details regarding physical and mental disabilities and financial status. *Id.* Finally, Plaintiffs claim

15  that the named Plaintiffs "risked retaliation from HACSC that could have left them homeless." *Id.*

16      The Court finds that the *Staton* factors justify granting each of the named Plaintiff

17  households a $10,000 incentive award. According to the motion for attorney's fees, the named

18  Plaintiffs have devoted substantial time to this case. All of the named Plaintiffs were deposed and

19  participated in two full days of settlement conferences. Additionally, the named Plaintiffs took the

20  important step of disclosing potentially embarrassing information about physical and mental

21  disabilities, financial status, and homelessness. In doing so, Plaintiffs helped to obtain an

22  important benefit for the class, including $3,200,000 in damages and meaningful injunctive relief.

23  In participating in this litigation, Plaintiffs also risked retaliation, because HACSC had the power

24  to reduce the named Plaintiffs' subsidies or otherwise adversely affect their living situations. This

25  risk of retaliation, which could have threatened Plaintiffs' ability to live in their homes, is even

26  more serious than workplace retaliation.

27      Although the requested payments are higher than the $5,000 benchmark, the Court has

28

United States District Court
Northern District of California

15

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

approved similar awards in the past when the Class received significant benefit. *See, e.g.*, *Coates v. Farmers Grp., Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016); *Taylor v. Freight*, No. 10-CV-02118, ECF No. 115 (N.D. Cal. Jan. 27, 2012) (approving awards up to $25,000). Further, the actual damages awards to class members, which ranged from $916 to $25,406 and will be supplemented by emotional distress damages, were somewhat comparable and in many cases higher than the requested $10,000 incentive awards. This supports the reasonableness of the requested incentive awards. *Compare Wallace v. Countrywide Home Loans, Inc.*, 2014 WL 5819870, at *4 (C.D. Cal. Apr. 14, 2014) (rejecting settlement where service awards were "33 times greater than the maximum possible recovery of other individual class members"), *with Lemus v. H & R Block Enters. LLC*, 2012 WL 3638550, at *5–6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards where the average class recovery was about $1,200).

Finally, the incentive awards in the instant case are $10,000 for each named Plaintiff households. Four out of the five named Plaintiff households include two named Plaintiffs: (1) Thanh Huynh, (2) Venus Benabides and Rudy Garcia, (3) Lynda Gomes and Nicholas Wallace, (4) Lillie Ware and Stephen Jones, and (5) Dehab Haile and Freihiwet Tesfamariam. Thus, each of these four households will receive $5,000 per person, which is comparable to the benchmark announced by the Ninth Circuit. Only Thanh Huynh, the first named Plaintiff, will receive $10,000 as the sole representative of his household. However, as the first named Plaintiff, Huynh faces a significantly higher risk of retaliation and embarrassment, and therefore this higher award is warranted. For these reasons, the Court finds that a $10,000 incentive award to each of the five named Plaintiff households is reasonable.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for attorney's fees, costs, and named Plaintiff incentive awards. Specifically, the Court grants $712,500 in attorney's fees and costs. The Court also grants $10,000 to each named Plaintiff household as an incentive award, for a total of $50,000 in incentive awards.

16

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

**IT IS SO ORDERED.**

Dated: March 17, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 14-CV-02367-LHK
AMENDED ORDER GRANTING ATTORNEY'S FEES

United States District Court
Northern District of California